Frank W. Volk
United States District Judge

**Dated: January 15th, 2020**

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: | Chapter 11 |
| THOMAS HEALTH SYSTEM, INC., *et al.*, | Case No. 20-20007 (FWV) |
| Debtors.[1] | (Jointly Administered) |

**INTERIM ORDER (A) AUTHORIZING THE USE OF CASH AND OTHER COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING AND (D) GRANTING RELATED RELIEF**

Upon the motion of Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital Association, Charleston Hospital, Inc., and THS Physician Partners, Inc., the above-captioned debtors and debtors-in-possession (each, a "Debtor" and collectively, the "Debtors"), pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Bankr. S.D. W.Va. R. 4001-2 for entry of an interim order (this "Interim Order"), *inter alia*: (i) authorizing the Debtors to use cash and other collateral; (ii) granting adequate protection; (iii) scheduling a final hearing (the "Final Hearing") to consider entry of a final order concerning the foregoing (the "Final Order" and together with this Interim Order, the "Orders"); and (iv) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Thomas Health System, Inc. (0674); Herbert J. Thomas Memorial Hospital Association (4900); Charleston Hospital, Inc. (2692); and THS Physician Partners, Inc. (5947). Capitalized terms used but not defined in this Interim Order have the meanings specified in the Motion.

the extent necessary to implement and effectuate the terms and provisions of the Orders [docket no. ___] (the "Motion"),

The Court having considered the Motion, and the evidence submitted by the Debtors at the hearing held on January 15, 2020 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9014; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court on an interim basis; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors, their estates, and their creditors, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]

A.    Petition Date.  On January 10, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of West Virginia (the "Court").

B.    Debtors-in-Possession.   The Debtors continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C.    Jurisdiction and Venue.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

D.    Statutory Committee.    The Office of the United States Bond Trustee for the Southern District of West Virginia (the "United States Trustee") has not appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code.

E.    Notice.    The Interim Hearing was held pursuant to Bankruptcy Rule 4001 and Bankr. S.D. W.Va. R. 4001-2.  Notice of the Interim Hearing and the relief requested in the Motion has been provided by overnight mail, email and/or fax on January 13, 2020 to: (a) the United States Trustee; (b) the office of the United States Attorney for the District of West Virginia; (c) the creditors appearing on the Debtors' consolidated list of the top 30 unsecured creditors; (d) the Internal Revenue Service; (e) any local, state or federal agencies that regulate the Debtors' business; (f) the Bond Trustee and counsel of record; (g) Huntington Bank; (h) United Bank; (i) Bank of America; (j) Fifth Third Bank; (k) all parties requesting notices pursuant to Bankruptcy Rule 2002(f); and (l) all known secured creditors (collectively, the "Notice Parties").    Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is sufficient and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 4001(d), and the Local Rules.

F.    The Pre-Petition Indebtedness.  Reference is made to paragraphs 30 through 37 of the "*Declaration of Daniel J. Lauffer in Support of Chapter 11 Petitions and First Day Motions and Applications*" describing the Pre-Petition Indebtedness, which is incorporated herein.

G.    The Debtors' Use of Pre-Petition Collateral.

i.    Need for Use of Pre-Petition Collateral.  The Debtors' ability to operate requires immediate access to certain of the Bond Trustee's pre-petition collateral (the "Pre-Petition Collateral"), including cash that constitutes Pre-Petition Collateral ("Cash Collateral"),

3

the absence of which would immediately and irreparably harm the Debtors, their estates, and their creditors. If the Debtors are not able to use Pre-Petition Collateral as provided herein they likely will not be able to fund payroll and other operating expenses that are necessary to maintain the value of the Debtors' estates and to enable the Debtors to maximize recoveries for all parties in interest.

   ii. Adequate Protection Related to the Debtors' Use of Pre-Petition Collateral. The Bond Trustee has demanded adequate protection for the use of Pre-Petition Collateral. As a condition to the Debtors' use of any Pre-Petition Collateral, the Debtors are required to, in the alternative, provide adequate protection to the Bond Trustee or obtain the Bond Trustee's consent. To address these circumstances during the Interim Use Period (as defined below), the Bond Trustee:

   (a) Shall maintain its existing security interests and liens in all Pre-Petition Collateral and be granted on the terms of this Interim Order adequate protection replacement security interests and liens upon all assets of the Debtors, whether now existing or hereafter acquired and the proceeds and products thereof, solely to the extent of any diminution in the value from and after the Petition Date of the Bond Trustee's interest in Pre-Petition Collateral resulting from the postpetition use of Cash Collateral (including the Carve Out), the postpetition use of other Pre-Petition Collateral, or the imposition of the automatic stay (collectively, the "Diminution in Value"), junior only to the Carve-Out (as defined below) and the Bond Trustee's liens and security interests in the Pre-Petition Collateral ("Pre-Petition Liens").

   (b) Shall receive on the terms of this Interim Order a superpriority administrative expense claim pursuant to sections 503(b) and 507(b) of the Bankruptcy Code,

4

solely to the extent of Diminution in Value and the Adequate Protection Liens are later proven to be inadequate, junior only to the Pre-Petition Liens, Adequate Protection Liens, and Carve-Out.

(c)    Shall receive, subject to and effective upon the entry of a Final Order in form and substance to be negotiated between, and mutually acceptable, to the Debtors and the Bond Trustee, a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine.

(d)    Shall receive the other rights and protections described more fully below.

H.    Relief Essential; Best Interest; Good Cause.  The relief requested in the Motion is necessary, essential, and appropriate for the continued operations, and for the management, maintenance, and preservation, of the Debtors' assets.  It is in the best interest of the Debtors' estates for the Debtors to be allowed to use Pre-Petition Collateral pursuant to this Interim Order. Good cause has been shown for the relief requested in the Motion and as granted in this Interim Order.

I.    Consents.  Subject to the entry of this Interim Order on the terms set forth on the consensual form presented with the Motion, the Bond Trustee consents to the relief requested herein on an interim basis, subject to further proceedings before this Court.  All rights of the Bond Trustee and the Debtors with respect to relief on the Motion on a final basis, or on any further interim basis beyond the period contemplated by this Interim Order, shall be and are reserved.

J.    Entry of Interim Order.  The Debtors have requested the immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b).  The entry of this Interim Order will minimize disruption of the Debtors' businesses and will preserve and maintain the assets of the Debtors'

estates, will avoid immediate and irreparable harm to, and is in the best interest of, the Debtors, their

creditors and their estates.

Based upon the foregoing findings and conclusions, and the record before the Court with

respect to the Motion, and good and sufficient cause appearing therefor,

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**

**THAT**:

1.      <u>Motion Granted</u>.  The Motion is hereby granted in accordance with the terms and

conditions set forth in this Interim Order on an interim basis and subject to further proceedings in

connection with a Final Order.

2.      <u>Authorization for Use of Pre-Petition Collateral</u>.  Subject to the terms of this

Order, the Debtors are hereby authorized to use the Pre-Petition Collateral, including Cash

Collateral, to pay the ordinary and reasonable expenses of operating their businesses in

accordance the terms of this Interim Order and the Budget (as defined herein) from the Petition

Date until the earlier of the entry of a Final Order, a further interim order mutually acceptable to

the Debtors and Bond Trustee, or the termination of this Interim Order on its terms (the "<u>Interim</u>

<u>Use Period</u>").

3.      <u>Adequate Protection</u>.  As adequate protection:

a.      the Bond Trustee shall be and hereby is granted effective and perfected

upon the date of this Interim Order, without the necessity of the execution by the Debtors or the

Bond Trustee of any security, mortgage or similar documents, and solely to the extent of any

Diminution in Value of the Pre-Petition Collateral during the Interim Use Period, valid, binding

continuing, enforceable, fully perfected security interest and liens (the "<u>Adequate Protection</u>

<u>Liens</u>") upon all assets and property of the Debtors and their respective estates of any kind or

6

nature whatsoever, now existing or hereafter acquired, including, without limitation, the Pre-Petition Collateral, subject only to the Pre-Petition Liens, any other valid and perfected liens now existing in the assets, and the Carve-Out.  Notwithstanding the forgoing, the Adequate Protection Liens shall not attach to avoidance actions of the Debtors' estates arising under chapter 5 of the Bankruptcy Code or proceeds thereof.  The Adequate Protection Liens (a) are and shall be in addition to the Pre-Petition Liens; (b) are and shall be deemed properly perfected, valid and enforceable liens without any further action by the Debtors or the Bond Trustee and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents and instruments; and (c) shall remain in full force and effect notwithstanding any subsequent conversion to Chapter 7 or dismissal of the Chapter 11 Cases.  Although not required, upon request by the Bond Trustee, the Debtors shall execute and deliver any and all UCC Financing Statements or other instruments or documents considered by the Bond Trustee to be reasonably necessary in order to perfect the Adequate Protection Liens and proceeds granted by this Interim Order, and the Bond Trustee is authorized to receive, file and record the foregoing, which actions shall not be deemed a violation of the automatic stay embodied in section 362 of the Bankruptcy Code.  The Bond Trustee, in its discretion, may file a photocopy of this Interim Order as a financing statement or other evidence of the perfection of its respective liens, with any recording officer designated to file financing statements or with any registry of deeds, and in such event, the recording officer shall be authorized to file or record such copy of this Interim Order.

b.     the Bond Trustee is hereby granted an allowed superpriority administrative expense claim in the Chapter 11 Cases, as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim") solely to the extent of

7

Diminution in Value and the Adequate Protection Liens are later proven to be inadequate, subject only to the Carve-Out. Subject to and effective upon the entry of a Final Order in form and substance to be negotiated between, and mutually acceptable, to the Debtors and the Bond Trustee, any Superiority Claims shall include recovery against the proceeds of avoidance actions of the Debtors' estates arising under chapter 5 of the Bankruptcy Code.

c.  The Debtors shall comply with, and shall use cash, including Cash Collateral, solely in accordance with a budget, as amended from time to time with the prior written approval of the Bond Trustee, reflecting anticipated operating and capital expenses of the Debtors and professional fees and expenses (the "Budget") subject to Permitted Variances (as defined in this paragraph). "Permitted Variance" shall mean, for any Testing Period (as defined in this paragraph), (i) any favorable variance, (ii) an unfavorable variance for disbursements of not more than fifteen (15) percent with respect to any disbursement line item in the Budget or ten (10) percent in aggregate disbursements, or (iii) an unfavorable variance for collections of not more than ten (10) percent in aggregate collections; provided, however, that the Debtors shall be permitted to pay the actual expenses incurred for utilities and the fees of the United States Trustee pursuant to 28 U.S.C. § 1930 together with any interest thereon pursuant to 31 U.S.C. § 3717. Budget compliance for disbursements shall be tested weekly from the entry of this Interim Order on a cumulative basis from the Petition Date, provided that starting in the fifth week from the entry of this Interim Order, compliance will be tested weekly on a rolling four (4) week basis, and Budget compliance for collections shall be tested weekly on a rolling four (4) week basis (each, a "Testing Period"). If the cash disbursements in any such period are less than the amounts for such period in the applicable Budget, then such disbursements shall be added to the next succeeding period for purposes of measuring compliance with the Budget (and shall

8

continue to roll over into successive periods to the extent such additional budgeted capacity is unused by the Debtors). To the extent actual amounts for total cash disbursements from operations line items and/or professional fees are in excess to the Budget, the parties hereto agree to negotiate in good faith to discuss any modifications to the Budget and Permitted Variances. The Permitted Variance with respect to each Testing Period shall be determined and certified to the Bond Trustee by the Debtors not later than the 7th day immediately following each such Testing Period.   The Bond Trustee's approval for any amendment to the Budget shall be presumed absent written notice by the Bond Trustee to the Debtors within five (5) business days after receiving a proposed amendment that it opposes the amendment.  In the event of a dispute concerning the Budget, all rights of the Debtors and Bond Trustee shall be and are reserved;

d.      The Debtors shall also continue to provide all financial reporting required by the Bond Documents.  In addition, upon reasonable notice, the Debtors shall provide the Bond Trustee, and its representatives with access to the Debtors' premises, personnel (including, but not limited to, senior management and any similar person or firm employed by the Debtors in the Chapter 11 Cases), advisors/representatives, books and records, and the Debtors shall cooperate fully in all reasonable requests for information and data made by the Bond Trustee. Notwithstanding the foregoing, nothing herein shall be treated as a waiver of any privilege of the Debtors, including, without limitation, the attorney client privilege, work product doctrine or similar privilege.

4.      <u>Carve-Out</u>.  The relief described in this Interim Order is based in part on the Carve-Out from the Pre-Petition Collateral described in this paragraph.  "<u>Carve-Out</u>" shall mean the sum of (i) all fees required to be paid to the Clerk of the Court and to the United States Trustee under 28 U.S.C § 1930(a) together with any interest thereon pursuant to 31 U.S.C. §

9

3717; (ii) Court-allowed fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000, and (iii) professional fees and expenses of attorneys and financial advisors employed by the Debtors and any official committee(s) of creditors (the "Committee"), pursuant to sections 327, 328 and 1103 of the Bankruptcy Code (collectively, the "Case Professionals") to the extent reflected in the Budget, allowed by the Court, and incurred from the Petition Date to the occurrence of an uncured Termination Event and (iv) professional fees of Debtors' professionals in an aggregate amount not to exceed $250,000, and professional fees of Committee's professionals (to the extent a Committee is appointed) in an aggregate amount not to exceed $35,000, in each case to the extent allowed by the Court, and incurred after the occurrence of a Termination Event.  Nothing herein shall constitute a waiver of any right of the Bond Trustee to object to fees and expenses of Case Professionals nor shall anything herein bar the Case Professionals from seeking approval of fees and reimbursement of expenses nunc pro tunc to the Petition Date, including, without limitation, any transactional or financing fees.  The Bond Trustee and the Case Professionals acknowledge that professional fees and expenses are accruing during the Interim Use Period, however the payment of such fees shall be reflected in the Budget once amended.  For avoidance of doubt, any funds held by the Debtors as of a Termination Event shall be applied, dollar for dollar, against the Carve-Out.

5.    Waivers.

a.    Subject to and effective upon the entry of a Final Order in form and substance to be negotiated between, and mutually acceptable, to the Debtors and the Bond Trustee, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the Pre-Petition Collateral pursuant to

sections 105 or 506(c) of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the Bond Trustee, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

b.      Subject to and effective upon the entry of a Final Order in form and substance to be negotiated between, and mutually acceptable, to the Debtors and the Bond Trustee, the Debtors shall waive (i) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (ii) the equitable doctrine of "marshaling" or any similar doctrine.

c.      For so long as this Interim Order remains in force, the Debtors shall not grant, suffer, or permit any claim, expense or lien having priority or being *pari passu* to the priority of the Bond Trustee's rights, liens and security interests in Pre-Petition Collateral.

6.      <u>Termination Events</u>.  The occurrence of any one or more of the following events shall constitute a termination event (a "<u>Termination Event</u>") under this Interim Order, unless expressly waived in writing by the Bond Trustee:

a.      The Debtors use Cash Collateral or proceeds from other Pre-Petition Collateral for any purpose or in a manner other than as permitted in this Interim Order and in the Budget without the consent of the Bond Trustee;

b.      The Debtors fail to obtain entry of a Final Order within forty-five (45) days after the Petition Date;

c.      The entry of an order without the prior consent of the Bond Trustee reversing, staying, vacating, amending, supplementing, or otherwise modifying this Interim Order;

d.      Any lien or security interest purported to be created by this Interim Order

11

shall cease to be, or shall be asserted by the Debtors not to be, a valid, perfected, security interest in the assets or properties covered thereby;

       e.     The dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code;

       f.     The entry by the Court of an order terminating the Debtors' right to use Cash Collateral; or

       g.     The Debtors fail to cure any other non-compliance with the Interim Order within five (5) days after notice is given by the Bond Trustee.

The Debtors and Bond Trustee shall negotiate the Termination Events that would apply under any Final Order.

       7.     <u>Rights upon Termination Event</u>.  Upon the occurrence of a Termination Event that has not been cured (if a cure period applies), (i) the Bond Trustee may send a Termination Declaration (as defined herein) which shall provide that five (5) business days after the Termination Declaration Date (as defined herein) the Bond Trustee may declare the immediate termination of any further use by the Debtors of any Pre-Petition Collateral, including Cash Collateral, and/or the Bond Trustee may seek a hearing on an expedited basis to request that the automatic stay vacated and modified to the extent necessary to permit the Bond Trustee to exercise its rights and remedies provided for in the Bond Documents and/or under this Interim Order (any such declaration by the Bond Trustee shall be referred to herein as a "<u>Termination Declaration</u>").  The Termination Declaration shall be given by email (or other electronic means) to counsel to the Debtors, counsel to any Committee, and the United States Trustee (the date any such Termination Declaration is made shall be referred to herein as the "<u>Termination Declaration Date</u>").  Upon the occurrence of a Termination Event, the Debtor and/or a Committee (if

appointed) shall be entitled to an emergency hearing on the further use of the Bond Trustee's
Prepetition Collateral including Cash Collateral. Upon the occurrence of a Termination Event,
all rights of the Debtors and Bond Trustee with respect to the Debtors' continued use of Pre-
Petition Collateral shall be and hereby are reserved.

8.    <u>Other Matters</u>.

a.    *Binding Effect*. All of the provisions of this Interim Order shall be binding
upon the Debtors, any Committee, all other creditors of the Debtors, and all other parties in
interest, and their respective successors and assigns (including any trustee or other fiduciary
hereinafter appointed as a legal representative of the Debtors or with respect to the property of
the estates of the Debtors) whether in the Chapter 11 Cases or any subsequent Chapter 7 case, or
upon dismissal of the Chapter 11 Cases or any Chapter 7 case, except as otherwise provided
herein. To the extent any terms of this Interim Order are modified, amended, or vacated, and
claim or right granted to the Bond Trustee hereunder arising prior to the effective date of such
modification, amendment or vacation shall continue to be governed in all respects by the original
provisions of this Interim Order.

b.    *No Waiver*. The failure of the Bond Trustee to seek relief or otherwise
exercise its rights and remedies, as applicable, under the Bond Documents, this Interim Order or
otherwise, shall not constitute a waiver of any of the Bond Trustee's rights hereunder,
thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is
without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise
impair the rights of the Bond Trustee under the Bankruptcy Code or under non-bankruptcy law,
including without limitation, the rights of the Bond Trustee to (i) request conversion of the
Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11

13

Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and this Interim Order, a plan of reorganization, or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable or otherwise) the Bond Trustee may have pursuant to this Interim Order, the Bond Documents or applicable law.  Nothing herein shall (i) preclude the Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay; or (ii) prevent the Bond Trustee from asserting at some later time that its liens and security interests in Pre-Petition Collateral are not being adequately protected.

c.    *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

d.    *Restriction on Funds*. Notwithstanding anything herein to the contrary, during the Interim Use Period, no Pre-Petition Collateral or proceeds thereof in which the Bond Trustee has a valid and perfected lien nor any portion of the Carve-Out may be used by the Debtors, their estates, any official or unofficial committee, any trustee or examiner appointed in the Chapter 11 Cases or any Chapter 7 trustee, or any other person, party or entity to, directly or indirectly to assert, join, commence, support, investigate, or prosecute any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against the Bond Trustee and its affiliates (in any capacity) with respect to any transaction, occurrence, omission, or action; *provided however,* up to $35,000 of Cash Collateral may be used by to inquire into and investigate these matters.

9.    <u>Limitation of Liability</u>.   In determining to enforce the rights and remedies

14

afforded to the Bond Trustee under this Interim Order and/or the Bond Documents, the Bond Trustee shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 *et seq.* as amended, or any similar federal statute). Furthermore, nothing in this Interim Order or in the Bond Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Bond Trustee any liability for any claims arising from the prepetition or post-petition activities of the Debtors.

10.   <u>Survival of Interim Order</u>.   Except as otherwise provided herein, all of the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Chapter 11 plan in the Chapter 11 Cases, (ii) converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, (iii) dismissing the Chapter 11 Cases, (iv) withdrawing of the reference of the Chapter 11 Cases from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in the Court.   The terms and provisions of this Interim Order, including the protections granted to the Bond Trustee pursuant to this Interim Order and the Bond Documents, shall continue in full force and effect notwithstanding the entry of such order.

11.   <u>Effectiveness</u>.   This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim Order.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately

15

effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

12.     <u>No Waivers or Modification of Interim Order</u>.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the Bond Trustee and no such consent shall be implied by any other action, inaction or acquiescence of the Bond Trustee.

13.     <u>Headings</u>.  All paragraph headings used in this Interim Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

14.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order.

15.     <u>Reservations</u>.  This Interim Order shall be deemed a request by the Bond Trustee for relief from the automatic stay of section 362 of the Bankruptcy Code and for adequate protection as of the Petition Date for purposes of section 507(b) of the Bankruptcy Code.  The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Bond Trustee to take any action specifically authorized or contemplated by this Interim Order and exercise possession, control, use and/or distribution of any funds now or hereafter held by it as permitted under the Bonds Documents.

16.     <u>Notice of Final Hearing</u>.  The Final Hearing is scheduled for February 19, 2020 at 1:30 p.m. (Eastern time) before the Honorable Frank W. Volk, Robert C. Byrd U.S. Courthouse, 300 Virginia Street East, Room 3200, Charleston, West Virginia 25301, and may be continued from time to time without further notice other than that given in open Court.  The Debtors are directed to serve a copy of this Interim Order by first class mail on the Notice Parties

within two (2) days of entry, which service shall constitute adequate and proper notice of the

Final Hearing.  A proposed form of Final Order shall be filed with the Court no later than

February 12, 2020.  Any objections or responses to the Final Order must be in writing, must

conform to the Bankruptcy Rules and the Local Rules, must set forth the name of the objecting

party, the basis for the objection and the specific grounds therefor, and shall be filed and served

on (i) the Debtors, through their proposed counsel, Whiteford, Taylor & Preston LLP, Attn:

Michael J. Roeschenthaler, 200 First Avenue, Third Floor, Pittsburgh, PA 15222; (ii) counsel to

the Bond Trustee, Mintz Levin, Attn: Colleen A. Murphy and Ian A. Hammel, One

Financial Center, Boston, MA 02111, and Dinsmore & Shohl LLP, Attn: Janet Holbrook,

6111 Third Avenue, Huntington, WV 25701; and (iv) the Office of the United States Bond

Trustee for the Southern District of West Virginia, Attn: Debra A. Wertman, 300 Virginia

Street East, Room 2025, Charleston, WV 25301 so as to actually be received on or before

February 12, 2020 at 4:00 p.m. (Eastern time).  Any timely and properly filed and served

objection will be heard at the Final Hearing.


Presented By:

*/s/ Jared M. Tully*
Jared M. Tully, Esq. (WV Bar No. 9444)
FROST BROWN TODD, LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
304-345-0111 (phone)
304-345-0115 (fax)
jtully@fbtlaw.com

Ronald E. Gold, Esq. (Ohio Bar No. 0061351)
Douglas L. Lutz, Esq. (Ohio Bar No. 0064761)
3300 Great American Tower
301 East Fourth Street

Cincinnati, Ohio  45202
513-651-6800  Telephone
513-651-6981  Facsimile
rgold@fbtlaw.com
dlutz@fbtlaw.com

*Proposed Local Counsel to the Debtors and*
*Debtors-in-Possession*

*-AND-*

Brandy M. Rapp (WV Bar No. 10200)
WHITEFORD TAYLOR & PRESTON LLP
10 S. Jefferson Street, Suite 1110
Roanoke, Virginia 24011
(540) 759-3577 Tel.
(540) 759-3567 Fax
brapp@wtplaw.com


Michael J. Roeschenthaler (PA Id. No. 87647)
200 First Avenue, Third Floor
Pittsburgh, PA 15222
(412) 618-5601 Tel.
mroeschenthaler@wtplaw.com

*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*

**Thomas Health System**
Budget supporting Interim Cash Collateral Order
Publish Date: 1.14.20

| | | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|
| **Week Ending** | | 1/17/20 | 1/24/20 | 1/31/20 | 2/7/20 |
| **Cash Receipts:** | | | | | |
| Parallon TMH & SFH | | $  4,152,894 | $  4,152,894 | $  4,152,894 | $  4,152,894 |
| Direct TMH & SFH | | 419,102 | 419,102 | 419,102 | 419,102 |
| Patient Pay 5/3 TMH & SFH | | 63,472 | 63,472 | 63,472 | 63,472 |
| 340b | | 180,371 | 180,371 | 180,371 | 180,371 |
| Family Rx | | 71,534 | 71,534 | 71,534 | 71,534 |
| DPP - Medicaid | | - | - | - | - |
| THSPP | | 392,577 | 392,577 | 392,577 | 392,577 |
| Other | | 63,581 | 63,581 | 63,581 | 63,581 |
| | **Total Cash Receipts** | **$5,343,531** | **$5,343,531** | **$5,343,531** | **$5,343,531** |
| | | | | | |
| **Cash Disbursements:** | | | | | |
| **Operating** | | | | | |
| Payroll | | $           - | $ (4,184,645) | | $ (4,184,645) |
| Employee Benefits | | (92,551) | (516,369) | (92,551) | (516,369) |
| Contract Labor | | | (73,000) | (10,000) | (423,000) |
| Contract Services | | | | | |
| Insurance | | (34,303) | (34,303) | (34,303) | (34,303) |
| Med Spec/Prof Fees | | (258,426) | (208,126) | (258,426) | (208,126) |
| Other Expenses | | (42,000) | | (58,750) | (12,000) |
| Rent and Leases | | (45,392) | (50,119) | (23,153) | (125,765) |
| Repairs & Maintenance | | (12,500) | (12,500) | (12,500) | (12,500) |
| Supplies | | (237,500) | (237,500) | (237,500) | (237,500) |
| Utilities | | (200,000) | | | |
| 340B | | (42,500) | | (42,500) | |
| Broad Base/Acute Care Tax | | (594,212) | - | - | - |
| Sale & Use Tax | | - | (78,952) | (3,007) | - |
| Capital Expenditures | | (114,600) | (23,500) | | (70,000) |
| | **Total Oper Cash Disb** | **$ (1,673,985)** | **$ (5,419,013)** | **$   (772,690)** | **$ (5,824,208)** |
| | | | | | |
| **Total Cash Disbursements** | | **$ (1,673,985)** | **$ (5,419,013)** | **$   (772,690)** | **$ (5,824,208)** |
| | | | | | |
| **Net Cash Flow** | | 3,669,546 | (75,482) | 4,570,841 | (480,677) |
| | | | | | |
| **Operating Cash Balances:** | | | | | |
| **Beginning of Period 1/11/20** | | $  5,707,964 | $  9,377,511 | $  9,302,028 | $ 13,872,869 |
| Receipts | | 5,343,531 | 5,343,531 | 5,343,531 | 5,343,531 |
| Disbursements | | (1,673,985) | (5,419,013) | (772,690) | (5,824,208) |
| **End of Period** | | **$  9,377,511** | **$  9,302,028** | **$ 13,872,869** | **$ 13,392,193** |
| | | | | | |
| **Investments 1/11/20** | | **$ 32,244,837** | **$ 32,244,837** | **$ 32,244,837** | **$ 32,244,837** |
| **Total Cash and Investments** | | **$ 41,622,347** | **$ 41,546,865** | **$ 46,117,706** | **$ 45,637,029** |

Note: This budget is for an interim period of 4 weeks and does not include any professionals fees.

It is anticipated that a longer term cash collateral agreement will include a budget with professional fees

(including transactional related closing fees), which will be included in the Carve-Out.

Cash and Investment balances reflect Debtors and related entities.

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| In re: | Chapter 11 |
| THOMAS HEALTH SYSTEM, INC., *et al.*, | Case No. 20-20007 (FWV) |
| Debtors.[1] | (Jointly Administered) |

**INTERIM ORDER (A) AUTHORIZING THE USE OF CASH AND OTHER
COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A
FINAL HEARING AND (D) GRANTING RELATED RELIEF**

Upon the motion of Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital

Association, Charleston Hospital, Inc., and THS Physician Partners, Inc., the above-captioned

debtors and debtors-in-possession (each, a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>"), pursuant to

sections 105, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014

and Bankr. S.D. W.Va. R. 4001-2 for entry of an interim order (this "<u>Interim Order</u>"), *inter alia*:

(i) authorizing the Debtors to use cash and other collateral; (ii) granting adequate protection; (iii)

scheduling a final hearing (the "<u>Final Hearing</u>") to consider entry of a final order concerning the

foregoing (the "<u>Final Order</u>" and together with this Interim Order, the "<u>Orders</u>"); and (iv)

vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to

the extent necessary to implement and effectuate the terms and provisions of the Orders [docket

no. ____] (the "<u>Motion</u>"),

The Court having considered the Motion, and the evidence submitted by the Debtors at

the hearing held on January 15, 2020 (the "<u>Interim Hearing</u>"); and notice of the Interim Hearing

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Thomas Health System, Inc. (0674); Herbert J. Thomas Memorial Hospital Association (4900); Charleston Hospital, Inc. (2692); and THS Physician Partners, Inc. (5947).  Capitalized terms used but not defined in this Interim Order have the meanings specified in the Motion.

having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9014; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court on an interim basis; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors, their estates, and their creditors, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]

A.      Petition Date.   On January 10, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of West Virginia (the "Court").

B.      Debtors-in-Possession.    The Debtors continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C.      Jurisdiction and Venue.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Statutory Committee.   The Office of the United States Bond Trustee for the Southern District of West Virginia (the "United States Trustee") has not appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code.

---

[2]The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.    Notice.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001 and

Bankr. S.D. W.Va. R. 4001-2.  Notice of the Interim Hearing and the relief requested in the Motion

has been provided by overnight mail, email and/or fax on January 13, 2020 to: (a) the United States

Trustee; (b) the office of the United States Attorney for the District of West Virginia; (c) the

creditors appearing on the Debtors' consolidated list of the top 30 unsecured creditors; (d) the

Internal Revenue Service; (e) any local, state or federal agencies that regulate the Debtors' business;

(f) the Bond Trustee and counsel of record; (g) Huntington Bank; (h) United Bank; (i) Bank of

America; (j) Fifth Third Bank; (k) all parties requesting notices pursuant to Bankruptcy Rule

2002(f); and (l) all known secured creditors (collectively, the "Notice Parties").   Under the

circumstances, such notice of the Interim Hearing and the relief requested in the Motion is sufficient

and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b),

4001(d), and the Local Rules.

F.    The Pre-Petition Indebtedness.  Reference is made to paragraphs 30 through 37 of

the "*Declaration of Daniel J. Lauffer in Support of Chapter 11 Petitions and First Day Motions and

Applications*" describing the Pre-Petition Indebtedness, which is incorporated herein.

G.    The Debtors' Use of Pre-Petition Collateral.

i.    Need for Use of Pre-Petition Collateral.  The Debtors' ability to operate

requires immediate access to certain of the Bond Trustee's pre-petition collateral (the "Pre-

Petition Collateral"), including cash that constitutes Pre-Petition Collateral ("Cash Collateral"),

the absence of which would immediately and irreparably harm the Debtors, their estates, and

their creditors.  If the Debtors are not able to use Pre-Petition Collateral as provided herein they

likely will not be able to fund payroll and other operating expenses that are necessary to maintain

3

the value of the Debtors' estates and to enable the Debtors to maximize recoveries for all parties in interest.

      ii.    Adequate Protection Related to the Debtors' Use of Pre-Petition Collateral.  The Bond Trustee has demanded adequate protection for the use of Pre-Petition Collateral.  As a condition to the Debtors' use of any Pre-Petition Collateral, the Debtors are required to, in the alternative, provide adequate protection to the Bond Trustee or obtain the Bond Trustee's consent.  To address these circumstances during the Interim Use Period (as defined below), the Bond Trustee:

      (a)    Shall maintain its existing security interests and liens in all Pre-Petition Collateral and be granted on the terms of this Interim Order adequate protection replacement security interests and liens upon all assets of the Debtors, whether now existing or hereafter acquired and the proceeds and products thereof, solely to the extent of any diminution in the value from and after the Petition Date of the Bond Trustee's interest in Pre-Petition Collateral resulting from the postpetition use of Cash Collateral (including the Carve Out), the postpetition use of other Pre-Petition Collateral, or the imposition of the automatic stay (collectively, the "Diminution in Value"), junior only to the Carve-Out (as defined below) and the Bond Trustee's liens and security interests in the Pre-Petition Collateral ("Pre-Petition Liens").

      (b)    Shall receive on the terms of this Interim Order a superpriority administrative expense claim pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, solely to the extent of Diminution in Value and the Adequate Protection Liens are later proven to be inadequate, junior only to the Pre-Petition Liens, Adequate Protection Liens, and Carve-Out.

(c)     Shall receive, subject to and effective upon the entry of a Final Order in form and substance to be negotiated between, and mutually acceptable, to the Debtors and the Bond Trustee, a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, (b) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (c) the equitable doctrine of "marshaling" or any similar doctrine.

(d)     Shall receive the other rights and protections described more fully below.

H.     Relief Essential; Best Interest; Good Cause.  The relief requested in the Motion is necessary, essential, and appropriate for the continued operations, and for the management, maintenance, and preservation, of the Debtors' assets.  It is in the best interest of the Debtors' estates for the Debtors to be allowed to use Pre-Petition Collateral pursuant to this Interim Order. Good cause has been shown for the relief requested in the Motion and as granted in this Interim Order.

I.     Consents.  Subject to the entry of this Interim Order on the terms set forth on the consensual form presented with the Motion, the Bond Trustee consents to the relief requested herein on an interim basis, subject to further proceedings before this Court.  All rights of the Bond Trustee and the Debtors with respect to relief on the Motion on a final basis, or on any further interim basis beyond the period contemplated by this Interim Order, shall be and are reserved.

J.     Entry of Interim Order.  The Debtors have requested the immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b).  The entry of this Interim Order will minimize disruption of the Debtors' businesses and will preserve and maintain the assets of the Debtors' estates, will avoid immediate and irreparable harm to, and is in the best interest of, the Debtors, their creditors and their estates.

5

Based upon the foregoing findings and conclusions, and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      <u>Motion Granted</u>.  The Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order on an interim basis and subject to further proceedings in connection with a Final Order.

2.      <u>Authorization for Use of Pre-Petition Collateral</u>.  Subject to the terms of this Order, the Debtors are hereby authorized to use the Pre-Petition Collateral, including Cash Collateral, to pay the ordinary and reasonable expenses of operating their businesses in accordance the terms of this Interim Order and the Budget (as defined herein) from the Petition Date until the earlier of the entry of a Final Order, a further interim order mutually acceptable to the Debtors and Bond Trustee, or the termination of this Interim Order on its terms (the "<u>Interim Use Period</u>").

3.      <u>Adequate Protection</u>.  As adequate protection:

a.      the Bond Trustee shall be and hereby is granted effective and perfected upon the date of this Interim Order, without the necessity of the execution by the Debtors or the Bond Trustee of any security, mortgage or similar documents, and solely to the extent of any Diminution in Value of the Pre-Petition Collateral during the Interim Use Period, valid, binding continuing, enforceable, fully perfected security interest and liens (the "<u>Adequate Protection Liens</u>") upon all assets and property of the Debtors and their respective estates of any kind or nature whatsoever, now existing or hereafter acquired, including, without limitation, the Pre-Petition Collateral, subject only to the Pre-Petition Liens, any other valid and perfected liens now

6

existing in the assets, and the Carve-Out.  Notwithstanding the forgoing, the Adequate Protection

Liens shall not attach to avoidance actions of the Debtors' estates arising under chapter 5 of the

Bankruptcy Code or proceeds thereof.  The Adequate Protection Liens (a) are and shall be in

addition to the Pre-Petition Liens; (b) are and shall be deemed properly perfected, valid and

enforceable liens without any further action by the Debtors or the Bond Trustee and without the

execution, filing or recordation of any financing statements, security agreements, mortgages or

other documents and instruments; and (c) shall remain in full force and effect notwithstanding

any subsequent conversion to Chapter 7 or dismissal of the Chapter 11 Cases.  Although not

required, upon request by the Bond Trustee, the Debtors shall execute and deliver any and all

UCC Financing Statements or other instruments or documents considered by the Bond Trustee to

be reasonably necessary in order to perfect the Adequate Protection Liens and proceeds granted

by this Interim Order, and the Bond Trustee is authorized to receive, file and record the

foregoing, which actions shall not be deemed a violation of the automatic stay embodied in

section 362 of the Bankruptcy Code.  The Bond Trustee, in its discretion, may file a photocopy

of this Interim Order as a financing statement or other evidence of the perfection of its respective

liens, with any recording officer designated to file financing statements or with any registry of

deeds, and in such event, the recording officer shall be authorized to file or record such copy of

this Interim Order.

b.      the  Bond  Trustee  is  hereby  granted  an  allowed  superpriority

administrative expense claim in the Chapter 11 Cases, as and to the extent provided by sections

503(b) and 507(b) of the Bankruptcy Code (the "Superpriority Claim") solely to the extent of

Diminution in Value and the Adequate Protection Liens are later proven to be inadequate,

subject only to the Carve-Out.  Subject to and effective upon the entry of a Final Order in form

and substance to be negotiated between, and mutually acceptable, to the Debtors and the Bond Trustee, any Superiority Claims shall include recovery against the proceeds of avoidance actions of the Debtors' estates arising under chapter 5 of the Bankruptcy Code.

          c.     The Debtors shall comply with, and shall use cash, including Cash Collateral, solely in accordance with a budget, as amended from time to time with the prior written approval of the Bond Trustee, reflecting anticipated operating and capital expenses of the Debtors and professional fees and expenses (the "<u>Budget</u>") subject to Permitted Variances (as defined in this paragraph). "<u>Permitted Variance</u>" shall mean, for any Testing Period (as defined in this paragraph), (i) any favorable variance, (ii) an unfavorable variance for disbursements of not more than fifteen (15) percent with respect to any disbursement line item in the Budget or ten (10) percent in aggregate disbursements, or (iii) an unfavorable variance for collections of not more than ten (10) percent in aggregate collections; <u>provided</u>, <u>however</u>, that the Debtors shall be permitted to pay the actual expenses incurred for utilities and the fees of the United States Trustee pursuant to 28 U.S.C. § 1930 together with any interest thereon pursuant to 31 U.S.C. § 3717. Budget compliance for disbursements shall be tested weekly from the entry of this Interim Order on a cumulative basis from the Petition Date, *provided* that starting in the fifth week from the entry of this Interim Order, compliance will be tested weekly on a rolling four (4) week basis, and Budget compliance for collections shall be tested weekly on a rolling four (4) week basis (each, a "<u>Testing Period</u>"). If the cash disbursements in any such period are less than the amounts for such period in the applicable Budget, then such disbursements shall be added to the next succeeding period for purposes of measuring compliance with the Budget (and shall continue to roll over into successive periods to the extent such additional budgeted capacity is unused by the Debtors). To the extent actual amounts for total cash disbursements from

operations line items and/or professional fees are in excess to the Budget, the parties hereto agree

to negotiate in good faith to discuss any modifications to the Budget and Permitted Variances.

The Permitted Variance with respect to each Testing Period shall be determined and certified to

the Bond Trustee by the Debtors not later than the 7th day immediately following each such

Testing Period.   The Bond Trustee's approval for any amendment to the Budget shall be

presumed absent written notice by the Bond Trustee to the Debtors within five (5) business days

after receiving a proposed amendment that it opposes the amendment.  In the event of a dispute

concerning the Budget, all rights of the Debtors and Bond Trustee shall be and are reserved;

   d. The Debtors shall also continue to provide all financial reporting required

by the Bond Documents.  In addition, upon reasonable notice, the Debtors shall provide the Bond

Trustee, and its representatives with access to the Debtors' premises, personnel (including, but

not limited to, senior management and any similar person or firm employed by the Debtors in the

Chapter 11 Cases), advisors/representatives, books and records, and the Debtors shall cooperate

fully in all reasonable requests for information and data made by the Bond Trustee.

Notwithstanding the foregoing, nothing herein shall be treated as a waiver of any privilege of the

Debtors, including, without limitation, the attorney client privilege, work product doctrine or

similar privilege.

   4. Carve-Out.  The relief described in this Interim Order is based in part on the

Carve-Out from the Pre-Petition Collateral described in this paragraph.  "Carve-Out" shall mean

the sum of (i) all fees required to be paid to the Clerk of the Court and to the United States

Trustee under 28 U.S.C § 1930(a) together with any interest thereon pursuant to 31 U.S.C. §

3717; (ii) Court-allowed fees and expenses of a trustee appointed under section 726(b) of the

Bankruptcy Code in an amount not to exceed $50,000, and (iii) professional fees and expenses of

attorneys and financial advisors employed by the Debtors and any official committee(s) of creditors (the "Committee"), pursuant to sections 327, 328 and 1103 of the Bankruptcy Code (collectively, the "Case Professionals") to the extent reflected in the Budget, allowed by the Court, and incurred from the Petition Date to the occurrence of an uncured Termination Event and (iv) professional fees of Debtors' professionals in an aggregate amount not to exceed $250,000, and professional fees of Committee's professionals (to the extent a Committee is appointed) in an aggregate amount not to exceed $35,000, in each case to the extent allowed by the Court, and incurred after the occurrence of a Termination Event.  Nothing herein shall constitute a waiver of any right of the Bond Trustee to object to fees and expenses of Case Professionals nor shall anything herein bar the Case Professionals from seeking approval of fees and reimbursement of expenses nunc pro tunc to the Petition Date, including, without limitation, any transactional or financing fees.  The Bond Trustee and the Case Professionals acknowledge that professional fees and expenses are accruing during the Interim Use Period, however the payment of such fees shall be reflected in the Budget once amended.  For avoidance of doubt, any funds held by the Debtors as of a Termination Event shall be applied, dollar for dollar, against the Carve-Out.

5.    Waivers.

a.    Subject to and effective upon the entry of a Final Order in form and substance to be negotiated between, and mutually acceptable, to the Debtors and the Bond Trustee, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the Pre-Petition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the

prior written consent of the Bond Trustee, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

        b.     Subject to and effective upon the entry of a Final Order in form and substance to be negotiated between, and mutually acceptable, to the Debtors and the Bond Trustee, the Debtors shall waive (i) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (ii) the equitable doctrine of "marshaling" or any similar doctrine.

        c.     For so long as this Interim Order remains in force, the Debtors shall not grant, suffer, or permit any claim, expense or lien having priority or being *pari passu* to the priority of the Bond Trustee's rights, liens and security interests in Pre-Petition Collateral.

      6.    <u>Termination Events</u>.  The occurrence of any one or more of the following events shall constitute a termination event (a "<u>Termination Event</u>") under this Interim Order, unless expressly waived in writing by the Bond Trustee:

        a.     The Debtors use Cash Collateral or proceeds from other Pre-Petition Collateral for any purpose or in a manner other than as permitted in this Interim Order and in the Budget without the consent of the Bond Trustee;

        b.     The Debtors fail to obtain entry of a Final Order within forty-five (45) days after the Petition Date;

        c.     The entry of an order without the prior consent of the Bond Trustee reversing, staying, vacating, amending, supplementing, or otherwise modifying this Interim Order;

        d.     Any lien or security interest purported to be created by this Interim Order shall cease to be, or shall be asserted by the Debtors not to be, a valid, perfected, security interest in the assets or properties covered thereby;

e.      The dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code;

f.      The entry by the Court of an order terminating the Debtors' right to use Cash Collateral; or

g.      The Debtors fail to cure any other non-compliance with the Interim Order within five (5) days after notice is given by the Bond Trustee.

The Debtors and Bond Trustee shall negotiate the Termination Events that would apply under any Final Order.

7.      <u>Rights upon Termination Event</u>.  Upon the occurrence of a Termination Event that has not been cured (if a cure period applies), (i) the Bond Trustee may send a Termination Declaration (as defined herein) which shall provide that five (5) business days after the Termination Declaration Date (as defined herein) the Bond Trustee may declare the immediate termination of any further use by the Debtors of any Pre-Petition Collateral, including Cash Collateral, and/or the Bond Trustee may seek a hearing on an expedited basis to request that the automatic stay vacated and modified to the extent necessary to permit the Bond Trustee to exercise its rights and remedies provided for in the Bond Documents and/or under this Interim Order (any such declaration by the Bond Trustee shall be referred to herein as a "<u>Termination Declaration</u>").  The Termination Declaration shall be given by email (or other electronic means) to counsel to the Debtors, counsel to any Committee, and the United States Trustee (the date any such Termination Declaration is made shall be referred to herein as the "<u>Termination Declaration Date</u>").  Upon the occurrence of a Termination Event, the Debtor and/or a Committee (if appointed) shall be entitled to an emergency hearing on the further use of the Bond Trustee's Prepetition Collateral including Cash Collateral.  Upon the occurrence of a Termination Event,

all rights of the Debtors and Bond Trustee with respect to the Debtors' continued use of Pre-Petition Collateral shall be and hereby are reserved.

8.    <u>Other Matters</u>.

a.    *Binding Effect*.  All of the provisions of this Interim Order shall be binding upon the Debtors, any Committee, all other creditors of the Debtors, and all other parties in interest, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases or any subsequent Chapter 7 case, or upon dismissal of the Chapter 11 Cases or any Chapter 7 case, except as otherwise provided herein.  To the extent any terms of this Interim Order are modified, amended, or vacated, and claim or right granted to the Bond Trustee hereunder arising prior to the effective date of such modification, amendment or vacation shall continue to be governed in all respects by the original provisions of this Interim Order.

b.    *No Waiver*.  The failure of the Bond Trustee to seek relief or otherwise exercise its rights and remedies, as applicable, under the Bond Documents, this Interim Order or otherwise, shall not constitute a waiver of any of the Bond Trustee's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the Bond Trustee under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Bond Trustee to (i) request conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and this Interim Order, a plan of

13

reorganization, or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable or otherwise) the Bond Trustee may have pursuant to this Interim Order, the Bond Documents or applicable law.  Nothing herein shall (i) preclude the Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay; or (ii) prevent the Bond Trustee from asserting at some later time that its liens and security interests in Pre-Petition Collateral are not being adequately protected.

c.      *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

d.      *Restriction on Funds*.  Notwithstanding anything herein to the contrary, during the Interim Use Period, no Pre-Petition Collateral or proceeds thereof in which the Bond Trustee has a valid and perfected lien nor any portion of the Carve-Out may be used by the Debtors, their estates, any official or unofficial committee, any trustee or examiner appointed in the Chapter 11 Cases or any Chapter 7 trustee, or any other person, party or entity to, directly or indirectly to assert, join, commence, support, investigate, or prosecute any action for any claim, counter-claim, action, cause of action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against the Bond Trustee and its affiliates (in any capacity) with respect to any transaction, occurrence, omission, or action; *provided however,* up to $35,000 of Cash Collateral may be used by to inquire into and investigate these matters.

9.      <u>Limitation of Liability</u>.  In determining to enforce the rights and remedies afforded to the Bond Trustee under this Interim Order and/or the Bond Documents, the Bond Trustee shall not be deemed to be in control of the operations of the Debtors or to be acting as a

"responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used  in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 *et seq.* as amended, or any similar federal statute).  Furthermore, nothing in this Interim Order or in the Bond Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Bond Trustee any liability for any claims arising from the prepetition or post-petition activities of the Debtors.

10.    Survival of Interim Order.    Except as otherwise provided herein, all of the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Chapter 11 plan in the Chapter 11 Cases, (ii) converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, (iii) dismissing the Chapter 11 Cases, (iv) withdrawing of the reference of the Chapter 11 Cases from the Court, or (v) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in the Court.  The terms and provisions of this Interim Order, including the protections granted to the Bond Trustee pursuant to this Interim Order and the Bond Documents, shall continue in full force and effect notwithstanding the entry of such order.

11.    Effectiveness.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim  Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim  Order.

12.    <u>No Waivers or Modification of Interim Order</u>.  The Debtors irrevocably waive

any right to seek any modification or extension of this Interim Order without the prior written

consent of the Bond Trustee and no such consent shall be implied by any other action, inaction or

acquiescence of the Bond Trustee.

13.    <u>Headings</u>.  All paragraph headings used in this Interim Order are for ease of

reference only and are not to affect the construction hereof or to be taken into consideration in

the interpretation hereof.

14.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce

this Interim Order.

15.    <u>Reservations</u>.  This Interim Order shall be deemed a request by the Bond Trustee

for relief from the automatic stay of section 362 of the Bankruptcy Code and for adequate

protection as of the Petition Date for purposes of section 507(b) of the Bankruptcy Code.  The

automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the Bond

Trustee to take any action specifically authorized or contemplated by this Interim Order and

exercise possession, control, use and/or distribution of any funds now or hereafter held by it as

permitted under the Bonds Documents.

16.    <u>Notice of Final Hearing</u>.  The Final Hearing is scheduled for _____, 2020

at _____ a.m. (Eastern time) before the Honorable Frank W. Volk, Robert C. Byrd U.S.

Courthouse, 300 Virginia Street East, Room 3200, Charleston, West Virginia 25301, and may be

continued from time to time without further notice other than that given in open Court.  The

Debtors are directed to serve a copy of this Interim Order by first class mail on the Notice Parties

within two (2) days of entry, which service shall constitute adequate and proper notice of the

Final Hearing.  A proposed form of Final Order shall be filed with the Court no later than

16

_____, 2020.  Any objections or responses to the Final Order must be in writing, must conform to the Bankruptcy Rules and the Local Rules, must set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and shall be filed and served on (i) the Debtors, through their proposed counsel, Whiteford, Taylor & Preston LLP, Attn: Michael J. Roeschenthaler, 200 First Avenue, Third Floor, Pittsburgh, PA 15222; (ii) counsel to the Bond Trustee, Mintz Levin, Attn: Colleen A. Murphy and Ian A. Hammel, One Financial Center, Boston, MA 02111, and Dismore & Shohl LLP, Attn: Janet Holbrook, 6111 Third Avenue, Huntington, WV 25701; and (iv) the Office of the United States Bond Trustee for the Southern District of West Virginia, Attn: Debra A. Wertman, 300 Virginia Street East, Room 2025, Charleston, WV 25301 so as to actually be received on or before _____, 2020 at 4:00 p.m. (Eastern time).  Any timely and properly filed and served objection will be heard at the Final Hearing.

**<u>Exhibit 1</u>**

**Budget**