## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **In re:** | Chapter 11 |
| **THOMAS HEALTH SYSTEM, INC., et al.** | Case No. 20-20007 (FWV) |
| **Debtors**[1] | (Jointly Administered) |

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

Dated: July 7, 2020

**WHITEFORD TAYLOR & PRESTON LLP**

/s/ *Michael J. Roeschenthaler*
Michael J. Roeschenthaler (PA Id. No. 87647)
200 First Avenue, Third Floor
Pittsburgh, PA 15222
(412) 618-5601 Tel.
mroeschenthaler@wtplaw.com

Brandy M. Rapp (WV Bar No. 10200)
10 S. Jefferson Street, Suite 1110
Roanoke, Virginia 24011
(540) 759-3577 Tel.
brapp@wtplaw.com

*Counsel to the Debtors and*
*Debtors-in-Possession*

**FROST BROWN TODD, LLC**

Jared M. Tully (WV Bar No. 9444)
500 Virginia Street East, Suite 1100
Charleston, WV 25301
T: 304-345-0111
jtully@fbtlaw.com

Ronald E. Gold (Ohio Bar No. 0061351)
Douglas L. Lutz (Ohio Bar No. 0064761)
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
T: 513-651-6800
rgold@fbtlaw.com
dlutz@fbtlaw.com

*Local Counsel to the Debtors and*
*Debtors-in-Possession*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Thomas Health System, Inc. (0674); Herbert J. Thomas Memorial Hospital Association (4900); Charleston Hospital, Inc. (2692); THS Physician Partners, Inc. (5947); and TMH Services, Inc. (6607).

## TABLE OF CONTENTS

INTRODUCTION                                                                          1

ARTICLE I.        DEFINITIONS, INTERPRETATIONS, COMPUTATION OF        1
                  TIME, GOVERNING LAW AND OTHER REFERENCES

    A.  Defined Terms                                                      1
    B.  Rules of Interpretation                                          14
    C.  Computation of Time                                              14
    D.  Governing Law                                                    14
    E.  Reference to Monetary Figures                                    15
    F.  Reference to the Debtors or the Reorganized Debtors              15
    G.  Controlling Document                                              15

ARTICLE II.       ADMINISTRATIVE AND PRIORITY CLAIMS                 15

    A.  Administrative Claims                                             15
    B.  Professional Fee Claims                                           16
    C.  Priority Tax Claims                                               17

ARTICLE III.      CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS    17

    A.  Summary of Proposed Plan Treatment                                17
    B.  Classification and Specification of Treatment of Claims           17
    C.  Classes of Claims                                                 18
    D.  Treatment of Classes of Claim                                     18
    E.  Special Provision Governing Unimpaired Claims                     21
    F.  Elimination of Vacant Classes                                     21
    G.  Voting Classes; Presumed Acceptance by Non-Voting Classes        21
    H.  Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code    21

ARTICLE IV.       MEANS FOR IMPLEMENTATION OF THE PLAN               22

    A.  The Series 2008 Bonds Settlement                                   22
    B.  Sources of Consideration                                          23
    C.  Issuance of Series 2020 Bonds                                     23
    D.  Retained Claims                                                   25
    E.  Corporate Existence                                               25
    F.  Reorganized Debtor Governance                                     25
    G.  Officers of Reorganized Debtors                                   26
    H.  Employee Benefits                                                 26
    I.  Termination of Defined Benefit Pension Plans                     26
    J.  Vesting of Assets in the Reorganized Debtors                      27
    K.  Restructuring Transactions                                        27
    L.  Corporate Action                                                  28
    M.  Section 1146 Exemption from Certain Taxes and Fees                28

N.  Preservation of Causes of Action of the Debtors                                28
O.  Waiver of Avoidance Actions                                                    29
P.  Temporary Bar of In-Person Action and Proceedings                              29
Q.  Continuation or Imposition of Additional COVID-19 Restrictions                 29
R.  Resolution of Disputes Associated with Self Insured Trust                      30

ARTICLE V.     TREATMENT OF EXECUTORY CONTRACTS AND                                30
               UNEXPIRED  LEASES

A.  Treatment of Executory Contracts and Unexpired Leases                          30
B.  Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases       31
C.  Claims on Account of the Rejection of Executory Contracts or Unexpired         32
    Leases
D.  Assumption of the Medicare and/or Medicaid Provider and Supplier              33
    Agreements
E.  Indemnification Provisions                                                     34
F.  Insurance Policies                                                             35
G.  Modifications, Amendments, Supplements, Restatements and Other                 35
    Agreements
H.  Reservation of Rights                                                          35
I.  Contracts and Leases Entered Into After the Petition Date                      35

ARTICLE VI.    PROVISIONS GOVERNING DISTRIBUTIONS                                  36

A.  Distribution for Claims Allowed as of the Effective Date                       36
B.  No Postpetition Interest on Claims                                             36
C.  Distributions by the Disbursing Agent                                         36
D.  Delivery and Distributions; Undeliverable or Unclaimed Distributions          36
E.  Compliance with Tax Requirements                                              38
F.  Means of Cash Payment                                                          38
G.  Timing and Calculation of Amounts to Be Distributed                           39
H.  Setoffs                                                                        39
I.  Claims Paid or Payable by Third Parties                                        39

ARTICLE VII.   PROCEDURES FOR RESOLVING CONTINGENT,                                41
               UNLIQUIDATED, AND DISPUTED CLAIMS

A.  Resolution of Disputed Claims                                                  41
B.  No Distributions Pending Allowance                                             42
C.  Distributions After Allowance of Claim                                         42
D.  Reserve for Disputed Claims                                                    43

ARTICLE VIII.  DISCHARGE, SETTLEMENT, RELEASE, INJUNCTION, AND                     43
               RELATED PROVISIONS

A.  Discharge of Claims                                                            43
B.  Compromise and Settlement of Claims, Interests and Controversies              43

C.  Releases by the Debtors, Reorganized Debtors, their Affiliates and their          44
Estates

D.  Release by Holders of Claims                                                        45
E.  Release of Liens                                                                    46
F.  Exculpation                                                                         46
G.  Injunction                                                                          47
H.  Protection Against Discriminatory Treatment                                         49
I.  Recoupment                                                                          49
J.  Reimbursement or Contribution                                                       49
K.  Term of Injunction or Stays                                                         49

ARTICLE IX.     CONDITIONS PRECEDENT TO THE EFFECTIVE DATE                              50

A.  Conditions Precedent to the Effective Date                                          50
B.  Waiver of Conditions Precedent                                                      50
C.  Effect of Non-Occurrence of Conditions to Consummation                             50
D.  Nonconsensual Confirmation                                                          51

ARTICLE X.      MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE                          51
PLAN

A.  Modification of Plan                                                                51
B.  Effect of Confirmation on Modifications                                             51
C.  Revocation or Withdrawal of Plan                                                    51

ARTICLE XI.     RETENTION OF JURISDICTION                                               52

ARTICLE XII.    MISCELLANEOUS PROVISIONS                                                54

A.  Immediate Binding Effect                                                            54
B.  Additional Documents                                                                54
C.  Statutory Fees                                                                      54
D.  Cancellation of Instruments                                                         54
E.  Reservation of Rights                                                               55
F.  Successors and Assigns                                                              55
G.  Service of Documents                                                                55
H.  Entire Agreement                                                                    56
I.  Severability                                                                        56
J.  Tax Reporting and Compliance                                                        57
K.  Exhibits                                                                            57
L.  Votes Solicited in Good Faith                                                       57
M.  Waiver or Estoppel                                                                  57
N.  Dissolution of the Creditors Committee                                              57
O.  Closing of Chapter 11 Cases                                                         57

## <u>INTRODUCTION</u>

Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital Association, Charleston Hospital, Inc., THS Physician Partners, Inc., and TMH Services, Inc. (collectively, the "Debtors") jointly propose the Plan. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, properties and operations, projections, risk factors, a summary and analysis of the Plan and certain related matters. Capitalized terms used herein shall have the meanings set forth in Article I.A.

**ALL HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, OR MODIFY THE PLAN PURSUANT TO THE TERMS OF THE PLAN AND THE BANKRUPTCY CODE.**

## ARTICLE I.
## DEFINITIONS, INTERPRETATIONS, COMPUTATION OF TIME, <u>GOVERNING LAW AND OTHER REFERENCES</u>

*A.*     *Defined Terms*. The following terms shall have the following meanings:

*1.*     *"2008 Bond Documents"* means, collectively, the indentures, notes and all other agreements, mortgages, security agreements, documents or instruments executed or delivered in connection with the Series 2008 Bonds, including but not limited to the Bond Indenture and the Master Indenture.

*2.*     *"2020 Bond Documents"* means, collectively, the Trust Indenture between the Issuer and Wilmington Trust, National Association, as trustee, the Loan Agreement among the Issuer and the Obligated Debtors, the Continuing Covenants Agreement by and between the Obligated Debtors, TMH Services, Inc., and THS Physician Partners, Inc. and Wilmington Trust, National Association, as trustee, together with all other documents to be executed or delivered in connection with the issuance of the Series 2020 Bonds and on terms consistent with those set forth in the Plan.

*3.*     *"Administrative Claim Bar Date"* means the last date established by the Bankruptcy Court for a Holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim in the manner indicated in Article II of the Plan.

*4.*     *"Administrative Claim"* means a Claim that has been timely filed before the Administrative Claim Bar Date (except as otherwise provided herein or by a separate order of the Bankruptcy Court), for costs and expenses of administration under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries and payments for goods and other services); and (b) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930, but excluding Professional Fee Claims.

*5.* *"**Affiliate**"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

*6.* *"**Allowed**"* means, with respect to any Claim: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated, unless a Proof of Claim has been timely filed, and as to which the Debtors or other parties-in-interest have not filed an objection by the Claims Objection Deadline; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation executed prior to the Effective Date and approved by the Bankruptcy Court; or (ii) in any stipulation with the Reorganized Debtors executed on or after the Effective Date; (d) a Claim that is Allowed pursuant to the terms of the Plan; or (e) a Claim as to which a Proof of Claim has been timely filed and as to which no objection has been filed by the Claims Objection Deadline.

*7.* *"**Assumed Contract**"* means any Executory Contract or Unexpired Lease assumed by the Reorganized Debtors in accordance with Article V of the Plan.

*8.* *"**Assumed Indemnification Provisions**"* has the meaning ascribed to such term in Article V.E of the Plan.

*9.* *"**Assumption Notice**"* has the meaning ascribed to such term in Article V.B of the Plan.

*10.* *"**Avoidance Actions**"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors, the Reorganized Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

*11.* *"**Bankruptcy Code**"* means title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended from time to time.

*12.* *"**Bankruptcy Court**"* means the United States Bankruptcy Court for the Southern District of West Virginia, having jurisdiction over the Chapter 11 Cases.

*13.* *"**Bankruptcy Rules**"* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time.

*14.* *"**Bar Date**"* means any deadline for filing proofs of Claim, including, without limitation, Claims arising prior to the Petition Date and Administrative Claims, as established by an order of the Bankruptcy Court or under the Plan.

*15.* *"**Bond Collateral**"* means the real and personal property of the Obligated Debtors securing their obligations to the Bond Trustee and Bondholders under the 2008 Bond Documents.

16.    *"**Bond Deficiency Claims**"* means the General Unsecured Claims against the Debtors in the Allowed amount of $92,525,549, equal to the amount of the Series 2008 Bond Claims less the dollar amount of funds distributed to the Bond Trustee as a Secured Claim under Class 1 of the Plan and the dollar amount of the Indenture Funds as of the Petition Date.

17.    *"**Bondholders**"* means the holders of the Series 2008 Bonds.

18.    *"**Bond Indenture**"* means the Bond Trust Indenture dated as of June 1, 2008, between West Virginia Hospital Finance Authority and United Bank, Inc. as bond trustee, and any amendments or supplements thereto.

19.    *"**Bond Trustee**"* means UMB Bank, N.A., as successor master trustee and indenture trustee to United Bank, Inc. under the Bond Indenture, Master Indenture and other 2008 Bond Documents, and any successor trustee in such capacity.

20.    *"**Business Day**"* means any day, other than a Saturday, Sunday, "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)) or a day on which banking institutions in the State of West Virginia are authorized or obligated by law, executive order or governmental decree to be closed.

21.    *"**CARES Act**"* means *the Coronavirus Aid, Relief, and Economic Security Act*, which was enacted on March 27, 2020 to provide economic relief to protect the American people from the public health and economic impacts of COVID-19, and any amendments or supplemental relief related thereto.

22.    *"**CARES Funds**"* means any and all economic or other relief available under the CARES Act and any related programs, including, without limitation, certain public health and social services emergency funds established pursuant to, and in connection with, the CARES Act, modifications to certain Medicare and Medicaid provisions, amendments to Title VII of the Public Health Services Act, and any expanded coverage and reimbursement for diagnostic testing relating to COVID-19.

23.    *"**Cash**"* means unrestricted cash and cash equivalents, marketable securities and other liquid investments, including board-designated funds.

24.    *"**Causes of Action**"* means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims; (c) any Avoidance Action and claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; and (f) the Retained Claims.

25.   *"Challenge Rights"* means all rights afforded the Creditors Committee to investigate and challenge the amount, validity, extent, enforceability, perfection, or priority of the Series 2008 Bond Claims and Bond Collateral as set forth in the Final Cash Collateral Order.

26.   *"Challenge Litigation"* means the adversary commenced by the Creditors Committee against the Bond Trustee in the Bankruptcy Court as adversary no. 2:20-ap-02007 and purporting to assert certain claims and causes of action based on the Challenge Rights.

27.   *"Chapter 11 Cases"* means the bankruptcy cases commenced when the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date, which are being jointly administered under case number 20-20007 (FWV) in the Bankruptcy Court.

28.   *"Claim"* means a claim, as defined by Bankruptcy Code section 101(5), against any of the Debtors, whether or not asserted or Allowed.

29.   *"Claim Estimation Amount"* means either (i) the Claim amount temporarily allowed by Order of the Bankruptcy Court for voting purposes pursuant to Bankruptcy Rule 3018, (ii) the Claim amount contained on any Proof of Claim that has been timely filed with the Bankruptcy Court or Omni Agent Solutions, the claims agent appointed in this case (or otherwise deemed timely filed by the Bankruptcy Court under applicable law) to which no objection has been asserted, (iii) the unsecured Claim amount listed in the Schedules, even if such Claim is marked as disputed, contingent, and unliquidated, provided that such Claim has not been superseded by a filed Claim that is not subject to an objection, or (iv) in the absence of any of the foregoing, the Claim will be assigned a value of $0.00.

30.   *"Claims Objection Deadline"* means, with respect to any Claim, the latest of (a) one hundred eighty (180) days after the Effective Date; (b) ninety (90) days after the filing of an applicable Proof of Claim; or (c) such other date as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claim.

31.   *"Claims Register"* means the official claims register maintained in the Debtors' Chapter 11 Cases.

32.   *"Class"* means a class or category of Claims as classified and described in Article III of the Plan.

33.   *"CMS"* means the Centers for Medicare and Medicaid Services.

34.   *"Confirmation"* means the occurrence of the Confirmation Date.

35.   *"Confirmation Date"* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket.

36.   *"Confirmation Hearing"* means the final hearing on confirmation of the Plan pursuant to Bankruptcy Code section 1129.

37.     *"Confirmation Order"* means the order entered by the Bankruptcy Court confirming the Plan in accordance with Chapter 11 of the Bankruptcy Code.

38.     *"Consummation"* means the occurrence of the Effective Date.

39.     *"Convenience Claim"* means a Claim that would otherwise be classified as a General Unsecured Claim that is (i) in the amount of $1,000 or less or (ii) in an amount greater than $1,000 if the Holder of such Claim elects, on such Holder's timely cast ballot for voting on the Plan, to (x) reduce its Claim to the amount of $1,000 and (y) accept the distribution set forth in Article III.D hereof in full satisfaction, settlement and release, and discharge of such Claim, as such Class is authorized pursuant to the provisions of Bankruptcy Code section 1122.

40.     *"Convenience Class Cap"* has the meaning ascribed to such term in Article III.D.4 of the Plan.

41.     *"Corporate Governance Documents"* means the certificates of incorporation, certificates of formation, limited liability agreements and by-laws of the Debtors and the Reorganized Debtors.

42.     *"COVID-19"* means the disease formerly referred to as the "2019 novel coronavirus," "2019-nCoV," and/or often referred to as just "Coronavirus," with 'CO' standing for 'corona,' 'VI' for 'virus,' 'D' for disease, and '19' for 2019.

43.     *"COVID-19 Restrictions"* means any local, state or federal guidance, rules, regulations, direction, or law related to COVID-19 (or a similar/related strain) that would hinder or bar action by the Debtors, Reorganized Debtors, or third parties who are necessary to effectuate the Plan.

44.     *"Creditor"* means a holder of a Claim against a Debtor or Debtors.

45.     *"Creditors Committee"* means the Official Committee of Unsecured Creditors formed in these Chapter 11 Cases by the Office of the United States Trustee on January 29, 2020.

46.     *"Cure"* means the payment of Cash by the Reorganized Debtors, or the distribution of other property (each, as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtors and (b) permit the Reorganized Debtors to assume such Executory Contract or Unexpired Lease under Bankruptcy Code section 365(a).

47.     *"Cure Claim Amount"* has the meaning ascribed to such term in Article V.B of the Plan.

48.     *"D&O Liability Insurance Policies"* means all Insurance Policies (including, without limitation, any management liability policies, general liability policies, any errors and omissions policies, and, in each case, agreements, documents, or instruments related thereto) issued at any time on or prior to the Effective Date and providing coverage for liability of any

Debtors' directors, managers, and officers, and including any "tail", "runoff" or extended reporting period coverage to the extent obtained by the Debtors in relation to any such Insurance Policies.

49.    *"DCOH"* has the meaning ascribed to such term in Article IV.C.6 of the Plan.

50.    *"Debtor Intercompany Claim"* means any Claim held by a Debtor against another Debtor, all of which shall be Reinstated in the Plan.

51.    *"Debtor Released Claims"* has the meaning ascribed to such term in Article VIII.C of the Plan.

52.    *"Debtor Released Parties"* means (i) any Debtor Representatives, (ii) the Bond Trustee and Bondholders, and (iii) the respective current members, officers, directors, agents, subsidiaries, affiliates, general and limited partners, financial advisors, investment bankers, restructuring consultants, independent accountants, attorneys, employees and representatives of the foregoing persons, acting in such capacities, in any way relating to the Debtors and the Chapter 11 Cases.

53.    *"Debtors"* means Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital Association, Charleston Hospital, Inc., THS Physician Partners, Inc., and TMH Services, Inc.

54.    *"Debt Service Reserve Fund"* means the debt service reserve fund previously deposited with the Bond Trustee pursuant to the Bond Indenture for the purpose of securing the Obligated Debtors' payment obligations under the 2008 Bond Documents.

55.    *"Diminution Claim"* means the Claims of the Bond Trustee for diminution in value from and after the Petition Date of the Bond Trustee's interest in any Bond Collateral resulting from the Debtors' postpetition use of Bond Collateral or the imposition of the automatic stay.

56.    *"Disallowed Claim"* means any Claim or portion thereof, which has been disallowed by a Final Order and includes any Claim that is not an Allowed Claim for any other reason.

57.    *"Disbursing Agent"* means the Debtors or the Reorganized Debtors, or the entity or entities chosen by the Debtors or the Reorganized Debtors to make or facilitate distributions pursuant to the Plan.

58.    *"Disclosure Statement"* means the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization, dated July 7, 2020, as the same may be altered, modified, or amended.

59.    *"Disputed"* means, with respect to any Claim, any Claim that is not yet Allowed and is subject to a claims objection filed before the Claims Objection Deadline.

60.    *"Distribution Date"* means, except as otherwise provided herein (including the terms provided herein for distributions on account of Series 2008 Bond Claims), the date,

occurring as soon as practicable after the Effective Date, but occurring no later than thirty (30) days after the Effective Date, on which the Disbursing Agent first makes permissible distributions to Holders of Allowed Claims as provided in the Plan and any date thereafter on which the Disbursing Agent makes distributions to Holders of Allowed Claims as provided in the Plan.

61.    *"Distribution Record Date"* means the Effective Date or such other date as may be designated in the Confirmation Order. For the avoidance of doubt, the Bond Trustee may set record dates under the 2008 Bond Documents for funds received by the Bond Trustee under the Plan for distribution to Bondholders.

62.    *"DSCR"* has the meaning ascribed to such term in Article IV.C.6 of the Plan.

63.    *"Effective Date"* means, unless the Confirmation Order directs otherwise, a Business Day selected by the Debtors, which is no later than five (5) Business Days after the date on which each of the conditions to the Plan's Effective Date set forth herein have either been satisfied or waived in accordance with the Plan.

64.    *"Entity"* has the meaning set forth in section 101(15) of the Bankruptcy Code.

65.    *"ERISA"* means the Employee Retirement Income Security Act of 1974, as amended from time to time.

66.    *"Estate"* means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

67.    *"Executory Contract"* means a contract to which any of the Debtors is a party that is capable of assumption or rejection under Bankruptcy Code section 365.

68.    *"Exculpated Claim"* means any claim related to any act or omission in connection with, relating to or arising out of the Debtors' in or out-of-court restructuring efforts (including any and all actions associated with exploration and solicitation of financing/refinancing opportunities, sales or similar transactions, restructurings, the Chapter 11 Cases, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the administration and implementation of the Plan, the issuance of the Series 2020 Note and the execution of 2020 Bond Documents, or the distribution of property under the Plan or any other related agreement; provided, however, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud to the extent imposed by applicable non-bankruptcy law. For the avoidance of doubt, no Cause of Action, obligation or liability expressly established or preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

69.    *"Exculpated Parties"* means, collectively, and in each case in their capacities as such prior to and during the Chapter 11 Cases: (a) each of the Debtors and their Representatives; (b) each of the Reorganized Debtors and their Representatives; (c) the Creditors Committee and

7

its members and its Representatives; (d) the Bond Trustee and Bondholders; (e) any other Person designated as an Exculpated Party by operation of the Plan; and (f) with respect to each of the foregoing in clauses (a) through (e), such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, members of a board of trustees, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

70.    *"**Final Cash Collateral Order**"* means the Final Order of the Bankruptcy Court entered on March 30, 2020, wherein the Bankruptcy Court authorized the Debtors' continued use of cash collateral subject to certain conditions contained therein.

71.    *"**Final Order**"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to reasonable appeal, move for reargument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for reargument, reconsideration, or rehearing or petition for certiorari has been timely taken or filed, or as to which any appeal that has been taken, motion for reargument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

72.    *"**Financing Commitment Letter**"* has the meaning ascribed to such term in Article IV.C.2 of the Plan.

73.    *"**Foundation**"* means The Foundation for the Thomas Memorial and Saint Francis Hospitals, Inc.

74.    *"**General Unsecured Claim**"* means any Claim that is not a Secured Claim and is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, an Other Priority Claim, a Convenience Claim (except for purposes of defining Convenience Claims), or a Debtor Intercompany Claim. For the avoidance of doubt, Trade Claims and the Bond Deficiency Claim shall be an Allowed General Unsecured Claim.

75.    *"**Governmental Unit**"* has the meaning set forth in section 101(27) of the Bankruptcy Code.

76.    *"**HCM**"* means Hamlin Capital Management, LLC.

77.    *"**Holder**"* means an Entity holding a Claim.

78.    *"**Hospitals**"* means Thomas Memorial and St. Francis.

79.     *"Impaired"* means, with respect to any Claim, such Claim is impaired within the meaning of section 1124 of the Bankruptcy Code.

80.     *"Indemnification Provisions"* means each of the Debtors' indemnification provisions in place immediately prior to the Effective Date whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, the 2008 Bond Documents, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents and such current and former directors, officers, and managers' respective Affiliates.

81.     *"Indenture Funds"* means all funds held by the Bond Trustee, including funds swept from the Debt Service Reserve Fund described in the 2008 Bond Documents, in the Bond Trustee's possession as of the Petition Date in the amount of $5,390,180.

82.     *"Insurance Policies"* means, collectively, all of the Debtors' insurance policies and any agreements, documents, or instruments related thereto.

83.     *"Insurer"* has the meaning ascribed to such term in Article VI.I of the Plan.

84.     *"Issuer"* means West Virginia Hospital Finance Authority, a body politic and corporate of the State of West Virginia.

85.     *"Lien"* means any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

86.     *"Loan Agreement"* means the loan agreement to be entered into between the Issuer and the Obligated Debtors with respect to the proceeds of the Series 2020 Bonds.

87.     *"Master Indenture"* means the Master Trust Indenture dated as of June 1, 2008, between Thomas Memorial Hospital Association and Charleston Hospital, Inc. and the non-debtor Thomas Memorial Hospital Foundation, and United Bank, Inc. as Trustee, as supplemented and amended by a Supplemental Master Trust Indenture 2008-1, dated June 1, 2008, a Supplemental Master Indenture 2009-1, dated February 1, 2009, a Supplemental Master Trust Indenture 2009-2, dated July 1, 2009, as amended and/or supplemented from time to time.

88.     *"Medicare and Medicaid Assumption Date"* has the meaning ascribed to such term in Article V.D of the Plan.

89.     *"Medicare and/or Medicaid Provider and Supplier Agreements"* means the Medicare and or Medicaid Participating Physician or Supplier Agreements and Provider Agreements entered into between CMS and any of the Debtors.

90.     *"Obligated Debtors"* means Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital Association and Charleston Hospital, Inc.

91.    *"Operating Reserve Fund"* means the fund to be established pursuant to the terms of the 2020 Bond Documents and held by the bond trustee for the Series 2020 Bonds.

92.    *"Other Priority Claim"* means any Claim entitled to priority under Bankruptcy Code sections 507(a)(3), (4), (5), (7) or (9).

93.    *"Other Secured Claim"* means any Secured Claim other than that portion of the Series 2008 Bond Claims that are an Allowed Secured Claim under the Plan.

94.    *"PBGC"* means the Pension Benefit Guaranty Corporation, a federal agency that administers the pension insurance program under Title IV of ERISA.

95.    *"Person"* has the meaning set forth in section 101(41) of the Bankruptcy Code.

96.    *"Petition Date"* means January 10, 2020 with respect to Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital Association, Charleston Hospital, Inc. and THS Physician Partners, Inc., and May 22, 2020 with respect to TMH Services, Inc.

97.    *"Plan"* means this Joint Chapter 11 Plan of Reorganization dated July 7, 2020, as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

98.    *"Plan Supplement"* means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan filed by the Debtors as may be amended, supplemented, altered, or modified from time to time on the terms set forth herein.

99.    *"Priority Tax Claim"* means any Claim of a Governmental Unit of a kind entitled to priority under Bankruptcy Code section 507(a)(8), if Allowed.

100.    *"Professional Fee Claim"* means a Claim for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Chapter 11 Cases on or after the Petition Date and through and including the Effective Date. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute a Professional Fee Claim.

101.    *"Professionals"* means all professionals employed in these Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328 or 1103.

102.    *"Proof of Claim"* means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

103.    *"Pro Rata Share"* means with reference to any distribution on account of any Allowed Claim in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in that Class.

*104.*    *"Public Gatherings"* has the meaning ascribed to such term in Article IV.P of the Plan.

*105.*    *"Reinstated"* means, with respect to a Claim, that the Claim shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

*106.*    *"Released Claims"* has the meaning ascribed to such term in Article VIII.D of the Plan.

*107.*    *"Released Parties"* means, collectively, and in each case in their capacities as such prior to and during the Chapter 11 Cases: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) the Foundation (solely with respect to claims of the Bond Trustee and/or the holders of Series 2008 Bond Claims); (d) the Bond Trustee and Bondholders, and (e) with respect to each of the foregoing in clauses (a) through (d), such Entity's financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such. As applied to Bondholders and the Bond Trustee, Released Parties also means the Debtors' employees, officers, directors, and board members.

*108.*    *"Releasing Parties"* means all Persons or Entities who have held, hold or may hold Claims that have been released or discharged pursuant to the Plan, provided, however, that only the Bond Trustee and/or the holders of Series 2008 Bond Claims shall be Releasing Parties with respect to the Foundation.

*109.*    *"Relief Funds"* means any funds, proceeds, or other forms of relief available (monetary or non-monetary) under the CARES Act, including, without limitation, the CARES Funds, in addition to any and all other funds/relief available from any local, state, or federal agency or Governmental Unit, from any insurer, or under any Insurance Policies.

*110.*    *"Reorganized Debtor"* means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

*111.*    *"Representatives"* means any and all officers, directors, managers, principals, members, employees, agents, advisory board members, members of a board of trustees, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each solely in their respective capacities as such, serving or holding interests immediately prior to the occurrence of the Effective Date.

*112.*    *"Retained Claims"* means the Debtors' interests in all existing and potential causes of action and litigation in which any of the Debtors is the plaintiff (or could be a plaintiff), or a defendant with a counterclaim or cross claims, including, without limitation, any claim, right or interest each or any of the Debtors may have as a direct or indirect result of COVID-19, against or with respect to any local, state, or federal government, agency, instrumentality, or other Governmental Unit as well as any insurer (or account of any Insurance Policy), including, without limitation, Relief Funds.

*113.* "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statement of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521 and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

*114.* "*Secured Claim*" means any Claim of a Creditor that is secured by property of the Estates, to the extent of the value of the Creditor's interest in the Estates' interest in such property, as provided in Bankruptcy Code section 506(a), including the Other Secured Claims. Secured Claim also means a Claim of a Creditor that is subject to setoff under Bankruptcy Code section 553, to the extent of the amount subject to setoff, as provided in Bankruptcy Code section 506(a), and specifically including the secured portion of the Series 2008 Bond Claims and Other Secured Claims.

*115.* "*Self Insured Trust*" means that certain trust created pursuant to the Self-Insurance Trust Agreement of Herbert J. Thomas Memorial Hospital executed on August 8, 1978 by and between Herbert J. Thomas Memorial Hospital Association and Kanawha Banking & Trust Company National Association, and any and all amendments thereto.

*116.* "*Senior Bonds 9019 Settlement*" has the meaning ascribed to such term in Article IV.A of the Plan.

*117.* "*Series 2008 Bond Claims*" means the Claims against the Debtors under the 2008 Bond Documents and Claims against the Debtors relating to the 2008 Bond Documents under the Final Cash Collateral Order, including but not limited to the Diminution Claims, in the Allowed amount of $144,915,729.

*118.* "*Series 2008 Bonds*" means those certain West Virginia Hospital Finance Authority Hospital Revenue Improvement Bonds (Thomas Health System, Inc.) Series 2008 issued as of June 30, 2008 pursuant to the Bond Indenture.

*119.* "*Series 2008 Note*" means collectively, those certain $87,239,440 Series 2008-1A note(s) dated June 30, 2008, $50,521,335 Series 2008-1B note(s) dated June 30, 2008, $11,158,225 Series 2008-1C note(s) dated June 30, 2008, issued pursuant to the Master Indenture as security for the Series 2008 Bonds, and any subsequent note/debt instrument giving rise to the Series 2008 Bond Claims, prior to the Petition Date.

*120.* "*Series 2020 Bonds*" means the West Virginia Hospital Finance Authority Refunding Revenue Bonds (Thomas Health System, Inc.), Series 2020 A to be issued as a combination of tax-exempt and taxable non-rated fixed rate bonds by the Issuer, subject to its authority and discretion, in the aggregate principal amount of $60,100,000, to (i) refund and retire the Series 2008 Bonds at a discount to the current par amount outstanding, (ii) fund a debt service reserve fund for the Series 2020 Bonds, (iii) fund the Operating Reserve Fund, if necessary, as described in Article IV.C.1 of the Plan and (iv) finance costs of issuance of the Series 2020 Bonds.

*121.* *"**Series 2020 Note**"* means that certain Series 2020A Note dated as of the closing date for Series 2020 Bonds issued by the Obligated Debtors to the Issuer as security for the Series 2020 Bonds.

*122.* *"**St. Francis**"* means Debtor Charleston Hospital, Inc. d/b/a Saint Francis Hospital.

*123.* *"**Stay Claimants**"* has the meaning ascribed to such term in Article VI.I.5 of the Plan.

*124.* *"**Thomas Health**"* means Debtor Thomas Health System, Inc.

*125.* *"**Thomas Memorial**"* means Debtor Herbert J. Thomas Memorial Hospital Association.

*126.* *"**THSPP**"* means Debtor THS Physician Partners, Inc.

*127.* *"**TMH Pension Plan**"* has the meaning ascribed to such term in Article IV.I of the Plan.

*128.* *"**TMH Services**"* means Debtor TMH Services, Inc.

*129.* *"**Tort Claims**"* means any direct or indirect Claim arising on or before the Petition Date, including, without limitation, personal injury claims for physical, mental, emotional, and economic injuries resulting from, related to or in connection with medical care provided by the Debtors (or to have been provided by the Debtors but not delivered) or any of its employees or associated physicians/nurses, whether or not a proof of claim with respect to any such claims were filed, including without limitation, claims for malpractice.

*130.* *"**Trade Claim**"* means any Claim held by an ordinary course trade vendor of the Debtors against any of the Debtors on account of ordinary course goods and/or services provided to any of the Debtors. For the avoidance of doubt, Trade Claims are treated as General Unsecured Claims under the Plan.

*131.* *"**Unexpired Lease**"* means a lease to which any of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

*132.* *"**Unimpaired**"* means with respect to any Claim, a Claim that is not Impaired.

*133.* *"**U.S. Trustee Fees**"* means all fees and charges assessed against the Estates under 28 U.S.C. § 1930 of the United States Code.

*134.* *"**Voting Deadline**"* means the deadline for voting to accept or reject the Plan, as determined by the Bankruptcy Court.

## B.    *Rules of Interpretation*

For purposes of the Plan, except as otherwise provided in the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (11) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

## C.    *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of West Virginia, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

Notwithstanding the foregoing and without giving effect to the principles of conflict of laws, in furtherance of effectuating the Plan and pursuant to section 105 of the Bankruptcy Code,

14

upon request of the Debtors or Reorganized Debtors of any Person, creditor, claimant, Governmental Unit, agency, board, bureau, department, authority, entity or party-in-interest, to forego in-person action or in-person public hearings/meetings and instead take or conduct such action and/or public hearings/meetings by telephone, video, teleconference, or other reasonable virtual communicative means, the Confirmation Order shall control over any contrary rule of law, rule, regulation, or procedure, with the Bankruptcy Court exercising exclusive jurisdiction over any conflict, dispute or matter arising therefrom.

### E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America.

### F.      *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

### G.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control. In the event of any inconsistency between the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

### A.      *Administrative Claims*

Unless otherwise agreed to by the Holders of an Allowed Administrative Claim and the Debtors, or the Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on

liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, such Allowed Administrative Claim shall be paid in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Bar Date for Administrative Claims. PROOFS OF ADMINISTRATIVE CLAIMS AND REQUESTS FOR PAYMENT OF ADMINISTRATIVE CLAIMS MUST BE FILED AND SERVED PURSUANT TO THE PROCEDURES SET FORTH IN THE CONFIRMATION ORDER NO LATER THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE. Notwithstanding anything to the contrary in the Plan, no proof of Administrative Claim or application for payment of an Administrative Claim need be filed for the allowance of any: (i) Administrative Claims held by trade vendors or others, which administrative liability was incurred by the Debtors in the ordinary course of business of the Debtors and such creditors after the Petition Date, subject, however, to the right of the Debtors to object to such Claims in the event of a *bona fide* dispute; (ii) Professional Fee Claims; or (iii) Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code. All Claims described in clauses (i) and (iii) of the immediately preceding sentence shall be paid by the Debtors in the ordinary course of business. Professional Fee Claims shall be paid in accordance with subsection (B) below.

**Any Persons that fail to File a proof of Administrative Claim or request for payment thereof on or before the Administrative Claim Bar Date shall be forever barred from asserting such Claim against any of the Debtors, the Estates, or their property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.**

### B.   *Professional Fee Claims*

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed by the date that is not later than forty-five (45) days after the Effective Date, absent an extension granted by the Bankruptcy Court. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Reorganized Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court, unless otherwise agreed upon by and between such Professional and the Debtors or Reorganized Debtors.

Upon the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

C.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims may receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS

A.      *Summary of Proposed Plan Treatment*

The Plan provides for recoveries to pre-petition and post-petition creditors/claimants upon the terms and conditions set forth below, with a targeted Effective Date on or before August 31, 2020.

B.      *Classification and Specification of Treatment of Claims*

All Claims, except those described in Article II, are placed in the following Classes of Claims, pursuant to section 1123(a)(1) of the Bankruptcy Code, which section specifies the treatment of such Classes of Claims and their impaired or unimpaired status, pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. The Plan constitutes a single plan of reorganization for all the Debtors. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under the Plan or in the Chapter 11 Cases.

Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims shall receive the treatment set forth below. The Plan will not provide any distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in the Plan, the Plan will not provide any distributions on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in the Plan or by further order of the Bankruptcy Court, all treatments, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Bankruptcy Court shall not be impaired by the Plan, the rights of the Holders of such Claims as provided in such orders shall not be altered by the Plan. Any Holder of any Claim in any Class may agree, pursuant to section 1123(a)(4) of the Bankruptcy Code, to a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

### C.    *Classes of Claims*

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| 1 | Class 1 consists of the Series 2008 Bond Claims against the Obligated Debtors | Impaired - entitled to vote |
| 2 | Class 2 consists of the Other Secured Claims against the Debtors | Unimpaired - not entitled to vote |
| 3 | Class 3 consists of the Other Priority Claims against the Debtors | Unimpaired - not entitled to vote |
| 4 | Class 4 consists of the Convenience Claims against the Debtors | Impaired - entitled to vote |
| 5 | Class 5 consists of the General Unsecured Claims against the Debtors | Impaired - entitled to vote |

### D.    *Treatment of Classes of Claims*

To the extent a Class contains Allowed Claims with respect to any Debtor, the classification of Allowed Claims is specified below.

1. Series 2008 Bond Claims (Class 1).

   (a) Classification: Class 1 consists of the Series 2008 Bond Claims including all Claims against the Obligated Debtors under the 2008 Bond Documents and the Diminution Claims.

   (b) Treatment: In accordance with the Senior Bonds 9019 Settlement, in full and final satisfaction, settlement, release and discharge of the Series 2008 Bond Claims, the Series 2008 Bond Claims shall be Allowed in the amount of $144,915,729. The Bond Trustee shall receive or apply, without setoff, recoupment, subordination or reduction, (i) Cash from the Reorganized Debtors in the amount of $47 million on the Effective Date as an Allowed Secured Claim, (ii) the Bond Deficiency Claims, which are Allowed General Unsecured Claims, plus (iii) the Indenture Funds.

   (c) All distributions on account of Allowed Series 2008 Bond Claims shall be made to the Bond Trustee to be applied in accordance with the terms of the 2008 Bond Documents.

   (d) Voting: Class 1 is Impaired under the Plan. Holders of Series 2008 Bond Claims are entitled to vote to accept or reject the Plan. Pursuant to section 1126(c) of the Bankruptcy Code, Class 1 will be deemed to have accepted the Plan if it is accepted

by at least two-thirds in amount and one-half in number of the Allowed Series 2008 Bond Claims in Class 1 that have voted on the Plan.

2.  Other Secured Claims (Class 2).

(a)  Classification: Class 2 consists of Other Secured Claims against all Debtors.

(b)  Treatment: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release and discharge of the Other Secured Claims, on or as soon as reasonably practicable after the later of: (i) the Effective Date and (ii) the date that is thirty (30) days after the date such Other Secured Claim is Allowed, each Allowed Other Secured Claim that has priority over the Series 2008 Bond Claims will be satisfied at the option of the Debtors by: (a) Cash in an amount equal to one hundred percent (100%) of the Allowed Other Secured Claim; (b) the return of the collateral subject to any senior, perfected and indefeasible lien or security interest; (c) recommencement of payment by the Reorganized Debtors of the monthly obligation due pursuant to the pre-existing contract/security agreement; or (d) such other treatment as the Debtors and such Holder of an Other Secured Claim may agree.

(c)  Voting: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.  Other Priority Claims (Class 3).

(a)  Classification: Class 3 consists of any Other Priority Claims against all Debtors.

(b)  Treatment: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release and discharge of the Allowed Other Priority Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

(i)     payment in full in Cash;

(ii)    deferred Cash payments of a value, as of the Distribution Date, equal to the Allowed Other Priority Claim; or

(iii)   such other treatment rendering its Allowed Other Priority Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)  Voting: Class 3 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

4. Convenience Claims (Class 4).

   (a) Classification: Class 4 consists of Convenience Claims against all Debtors.

   (b) Treatment: On, or as reasonably practicable after, the later of (i) the Distribution Date and (ii) the date that is thirty (30) days after the date such Convenience Claim becomes an Allowed Convenience Claim, each Holder of an Allowed Convenience Claim shall receive in full and final satisfaction, settlement, release and discharge of such Allowed Convenience Claim, Cash in an amount equal to the lesser of (A) five hundred dollars ($500) and (B) the Allowed amount of such Holder's Convenience Claim; provided, however, that the total distribution to Holders of Allowed Convenience Claims under the Plan shall not exceed fifty thousand dollars ($50,000) (the "Convenience Class Cap"), and if the foregoing treatment would result in distributions to Holders of Allowed Convenience Claims that exceed the Convenience Class Cap in the aggregate, each Holder of an Allowed Convenience Claim will instead receive a Pro Rata Share of fifty thousand dollars ($50,000), with the amount of each such Holder's Convenience Claim fixed at the lesser of (x) five hundred dollars ($500) and (y) the Allowed amount of such Holder's Convenience Claim for the purpose of determining its Pro Rata Share.

   (c) Election of Treatment: Any Holder of an Allowed General Unsecured Claim whose Claim is equal to or less than $1,000 shall receive the treatment specified in this Article III.D(4)(c). Any Holder of an Allowed General Unsecured Claim whose Allowed Claim is more than $1,000, and who timely elects to reduce the amount of such Claim to $1,000 in accordance with the terms of this section III.D.4, also shall receive treatment of its Allowed General Unsecured Claim as a Convenience Claim, as so reduced, as specified herein. Election of treatment in Class 4 must be made on such Holder's ballot for voting on the Plan and be received by the Debtors on or prior to the Voting Deadline. Any election of treatment in Class 4 made after the Voting Deadline shall not be binding upon the Debtors or the Reorganized Debtors unless such deadline is expressly waived, in writing, by the Debtors or the Reorganized Debtors. The Holder of an Allowed General Unsecured Claim that timely elects to reduce the amount of its Allowed Claim shall be deemed to be the Holder of an Allowed Convenience Claim for classification, voting and all other purposes under the Plan.

   (d) Waiver: Any Holder of an Allowed General Unsecured Claim that timely elects to reduce the amount of its Allowed and to receive treatment as an Allowed Convenience Claim shall be deemed to have released the Debtors, their Estates, the Reorganized Debtors, and their respective property from any and all liability for such excess amount.

   (e) Voting: Class 4 is Impaired under the Plan. Holders of Allowed Convenience Claims are entitled to vote to accept or reject the Plan. Pursuant to section 1126(c) of the Bankruptcy Code, Class 4 will be deemed to have accepted the Plan if it is accepted by at least two-thirds in amount and one-half in number of the Allowed Claims in Class 4 that have voted on the Plan.

5. General Unsecured Claims (Class 5).

(a) Classification: Class 5 consists of all General Unsecured Claims against all Debtors, including, without limitation, Bond Deficiency Claims, Trade Claims and the General Unsecured Claims of the PBGC.

(b) Treatment: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, release and discharge of its Allowed General Unsecured Claim, a Pro Rata Share of Cash in the amount of $750,000, on or as soon as reasonably practicable after the later of: (i) one-hundred eighty (180) days after the Effective Date and (ii) the date that is thirty (30) days after the date such General Unsecured Claim is Allowed.

(c) Voting: Class 5 is Impaired under the Plan. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan. Pursuant to section 1126(c) of the Bankruptcy Code, Class 5 will be deemed to have accepted the Plan if it is accepted by at least two-thirds in amount and one-half in number of the Allowed Claims in Class 5 that have voted on the Plan.

### E.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

### F.    Elimination of Vacant Classes

Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### G.    Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims in such Class.

### H.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to this Article III of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims. The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that

Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.


## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    *The Series 2008 Bonds Settlement*

The Plan is centered around a comprehensive settlement and compromise of the Debtors' obligations associated with their senior secured indebtedness, the Series 2008 Bond Claims, which enables the Plan to become effective in these Chapter 11 Cases, ends the incurrence and expenditure of continuing administrative expenses of the Debtors, permits cash payments to be made to certain creditors on or about the Effective Date of the Plan and thereafter, and resolves the remaining litigation pending against the Bond Trustee in these proceedings (the "Senior Bonds 9019 Settlement"). The Senior Bonds 9019 Settlement is comprised of (i) the classification and treatment of the Series 2008 Bond Claims specified in the Plan; (ii) the release and exculpation terms for the Bond Trustee and Bondholders as specified in the Plan, including, without limitation, the Releasing Parties releasing the Released Claims; (iii) the compromise of the Bond Trustee's Diminution Claims; (iv) the Bond Trustee's agreement to support the Debtors' use of Cash to pay Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims; (v) the Debtors' use of Cash to provide liquidity to the Debtors' continued business on and after the Effective Date; and (vi) the dismissal of the Challenge Litigation with prejudice as of the Effective Date. The treatment and distributions provided for in the Plan with respect to the Series 2008 Bond Claims under the Senior Bonds 9019 Settlement reflect a compromise and settlement of numerous complex issues including the scope, extent and value of the collateral associated with the Series 2008 Bonds, the valuation of the Bond Trustee's Diminution Claims, potential disputes and objections the Bond Trustee and Debtors would litigate concerning the Debtors' ability to confirm a contested plan, and related matters. The settlement provides final resolution of all issues relating to the rights and benefits of Holders of the Series 2008 Bond Claims, the Bond Trustee, and the validity, enforceability and priority of the Series 2008 Bond Claims, including the Challenge Litigation.

The Plan shall constitute a motion to approve the Senior Bonds 9019 Settlement. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of the Senior Bonds 9019 Settlement pursuant to Bankruptcy Rule 9019 (which is inclusive of the releases by the Debtors and their Estates against the Bond Trustee and Bondholders) and a finding by the Bankruptcy Court that the Senior Bonds 9019 Settlement is in the best interest of the Debtors, their Estates and all Holders of the Series 2008 Bonds. If the Effective Date does not occur the Senior Bonds 9019 Settlement shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

### B.     Sources of Consideration

All Cash consideration necessary for the Reorganized Debtors to make payments or distributions pursuant hereto shall be obtained from Cash on hand of the Debtors or Reorganized Debtors as appropriate, including Cash derived from business operations, investments of the Debtors or Reorganized Debtors, rights and Claims held by the Debtors and Reorganized Debtors, the proceeds of the Series 2020 Bond issuance, and to the extent applicable, any interest the Debtors or Reorganized Debtors may have in the Self Insured Trust.

### C.     Issuance of Series 2020 Bonds

1.     On the Effective Date, the Reorganized Debtors will cause the Issuer to issue, subject to its authority and discretion, in accordance with the terms of the Plan, the Series 2020 Bonds in an aggregate principal amount of $60.1 million. Effective upon the issuance of the Series 2020 Bonds, and the disbursement to the Bond Trustee of the Cash payment on account of the Series 2008 Bond Claims on the Effective Date described in the Plan, any and all Bond Collateral associated with the Series 2008 Bonds shall be released and the Series 2020 Bonds shall be secured by a pledge of gross revenues of the Obligated Debtors, first lien mortgages on the real property owned by the Obligated Debtors, first lien leasehold mortgages on approximately 27 acres of real property leased by the Obligated Debtors, a collateral assignment of rights in ground leases and substantially all other assets of the Obligated Debtors, all as more fully set forth in the 2020 Bond Documents and as described in the Plan Supplement.

a.     **Operating Reserve Fund** – in the event a deficit exists between the amount of Cash available as of the issuance of the Series 2020 Bonds due to, among other things, the Debtors use of Cash to satisfy other Plan obligations, and the minimum required liquidity of $43 million in Cash, the amount of Series 2020 Bond proceeds available to redeem and retire Series 2008 Bonds shall be reduced on a dollar for dollar basis (without modifying the Debtors' obligation to pay the Bond Trustee $47 million on the Effective Date as specified in the Plan) and the amount of such deficit shall be deposited from the proceeds of the Series 2020 Bonds into the Operating Reserve Fund such that the Reorganized Debtors will be able to meet the $43 million liquidity requirement in Cash. Any funds required for the Debtors' payment of $47 million to the Bond Trustee on account of the Series 2008 Bond Claims in excess of the portion of the Series 2020 Bond proceeds available therefor shall be paid from the Debtors' operating funds.

2.     The issuance of the Series 2020 Bonds is required for the refunding, modification and discharge of the Claims and obligations arising from or relating to the Series 2008 Bonds and the 2008 Bond Documents. The Obligated Debtors have entered into a Financing Commitment Letter with HCM dated June 9, 2020 (the "Financing Commitment Letter") setting forth the terms and conditions of the 2020 Bond Documents under which the Series 2020 Bonds will be issued and purchased by investors, and the Series 2008 Bonds will be refunded and retired pursuant to the Plan.

3.      The Series 2020 Bonds shall have a par amount of $60.1 million of tax exempt and taxable bonds. Up to $13 million of the Series 2020 Bonds may be taxable. For the avoidance of doubt, the Series 2020 Bonds will be sold with original issue discount so that the proceeds of the Series 2020 Bonds will be less than the par amount of the Series 2020 Bonds.

4.      The Reorganized Debtors shall cause the Issuer to issue the Series 2020 Bonds and loan the proceeds thereof to the Reorganized Debtors for the purposes set forth in the Plan, including, without limitation, the refunding and discharge of the Series 2008 Bonds. Allowed Secured Bond Claims shall be discharged once the applicable portion of the proceeds of the Series 2020 Bonds are made available to the Bond Trustee for payment to the Bondholders. The Bond Trustee's Deficiency Claims shall be discharged in accordance with Class 5 treatment of General Unsecured Claims. The discharges described herein will likewise result in the termination of the Series 2008 Notes and termination of the 2008 Bond Documents, except as otherwise provided in Article XII.D of the Plan. The actions taken pursuant to the Plan shall, with respect to the Debtors and the Reorganized Debtors, be deemed to effect a complete refunding and discharge of the Series 2008 Bonds under the terms of the 2008 Bond Documents with no further action required by the Debtors or Reorganized Debtors.

5.      The Series 2020 Bonds will have a maturity date of either the April 1 or the October 1 immediately preceding the date that is 10 years from the date of issuance. Repayment to the holders of the Series 2020 Bonds shall commence after the date of issuance and be payable over the first 12 months as interest-only payments and, commencing 12 months after the date of issuance of the Series 2020 Bonds, payable semiannually as level debt service payments with principal based upon a 30-year amortization. Upon maturity of the Series 2020 Bonds, any unpaid principal will be due and payable as a "bullet" (or lump sum) payment. The repayments by the Reorganized Debtors under the Loan Agreement will be made on a monthly basis to the trustee for the Series 2020 Bonds.

6.      The 2020 Bond Documents executed and delivered by the relevant Reorganized Debtors in connection therewith shall require the relevant Reorganized Debtors to maintain: (a) the greater dollar amount of 40 days' cash on hand ("DCOH") (as defined in the 2020 Bond Documents) or $30 million for the first two years after the date of issuance of the Series 2020 Bonds, (b) the greater dollar amount of 45 DCOH or $33 million for the third and fourth years after the date of issuance of the Series 2020 Bonds, and (c) the greater dollar amount of 50 DCOH or $35 million for the fifth year after the date of issuance of the Series 2020 Bonds and thereafter, tested on each March 31 and September 30 and commencing on September 30, 2020. Failure to maintain the foregoing DCOH levels as of any DCOH measurement date shall require a management report within 60 days. Failure to maintain the greater dollar amount of 35 DCOH or $27 million for the first two years after the date of issuance of the Series 2020 Bonds, 40 DCOH or $30 million for the third and fourth years after the date of issuance of the Series 2020 Bonds, and 45 DCOH or $33 million in year 5 after the date of issuance of the Series 2020 Bonds and thereafter on any measurement date shall constitute an event of default. In addition, commencing with the first fiscal quarter 24 months following the issuance of the Series 2020 Bonds, the covenant relating to testing of the Debt Service Coverage Ratio ("DSCR") will go into effect. As set forth in greater detail in the 2020 Bond Documents, the DSCR will be tested quarterly, with each test occurring within 45 days following the last day of the fiscal quarter being tested. Failure to maintain a Debt Service Coverage Ratio threshold of 1.25x (i) on any one

24

measurement date shall require a management report within 60 days, and (ii) on two consecutive measurement dates shall require retention of a management consultant, at the Reorganized Debtors expense, acceptable to the bondholder representative. Failure to maintain a Debt Service Coverage Ratio of at least 1.00x on any test date shall constitute an event of default. The 2020 Bond Documents also require additional reporting (but not testing) of DCOH and DSCR. Also, the 2020 Bond Documents will require Thomas Health System, Inc. to appoint a special board of director position to be filled by a person chosen by the designated bondholder representative.

7.      In connection with the transaction described in the Plan, the Issuer, as the issuer of the Series 2020 Bonds, shall retain counsel of its choice as bond counsel following consultation with the Reorganized Debtors. Pursuant to the 2020 Bond Documents, the Debtors shall be required to pay the reasonable fees and expenses of the Issuer (including the fees and expenses of bond counsel) and other customary costs of issuance, including those set forth in the Financing Commitment Letter at the time of closing of the issuance of the Series 2020 Bonds. The total amount of cost of issuance paid from proceeds of the Series 2020 Bonds shall not exceed $3.0 million. Amounts above this threshold shall be paid by the Reorganized Debtors at the closing of the issuance of the Series 2020 Bonds. Additional terms regarding the Series 2020 Bonds and the 2020 Bond Documents shall be set forth in the Plan Supplement.

### D.      Retained Claims

The Retained Claims shall vest in the Reorganized Debtors on the Effective Date and the Reorganized Debtors shall be solely responsible for the continuation of any litigation or negotiation related thereto. Except to the extent expressly released under the Plan, nothing in these Chapter 11 Cases shall impact the Reorganized Debtors' ability to continue litigation related to the Retained Claims nor shall such retention be construed as granting a Creditor or Person with any right that is inconsistent with the other terms of the Plan.

The Debtors are in the process of reviewing the relief programs and protections available for healthcare providers and businesses generally related to COVID-19, including, without limitation, the availability to Relief Funds. For avoidance of doubt, to the extent the Debtors are entitled to assert a claim or exercise a right to Relief Funds, such rights are expressly preserved.

### E.      Corporate Existence

Except as otherwise provided herein or in the Corporate Governance Documents, the Reorganized Debtors shall continue to exist on and after the Effective Date as separate non-stock corporate entities with all the powers of non-stock corporations, pursuant to the applicable law in the jurisdiction in which Reorganized Debtors were incorporated or formed.

### F.      Reorganized Debtor Governance

The existing members of the Debtors' Boards of Directors shall, pursuant to their existing self-perpetuating nature, continue to be members of the Boards of Directors of the Reorganized Debtors. Additionally, the 2020 Bond Documents will require Thomas Health System, Inc. to appoint a special board of director position to be filled by a person chosen by the designated bondholder representative.

### G.     *Officers of Reorganized Debtors*

The existing officers of the Debtors shall continue to be officers of the Reorganized Debtors. Such officers shall serve in accordance with applicable non-bankruptcy law.

### H.     *Employee Benefits.*

Except as otherwise provided herein (including, without limitation, the Debtors' contemplated termination of Retirement Plan for Employees of Herbert J. Thomas Memorial Hospital), on and after the Effective Date, the Reorganized Debtor(s) may: (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs and plans for, among other things, compensation, health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance and accidental death and dismemberment insurance for the directors, officers and employees of any of the Debtors who served in such capacity at any time during the Chapter 11 Cases and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising before the Petition Date; provided, however, that the Debtors' or the Reorganized Debtor(s)' performance under any employment agreement will not entitle any Person to any benefit or alleged entitlement under any policy, program or plan that has expired or been terminated before the Effective Date, or restore, reinstate or revive any such benefit or alleged entitlement under any such policy, program or plan. Nothing herein shall limit, diminish or otherwise alter the Reorganized Debtor(s)' or the Debtors' defenses, claims, Causes of Action or other rights with respect to any such contracts, agreements, policies, programs and plans.

### I.     *Termination of Defined Benefit Pension Plans*

The Debtors seek to terminate the TMH Pension Plan through either a distress termination under 4041(c) of ERISA or an involuntary termination commenced by the PBGC under 4042 of ERISA. The Debtors have yet to file a motion seeking the Bankruptcy Court's approval for a distress termination of the TMH Pension Plan, and PBGC has yet to formally express its support for the termination of the TMH Pension Plan. If the TMH Pension Plan terminates, any Claims arising from the termination, excluding termination premiums, will be paid in accordance with Article III of the Plan. Because the Debtors seek a reorganization in the Chapter 11 Cases, any termination premiums due to PBGC will not arise until after the Plan is confirmed and the Debtors obtain a discharge. Under these circumstances, the termination premiums are not a dischargeable claim or debt within the meaning of 11 U.S.C. §§ 101(5) and 1141, and the Reorganized Debtors will be jointly and severally liable for the termination premiums. As detailed in Article VIII of the Plan, PBGC reserves its rights to pursue claims on behalf the TMH Pension Plan and itself, subject to the rights of the Debtors under the Plan and applicable law. If the TMH Pension Plan is terminated and the PBGC becomes the statutory trustee of the TMH Pension Plan, PBGC will pay benefits to the TMH Pension Plan's participants up to defined statutory limits. If PBGC issues a notice of determination that the TMH Pension Plan shall be terminated, the Debtors and Reorganized Debtors shall reasonably cooperate with the PBGC to effectuate the termination of the TMH Pension Plan and transfer of the TMH Pension Plan assets and records. The Debtors and Reorganized Debtors shall securely maintain all records and documents related to the TMH Pension Plan or, if such records and

documents are not in the Debtors' direct possession, shall use reasonable means to cause the preservation of such records and documents until such time as those records and documents are transferred to the PBGC, provided, however, that the PBGC makes reasonable efforts to take custody of the records and documents. Any Person, Governmental Unit, party-in-interest, actuary, or accountant shall timely respond to inquiries or requests by either the Reorganized Debtors or the PBGC to effectuate the transfer of the TMH Pension Plan assets and records to the PBGC or otherwise advance the administration of the TMH Pension Plan following its termination.

The Debtors or Reorganized Debtors are not terminating other retirement plan programs such as defined contribution plans, including, without limitation, any 401(k) program but likewise reserve all rights to do so or modify the same in an exercise of their reasonable business judgment.

### J.       *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated herein, on the Effective Date and with respect to the Bond Trustee, upon receipt by the Bond Trustee of the Cash to be distributed to it on the Effective Date pursuant to the Plan, or as soon as practicable thereafter, all property of the Debtors' Estates and all Causes of Action shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens securing the Series 2020 Note or Other Secured Claims). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### K.       *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Persons may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (c) the filing of appropriate certificates or articles of incorporation or amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (d) all other actions that the applicable Persons and/or Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### L.    Corporate Action

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including all actions contemplated by the Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtors or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors or the Reorganized Debtors, as the case may be, and any and all other agreements, documents, securities and instruments relating to the foregoing.

### M.    Section 1146 Exemption from Certain Taxes and Fees

Pursuant to Bankruptcy Code section 1146(a), any transfers of property in contemplation of, in connection with, or pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (a) the creation of any mortgage, deed of trust, lien or other security interest; (b) the making or assignment of any lease or sublease; (c) any restructuring transaction authorized by the Plan; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (i) any merger agreements; (ii) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (iii) deeds; or (iv) assignments executed in connection with any transaction occurring under the Plan.

### N.    Preservation of Causes of Action of the Debtors

Except as otherwise provided in the Plan (including as provided under the Senior Bonds 9019 Settlement) or any agreement, instrument or other document incorporated herein, in accordance with Bankruptcy Code section 1123(b), only the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Person, creditor, entity or party-in-interest may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtors or the Reorganized Debtors have released any Person or Persons on or before the Effective Date, the

Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, creditor, entity or party-in-interest, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person, creditor, entity or party-in-interest are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or consummation of the Plan.

### O.    *Waiver of Avoidance Actions*

Notwithstanding anything to the contrary contained in the Plan, as of and subject to the occurrence of the Effective Date, the Debtors and the Reorganized Debtors, for and on behalf of themselves and their Estates, hereby waive and release the Avoidance Actions; provided, however, that the foregoing waiver and release shall not apply to any Avoidance Action commenced by the Debtors that is pending on the Effective Date.

### P.    *Temporary Bar of In-Person Action and Proceedings*

Notwithstanding anything to the contrary contained in the Plan or other applicable law, rule or procedure, the Debtors and the Reorganized Debtors shall not be required to participate in or conduct in-person meetings, hearings, appointments, congregations or other events that require gatherings (collectively, "Public Gatherings") that are inconsistent with the COVID-19 laws, regulations, rules and/or guidance established by any local, state, or federal government/agency/Governmental Unit in order for the Plan to go effective or the Reorganized Debtors to implement or Consummate the Plan. All parties-in-interest, Persons, Entities, agencies, boards, bureaus, departments, authorities, Governmental Units, companies, and corporations, including, without limitation, the West Virginia Heath Care Authority, West Virginia Hospital Finance Authority, and any other authority or agency that oversees, regulates, administers, or governs the issuance of bonds or otherwise acts (i) for the benefit of the people of the State of West Virginia and the improvement of their health, welfare and living conditions, (ii) to provide hospitals with appropriate means at reasonable cost to maintain, expand, enlarge and establish health care, hospital and other related facilities and (iii) to provide hospitals with the ability to refinance indebtedness, shall work expeditiously and cooperatively with the Debtors and/or Reorganized Debtors to implement the Plan and/or effectuate the transactions contemplated therein by either waiving a requirement for a Public Gathering or otherwise take or conduct such action by telephone, video, teleconference, or other reasonable virtual communicative means. The Plan provision is temporary and shall no longer have effect following the COVID-19 pandemic.

### Q.    *Continuation or Imposition of Additional COVID-19 Restrictions*

The Plan is structured based on certain assumptions relating to the current impact of COVID-19 Restrictions. In the event of a second wave of COVID-19 (or an outbreak of a similar or related strain) that results in the continuation or imposition of additional COVID-19 Restrictions, which directly or indirectly cause a materially negative impact on commerce, the

curtailment of medical services, and/or the closure of businesses, payments to be made under the Plan, other than payments on account of Series 2008 Bond Claims may be suspended in the reasonable business judgement of the Reorganized Debtors up to one hundred and eighty days following the lifting of the applicable COVID-19 Restriction without resulting in a default under the Plan or any document/instrument produced in connection herewith. In such instance, the Reorganized Debtors shall provide notice to all affected Creditors of such action.

### R.      *Resolution of Disputes Associated with Self Insured Trust*

To the extent not otherwise resolved by Final Order of the Bankruptcy Court or scheduled for resolution by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction to determine the rights of the Holders of Tort Claims as well as the rights of the Debtors, their Estates, and the Reorganized Debtors in the Self Insured Trust. Such determination shall include: (i) whether the Self Insured Trust is in effect and the funds therein are trust funds, and (ii) whom has an interest in, or may state a Claim against, the Self Insured Trust. The Confirmation Order shall provide scheduling for discovery, briefing, and related procedure/relief, to the extent not already addressed prior to the Confirmation Date.


## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.      *Treatment of Executory Contracts and Unexpired Leases*

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that: (i) have been assumed or rejected by the Debtors by prior order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) are the subject of a motion to assume filed by the Debtors pending on the Effective Date; (iv) are identified by the Debtors for assumption in the Plan Supplement, which may be amended by the Debtors to add or remove Executory Contracts and Unexpired Leases prior to the Effective Date; or (v) are assumed by the Debtors pursuant to the terms of the Plan.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections, as applicable, of such Executory Contracts or Unexpired Leases, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to the Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) (a) prohibits, restricts or conditions (or purports to prohibit, restrict or condition), (b) is modified, breached or terminated (or deemed modified, breached or terminated), (c) increases, accelerates or otherwise alters any obligations or liabilities of the Debtors or Reorganized Debtors (or purports to increase, accelerate or otherwise alter any obligations or liabilities of the Debtors or Reorganized Debtors), or (d) results in the creation or imposition of any Lien upon any property or asset of any of the Debtors or Reorganized Debtors (or purports to result in the creation or imposition of any Lien upon any

property or asset or any of the Debtors or Reorganized Debtors), in each case as a result of (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or any Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to modify, declare a breach, terminate, increase, accelerate or alter any of the obligations or liabilities of the Debtors or the Reorganized Debtors under, or create or impose any Lien upon any property or asset of any of the Debtors or Reorganized Debtors under any such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

Each Executory Contract and Unexpired Lease assumed and/or assigned pursuant to the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of the Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

### B.    Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases

Any defaults under each Executory Contract and Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied, pursuant to and to the extent required by section 365(b)(1) of the Bankruptcy Code, by payment of the applicable default amount in Cash on the Effective Date or on such other terms as the Bankruptcy Court may order or the parties to such Executory Contracts or Unexpired Leases may otherwise agree in writing (the "Cure Claim Amount").

In the event of an assumption, or an assumption and assignment, of an Executory Contract or Unexpired Lease under the Plan, the Debtors shall file, as part of the Plan Supplement, and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, or proposed assumption and assignment (the "Assumption Notice"), which will: (a) list the applicable Cure Claim Amount, if any; (b) if applicable, identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court, including the date by which any objection to the Assumption Notice must be filed by the counterparty and received by the Debtors.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, or proposed assumption and assignment under the Plan, or any related cure amount, must be filed, served and actually received by the Debtors on the date specified in the Assumption Notice (notwithstanding anything in the Schedules or a Proof of Claim to the contrary). Any counterparty to an Executory Contract or Unexpired Lease that fails to object

timely to the proposed assumption, or proposed assumption and assignment, or Cure Claim Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and cure amount. The Confirmation Order shall constitute an order of the Bankruptcy Court approving each proposed assumption, or proposed assumption and assignment, of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned or (c) any other matter pertaining to assumption or assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving such assumption or assumption and assignment; provided, however, that following the resolution of any such dispute, the Debtors or the Reorganized Debtors, as applicable, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assigning it. The Debtors or the Reorganized Debtors, as applicable, shall be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within ten (10) days of the entry of such Final Order.

Subject to any cure claims filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the Effective Date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

With respect to any Executory Contract or Unexpired Lease assumed and assigned pursuant to the Plan, upon and as of the Effective Date, the applicable assignee shall be deemed to be substituted as a party thereto for the applicable Debtor party to such assigned Executory Contract or Unexpired Lease and, accordingly, the Debtors and the Reorganized Debtors shall be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such assigned Executory Contract or Unexpired Lease.

### C.        *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within twenty-one (21) days after the Effective Date; provided, however, that to the extent any Executory Contract or Unexpired Lease is rejected pursuant to a

Final Order, any Proof of Claim with respect to Claims arising from the rejection of an Executory Contract or Unexpired Lease authorized by such Final Order must be filed with the Bankruptcy Court within twenty-one (21) days of the entry of the Final Order approving such rejection.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All timely filed Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

> **D.**      *Assumption of the Medicare and/or Medicaid Provider and Supplier Agreements*

The following special provisions shall apply to the assumption and cure of each of the operating Debtors' Medicare and/or Medicaid Provider and Supplier Agreements. In the event of an inconsistency between the other provisions of Article V and this Article V.D, the provisions of this Article V.D shall govern.

1.      <u>Medicare and/or Medicaid Assumption Date</u>. Provided that all issues regarding the Debtors' cure of any defaults under their respective Medicare and/or Medicaid Provider and Supplier Agreements on the Confirmation Date are addressed to the satisfaction of CMS, West Virginia, and any other applicable Governmental Unit, the Debtors shall assume each of their respective Medicare and/or Medicaid Provider and Supplier Agreements on the Effective Date ("Medicare and Medicaid Assumption Date").

2.      <u>Cure Prior to the Medicare and Medicaid Assumption Date</u>. Prior to the Medicare and Medicaid Assumption Date:

a.      <u>Compliance with Program Requirements</u>. The applicable Debtors will each comply with all applicable Medicare and Medicaid program requirements, and all relevant regulations, rules and applicable manual provisions.

b.      <u>Cure</u>. Apart from the provision for identified monetary defaults below, notwithstanding anything to the contrary in the Plan, the Plan Supplement or the Confirmation Order, the term "Cure" for purposes of the Debtors' assumption of the Medicare and/or Medicaid Provider and Supplier Agreements means being governed by, and subject to, the terms and conditions of each of the provider and

supplier agreements and the incorporated statutes, regulations, policies and procedures and to remain liable for any debt to CMS or the applicable Governmental Unit as if the bankruptcy case had not occurred.

c. <u>Cure of Specific Monetary Defaults Identified Prior to the Medicare and Medicaid Assumption Date</u>. Except as otherwise provided by mutual agreement between CMS, the applicable Governmental Unit and the operating Debtors in a separate written agreement, compromise and/or extended schedule that the operating Debtors (including, without limitation, the Hospitals), CMS and/or the applicable Governmental Unit may (but are not obligated to) enter into prior to the Medicare and Medicaid Assumption Date, the Debtors must cure all monetary defaults due under the applicable Medicare and/or Medicaid Provider and Supplier Agreements that CMS and/or the applicable Governmental Unit has identified to the Debtors in writing before the Medicare and Medicaid Assumption Date. Each Governmental Unit's right to cure of such identified monetary defaults will be in addition to and without limitation upon its right to recoup Medicare/Medicaid debts or its other rights and authorities under applicable law unless otherwise agreed upon by and between each applicable Governmental Unit.

d. <u>CMS/West Virginia/Governmental Unit Claims Unimpaired</u>. Without limiting the rights of CMS, West Virginia or any Governmental Unit to payment of specific identified monetary defaults under Medicare and/or Medicaid Provider and Supplier Agreements that must be cured prior to assumption as set forth above, all of each of CMS's, West Virginia's, or the applicable Governmental Unit's related Claims shall be unimpaired under section 1124 of the Bankruptcy Code and no court order entered in the Chapter 11 Cases, including, without limitation, the Confirmation Order, shall alter, modify or impair or be deemed to alter, modify or impair any right, term or provision in the applicable agreements.

  i. Any amounts due on such Claims shall be collected in the ordinary course of business, without the need for the filing of separate Proofs of Claim, Cure Claims or requests for Administrative Claims.

  ii. Nothing contained in the Plan, the Plan Supplement or the Confirmation Order shall release or operate to enjoin any Claim of the United States, West Virginia, or a Governmental Unit against the Debtors on account of Medicare or Medicaid.

**E.**     ***Indemnification Provisions***

On the Effective Date, each Indemnification Provision shall be deemed and treated as an Executory Contract that is and shall be assumed by each applicable Debtor pursuant to section 365(a) and section 1123 of the Bankruptcy Code, subject to and solely to the extent modified herein (as modified, the "Assumed Indemnification Provisions"). In connection with the Assumed Indemnification Provisions, no Proof of Claim, request for an Administrative Claim, or Cure Claim need be filed. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors'

assumption of each of the Assumed Indemnification Provisions. Confirmation and Consummation of the Plan shall not impair or otherwise modify any available defenses of the Reorganized Debtors or other applicable parties under the Assumed Indemnification Provisions.

### F.        Insurance Policies

To the extent Insurance Policies including, without limitation, D&O Liability Insurance Policies, are Executory Contracts, notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the Insurance Policies in full force) all of the Insurance Policies including, without limitation, D&O Liability Insurance Policies, pursuant to Bankruptcy Code section 365(a). Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies. For the avoidance of doubt, unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to Cure any defaults of the Debtors with respect to any Insurance Policies.

### G.        Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed by the Debtors or the Reorganized Debtors shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing has been previously rejected or repudiated or is rejected or repudiated hereunder. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### H.        Reservation of Rights

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have thirty calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

### I.        Contracts and Leases Entered Into After the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.     *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the "Treatment" sections in Article III hereof or as ordered by the Bankruptcy Court, initial distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Distribution Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day. Distributions on account of Disputed Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Article VII hereof.

### B.     *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan, the Confirmation Order or Final Order of the Bankruptcy Court, or required by applicable bankruptcy law (including, without limitation, as required pursuant to section 506(b) or section 511 of the Bankruptcy Code), postpetition interest shall not accrue or be paid on any Claims.

### C.     *Distributions by the Disbursing Agent*

Other than as specifically set forth below, the Disbursing Agent shall make all distributions required to be distributed under the Plan. The Reorganized Debtors may employ or contract with other entities to assist in or make the distributions required by the Plan and may pay the reasonable fees and expenses of such entities and the Disbursing Agent in the ordinary course of business. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### D.     *Delivery and Distributions; Undeliverable or Unclaimed Distributions*

1.    Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed. Accordingly, the Debtors, the Reorganized Debtors or other Disbursing Agent will have no obligation to recognize the assignment, transfer or other disposition of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute property, notices and other documents only to those Holders of Allowed Claims who are Holders of such Claims as of the close of business on the Distribution Record Date. The Reorganized Debtors or other Disbursing Agent shall be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the Claims Register, or their books and records, as of the close of business on the Distribution Record Date. Notwithstanding any other term of the Plan, the Reorganized Debtors or other Disbursing Agent shall treat the Bond Trustee as the record holder with respect to any distributions made under the Plan for Series 2008 Bond Claims.

2.   Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined in the discretion of the Disbursing Agent; provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in the latest Proof of Claim filed by such Holder pursuant to Bankruptcy Rule 3001 as of the Distribution Record Date. Notwithstanding the foregoing, distributions made on account of Allowed Claims relating to the Series 2008 Bonds shall be made to the Bond Trustee by wire transfer pursuant to instructions provided by the Bond Trustee.

3.   Minimum Distributions

Notwithstanding anything herein to the contrary, the Disbursing Agent shall not be required to make distributions or payments of less than $25.00 (whether in Cash or otherwise) or to make partial distributions or payments of fractions of dollars, in each case with respect to Impaired Claims. With respect to Impaired Claims, whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or more being rounded up to the next higher whole number and with less than half dollars being rounded down to the next lower whole number.

4.   Undeliverable Distributions

(a)   Holding of Certain Undeliverable Distributions

If the distribution to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then current address in accordance with the time frames described in Article VI.D.4(b) hereof, at which time all currently due but missed distributions shall be made to such Holder on the next subsequent Distribution Date (or such earlier date as determined by the Disbursing Agent). Undeliverable distributions shall remain in the possession of the Reorganized Debtors or in the applicable reserve, subject to Article VI.D.4(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

(b)   Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim (or any successor or assignee or other Person or Entity claiming by, through, or on behalf of, such Holder) that does not assert a right pursuant to the Plan for an undeliverable or unclaimed distribution within ninety (90) days after the later of the Effective Date or the date such distribution is due shall be deemed to have forfeited its rights for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such rights for an undeliverable or unclaimed distribution against the Debtors or their Estates, the Reorganized Debtors or their respective assets or property, or any Disbursing Agent. In such case, any Cash or other property reserved for distribution on account of such Claim shall

become the property of the Reorganized Debtors, free and clear of any Claims or other rights of such Holder with respect thereto and notwithstanding any federal or state escheat laws to the contrary. Any such Cash or other property shall thereafter be distributed or allocated in accordance with the applicable terms and conditions of the Plan. Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any Holder of an Allowed Claim or otherwise adhere to any escheat process.

(c)    Failure to Present Checks

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within ninety (90) days after the date of mailing or other delivery of such check shall have its rights for such un-negotiated check discharged and be forever barred, estopped and enjoined from asserting any such right against the Debtors, their Estates, the Reorganized Debtors, or their respective assets or property. In such case, any Cash held for payment on account of such Claims shall become the property of the Reorganized Debtors, free and clear of any Claims or other rights of such Holder with respect thereto and notwithstanding any federal or state escheat laws to the contrary. Any such Cash shall thereafter be distributed or allocated in accordance with the applicable terms and conditions of the Plan.

**E.    Compliance with Tax Requirements**

In connection with the Plan and all distributions hereunder, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes, and each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. The Debtors have determined that no withholding shall be required with respect to payments to the Bond Trustee under the Plan.

**F.    Means of Cash Payment**

Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, in the case of payments to the Bond Trustee, by wire transfer, and otherwise at the option of the Disbursing Agent, by checks drawn on, ACH, or wire transfer from, a domestic bank selected by the Disbursing Agent. Cash payments to foreign creditors may be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### G.    Timing and Calculation of Amounts to Be Distributed

Except as otherwise provided in the "Treatment" sections in Article III hereof or as ordered by the Bankruptcy Court, on the Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the subsequent Distribution Date occurring after such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the applicable class treatment or in Article VII hereof. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### H.    Setoffs

Without altering or limiting any of the rights and remedies of the Debtors and the Reorganized Debtors under section 502(d) of the Bankruptcy Code, all of which rights and remedies are hereby reserved, and except with respect to the Series 2008 Bond Claims, the Debtors and the Reorganized Debtors may, but shall not be required to, withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, Causes of Action and Retained Claims of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim and that are not otherwise released herein; provided that, at least ten (10) days prior to effectuating such withholding, the Debtors or the Reorganized Debtors, as applicable, shall provide written notice thereof to the applicable Holder of such Claim, and all objections and defenses of such Holder to such withholding are preserved. In the event that any such claims, Causes of Action or Retained Claims are adjudicated by Final Order or otherwise resolved against the applicable Holder, the Debtors and the Reorganized Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of such adjudicated or resolved claims, Causes of Action or Retained Claims. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, Causes of Action or Retained Claims, all of which are reserved unless expressly released or compromised pursuant to the Plan or the Confirmation Order.

### I.    Claims Paid or Payable by Third Parties

1.    Claims Paid by Third Parties

Except for distributions from persons or sources otherwise expressly contemplated by the Plan (including as provided in the Plan with respect to the Senior Bonds 9019 Settlement), a Claim shall be reduced, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on

account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent that a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the applicable Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.      Claims Payable by Third Parties

The availability, if any, of Insurance Policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the Insurance Policies of the Debtors or Reorganized Debtors, as applicable. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim, then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the claims agent without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any Insurance Policies, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

4.      Allowed Tort Claims

The availability, if any, of the funds from Self Insured Trust for the satisfaction of Allowed Tort Claims shall be determined by the Bankruptcy Court. To the extent that funds from the Self Insured Trust result in the satisfaction or reduction of an Allowed Tort Claim, such Allowed Tort Claim may be reduced or expunged to the extent of any satisfaction on the Claims Register by the claims agent without a Claim objection having to be filed and without any further notice. The Debtors and Reorganized Debtors residual interest in the Self Insured Trust, if any, is expressly preserved.

5.      Limited Preservation of Allowed Tort Claims that are Granted Relief from the Automatic Stay

To the extent the Holder of an Allowed Tort Claim has been granted relief from the automatic stay imposed under section 362(a) of the Bankruptcy Code (collectively, the "Stay Claimants") to prosecute and liquidate its claims, if any, against the Debtors, the Allowed Tort Claims of Stay Claimants shall not be discharged pursuant to the Plan *solely to the extent that Stay Claimants seek recovery from applicable insurance proceeds, and/or insurers and not the Debtors, the Debtors' Estates, or the Reorganized Debtors*. No collection or enforcement action may be asserted, continued or realized against the Debtors or the Reorganized Debtors, for any Claims incurred or arising prior to the Effective Date; provided, however that Stay Claimants

may proceed nominally against the Debtors in order to liquidate such Tort Claims. Additionally, no collection or enforcement action may be asserted, continued or realized against the property of the Debtors' Estates, or any successor or assign of the Debtors. The Stay Claimants shall not directly or indirectly (a) seek to compel any of the Debtors or Reorganized Debtors to pay any deductible, any self-insured retention, or any other amount for or on account of any insurance carrier, provider, broker or Insurance Policy or (b) obtain any distribution from the Debtors' Estates. Nothing in the Plan shall require the Debtors to satisfy any obligation with respect to any self-insured retention, deductible or similar cost or amount, or to pay or fund any expenses, including defense costs, with respect to the Allowed Tort Claims or the Stay Claimants. Nothing herein is intended to, or shall (i) alter, modify or otherwise amend the terms and conditions of, or the coverage provided by, any Insurance Policies issued at any time to any of the Debtors or of any agreements related thereto; (ii) alter or modify the duty, if any, that any applicable insurer or third party administrator (each, an "Insurer" and together, the "Insurers") has to pay claims covered by any alleged applicable Insurance Policy; (iii) is intended to create or enlarge, or restrict or diminish, any right of action of the Stay Claimants against any Insurers; (iv) alter or amend the rights of any Insurer with respect to any deductibles or self-insured retention under any applicable Insurance Policy; or (v) preclude or limit, in any way, the rights of any Insurer to contest and/or litigate the existence, primacy and/or scope of available coverage under any applicable Insurance Policy. Nothing herein is intended, or shall operate as a waiver or modification of the discharge injunction set forth in Article VIII, so as to permit the prosecution against the Debtors or Reorganized Debtors of any Claim, by any Person other than the Stay Claimants as provided herein.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

### A.    *Resolution of Disputed Claims*

1.  Allowance of Claims

After the Effective Date, and except as otherwise provided in the Plan, the Reorganized Debtors shall have and shall retain any and all available rights and defenses that the Debtors had with respect to any Claim that is not an Allowed Claim, including, without limitation, the right to assert any objection to Claims based on the limitations imposed by section 502 or section 510 of the Bankruptcy Code. For the avoidance of doubt, this Article VII shall not apply to the Series 2008 Bond Claims.

2.  Prosecution of Objections to Claims

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors shall have the sole authority to file objections to Claims (other than those that are Allowed under the Plan) and settle, compromise, withdraw or litigate to judgment objections to any and all such Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise; provided, however, this provision shall not apply to Professional Fee Claims, which may be objected to by any party-in-interest in these Chapter 11 Cases. From

and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. The Reorganized Debtors shall have the sole authority to administer and adjust the Claims Register and their respective books and records to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

3.   Claims Estimation

After the Confirmation Date but before the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Disputed Claim or contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, whether for allowance or to determine the maximum amount of such Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation.

4.   Deadline to File Objections to Claims

Any objections to Claims shall be filed by no later than the Claims Objection Deadline; provided that nothing contained herein shall limit the Reorganized Debtors' right to object to Claims, if any, filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtors or the Reorganized Debtors without notice or a hearing. Bankruptcy Rule 9006 shall apply to any motion to extend the Claims Objection Deadline. Moreover, notwithstanding the expiration of such objection deadline, the Debtors or the Reorganized Debtors shall continue to have the right to amend any claims objections and to file and prosecute supplemental objections and counterclaims to a Disputed Claim until such Disputed Claim is Allowed.

**B.     No Distributions Pending Allowance**

Notwithstanding any other provision of the Plan to the contrary, no payments or distributions of any kind or nature shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim is or becomes Allowed by Final Order.

**C.     Distributions After Allowance of Claim**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is

entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

### D.    Reserve for Disputed Claims

The Disbursing Agent may, in its sole discretion, establish such appropriate reserves for Disputed Claims in the applicable Class(es) as it determines necessary and appropriate.

# ARTICLE VIII.
# DISCHARGE, SETTLEMENT, RELEASE, INJUNCTION,
# AND RELATED PROVISIONS

### A.    Discharge of Claims

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (not including any Debtor Intercompany Claims or non-Debtor Intercompany Claims) and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims relate to the loss of tax-exemption of any portion of the Series 2008 Bonds that arise as a result of the Plan or after the Effective Date for periods prior to the Effective Date, or relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, benefit, or pension plan, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such debt, or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim has accepted the Plan or voted to reject the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan.

### B.    Compromise and Settlement of Claims, Interests and Controversies

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal, and equitable rights (including, without limitation, subordination rights) that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the

Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor(s) may compromise and settle Claims against them and Causes of Action against other Persons, Entities, Governmental Units or other parties-in-interest.

### C.    Releases by the Debtors, Reorganized Debtors, their Affiliates and their Estates

Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, the Plan Supplement, or the Confirmation Order, for good and valuable consideration, including the service of the Debtor Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, on and after the Effective Date, the Debtor Released Parties are deemed released and discharged by the Debtors, the Reorganized Debtor(s), their Affiliates and the Estates from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Reorganized Debtor(s), the Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or other Person or Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Series 2008 Bonds, the Debtors' Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual arrangements between any Debtor and any Debtor Released Party, the restructuring, sale, or refinancing efforts of the Debtors, the restructuring of Claims before or during the Debtors' Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "Debtor Released Claims"). For the avoidance of doubt, the Debtor Released Claims shall not operate to waive, release, or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud or gross negligence of such applicable Debtor Released Party as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction; or (ii) the rights of such Debtors or the Reorganized Debtors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court. For the avoidance of doubt, the releases described herein are an integral component of the Senior Bonds 9019 Settlement as they relate to the Bond Trustee and 2008 Bondholders and shall, on the Effective Date, provide a full release of any claim, Cause of Action or challenge relating to the Series 2008 Bonds or 2008 Bond Documents including all matters asserted in the Challenge Litigation.

**D.**        *Releases by Holders of Claims*

As of the Effective Date and except as set forth in the Plan, the Plan Supplement, or the Confirmation Order, each Holder of a Claim shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including, but not limited to any derivative Claims assertable on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Series 2008 Bonds, the Debtors' restructuring sale, financing, and/or refinancing efforts, the Debtors' Chapter 11 Cases, the Reorganized Debtor(s) or the Issuer, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims before or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, "Released Claims"); provided, however, that except as otherwise expressly provided, the Plan shall not release the Debtors, the Reorganized Debtor(s) and the Released Parties from any Cause of Action held by a Governmental Unit existing as of the Effective Date based on (i) the Internal Revenue Code of 1986, as amended, or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities and Exchange Act of 1934 (as now in effect or hereafter amended), the Securities Act of 1933 (as now in effect or hereafter amended), or other securities laws of the United States or any domestic state, city or municipality, or (v) ERISA, nor shall the Plan release the Debtors or Reorganized Debtors from any obligation to perform their obligations herein.

(a)        **PBGC Release** - As of the Effective Date, to the maximum extent permitted by applicable law, other than the Allowed Claims of the PBGC, which shall be paid in strict accordance with the Plan, (i) the Debtors for which the Plan is confirmed and the Estates for any Debtors for which the Plan is confirmed, and (ii) solely in their capacity as acting by, through, or in any way on behalf of the entity listed in the immediately foregoing clause, the Debtors' professionals, employees, officers, directors, board members, attorneys, and financial advisors as well as the Released Parties, for good and valuable consideration, shall be deemed to be absolutely, unconditionally, and irrevocably released and forever discharged by PBGC and any terminated Debtor-sponsored pension plan from any Causes of Action based on or relating to any PBGC plan termination and any claims arising therefrom.  Notwithstanding the foregoing, or any provision in the Plan, Disclosure Statement or Confirmation Order, any Allowed Claims of the PBGC shall be enforceable and paid in accordance with the Plan with respect to any entity deemed to be within the "controlled group liability" owed to the TMH Pension Plan or PBGC under ERISA or the Internal Revenue Code.

### E.    Release of Liens

Except as otherwise provided in the Plan, including but not limited to, Other Secured Claims that are Reinstated pursuant to the Plan, obligations pursuant to Executory Contracts and Unexpired Leases assumed pursuant to the Plan, and the Series 2020 Bonds, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor(s) and its or their successors and assigns. For the avoidance of doubt, except as otherwise provided in the Plan, including Article III.D of the Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

### F.    Exculpation

**Effective as of the Effective Date, to the fullest extent permissible under applicable law, except as otherwise specifically provided in the Plan or Confirmation Order, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, administration, implementation, or filing of, as applicable, the Disclosure Statement, the Plan, the Plan Supplement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary herein the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be provided for by section 1125(e) of the Bankruptcy Code.**

G.      *Injunction*

**FROM AND AFTER THE EFFECTIVE DATE, PURSUANT TO SECTION 524(a) OF THE BANKRUPTCY CODE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AND EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN, OR THE CONFIRMATION ORDER, ALL PERSONS AND ENTITIES THAT HAVE, HOLD, OR MAY HOLD CLAIMS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO THE EXCULPATION RESTRICTIONS BELOW ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE RELEASED PARTIES:**

FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THE PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT, THE CONFIRMATION ORDER OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE RELEASED PARTIES OR THEIR ASSETS OR PROPERTY ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE RELEASED PARTIES OR ANY OF THEIR ASSETS OR PROPERTY. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE RELEASED PARTIES SHALL BE FULLY RELEASED AND DISCHARGED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN).

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, THE CONFIRMATION ORDER, OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE RELEASED PARTIES SHALL BE FULLY RELEASED AND DISCHARGED AND THE RELEASED PARTIES' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE RELEASED PARTIES, THEIR REPRESENTATIVES, AND EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

FOR THE AVOIDANCE OF DOUBT, NOTHING HEREIN SHALL IMPAIR THE RIGHTS OF ANY HOLDER OF A CLAIM FROM SEEKING TO ENFORCE PERFORMANCE BY THE DEBTORS OR REORGANIZED DEBTORS OF THEIR OBLIGATIONS UNDER THE PLAN.

UNTIL SUCH TIME THAT THE COVID-19 OUTBREAK IS NO LONGER CHARACTERIZED BY THE WORLD HEALTH ORGANIZATION AS A PANDEMIC, ALL PARTIES-IN-INTEREST, PERSONS, ENTITIES, AGENCIES, BOARDS, BUREAUS, DEPARTMENTS, AUTHORITIES, COMPANIES, AND CORPORATIONS, INCLUDING, WITHOUT LIMITATION, THE WEST VIRGINIA HEALTH CARE AUTHORITY, THE WEST VIRGINIA HOSPITAL FINANCE AUTHORITY, THE DEPARTMENT OF REVENUE, AND THE INTERNAL REVENUE SERVICE, SHALL BE REQUIRED TO COOPERATE WITH THE DEBTORS AND/OR REORGANIZED DEBTORS IN FURTHERANCE OF THE IMPLEMENTATION OF THE PLAN WHERE PUBLIC GATHERINGS ARE REQUIRED SO THAT MEETINGS, PUBLIC HEARINGS, OR OTHER TYPES OF PUBLIC GATHERINGS CAN BE CONDUCTED BY TELEPHONE, VIDEO, TELECONFERENCE, OR OTHER REASONABLE VIRTUAL COMMUNICATIVE MEANS, UNLESS OTHERWISE WAIVED.

### H.    Protection Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons, parties-in-interest, and Governmental Units, shall not discriminate against the Reorganized Debtor(s) or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor(s) or another Person with whom the Reorganized Debtor(s) has or have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### I.    Recoupment

In no event shall any Holder of a Claim be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### J.    Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

### K.    Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.**      ***Conditions Precedent to the Effective Date.***

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

1.      the Bankruptcy Court shall have entered the Confirmation Order and such order shall have become a Final Order and such order shall not have been amended, modified, vacated, stayed, or reversed;

2.      the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan, shall have been filed;

3.      all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws; and

4.      the 2020 Bond Documents are completed, the Series 2020 Note is issued and delivered, and the applicable portion of the proceeds of the Series 2020 Bonds, together with the other funds of the Debtors necessary to fund the $47 million payment described in the Plan, are received by the Bond Trustee for payment to the Bondholders as specified herein; and

5.      the Effective Date shall occur not later than August 31, 2020.

**B.**      ***Waiver of Conditions Precedent***

The Debtors may waive any of the conditions to the Effective Date set forth in Article IX.A of the Plan at any time with the consent of the Bond Trustee but otherwise without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

**C.**      ***Effect of Non-Occurrence of Conditions to Consummation***

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtors, and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or Claims against such Debtors; (2) prejudice in any manner the rights of such Debtors, any Holders of a Claim, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

### D.     Nonconsensual Confirmation

As to any Class that votes or is deemed to reject the Plan, the Debtors are seeking confirmation of the Plan in accordance with section 1129(b) of the Bankruptcy Code either under the terms provided herein or upon such terms as may exist if the Plan is modified in accordance with section 1127(d) of the Bankruptcy Code.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.     Modification of Plan

Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan prior to Confirmation and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Notwithstanding the foregoing, no provision of the Plan relating to the Series 2008 Bonds may be altered without the prior written consent of the Bond Trustee.

### B.     Effect of Confirmation on Modifications

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### C.     Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Causes of Action, (b) prejudice in any manner the rights of any Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.     resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.     ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.     enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, including, without limitation, provisions of the Plan and/or Confirmation Order relating to COVID-19;

7.     enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.     grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.      resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

11.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

12.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

14.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15.      enter an order or final decree concluding or closing the Chapter 11 Cases;

16.      enforce all orders previously entered by the Bankruptcy Court; and

17.      hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the foregoing, the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.    *Immediate Binding Effect*

Subject to Article IX hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims (irrespective of whether such Claims are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### B.    *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.    *Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a) of the United States Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by each of the applicable Reorganized Debtors for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized Debtor is converted, dismissed, or closed, whichever occurs first.

### D.    *Cancellation of Instruments*

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Series 2008 Bonds shall be cancelled, and the Series 2008 Bonds and 2008 Bond Documents shall continue in effect solely to the extent they relate to and are necessary to (i) allow distributions pursuant to the Plan, (ii) permit the Bond Trustee to be compensated for fees and reimbursed for expenses including expenses of its professionals, assert its charging lien, enforce its indemnity and other rights and protections with respect to and pursuant to the 2008 Bond Documents, (iii) permit the Bond Trustee to set one or more record dates and distributions dates with respect to the distribution of funds to beneficial owners of the Series 2008 Bonds, (iv) permit the Bond Trustee to appear in the Chapter 11 Cases and exercise the rights specified in the Plan, and (v) permit the Bond Trustee to perform any functions that are necessary in connection with the foregoing clauses (i) through (iv). For the avoidance of doubt, on the Effective Date, and subject to the disbursement to the Bond Trustee of the Cash payment on

account of the Series 2008 Bond Claims described in the Plan, the Bond Trustee shall release all of its Liens on the Bond Collateral.

### E.      Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims prior to the Effective Date. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking by the Bond Trustee of any action with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Bond Trustee prior to the Effective Date. If the Plan is not confirmed or the Effective Date does not occur, all rights to the Debtors and the Bond Trustee (including any rights to make an election under Bankruptcy Code Section 1111 shall be preserved).

### F.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### G.      Service of Documents

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(i)      If prior to the Effective Date:

Counsel for the Debtors
WHITEFORD, TAYLOR & PRESTON L.L.P.
Michael J. Roeschenthaler, Esquire
200 First Avenue, Third Floor
Pittsburgh, PA 15222
(412) 618-5601 Tel.
mroeschenthaler@wtplaw.com

with copies to:

Counsel to the Creditors Committee
SILLS CUMMIS & GROSS P.C.
Andrew H. Sherman, Esquire
Newark, NJ 07102
(973) 643-7000 Tel.
asherman@sillscummis.com

Counsel to the Bond Trustee
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
Ian A. Hammel, Esquire
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
iahammel@mintz.com

(ii)     If subsequent to the Effective Date:

Counsel to the Reorganized Debtors
WHITEFORD, TAYLOR & PRESTON L.L.P.
Michael J. Roeschenthaler, Esquire
Daniel Schimizzi, Esquire
200 First Avenue, Third Floor
Pittsburgh, PA 15222
(412) 618-5603 Tel.
mroeschenthaler@wtplaw.com
dschimizzi@wtplaw.com

## H.     Entire Agreement

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## I.     Severability

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of

the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. For the avoidance of doubt, no provision of the Plan relating to the Series 2008 Bonds may be altered without the written consent of the Bond Trustee.

### J.      Tax Reporting and Compliance

The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

### K.      Exhibits

All appendices, exhibits and schedules to the Plan, including the exhibits and documents included in the Plan Supplement, are incorporated herein and are a part of the Plan as if set forth in full herein.

### L.      Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, no such parties, individuals, or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

### M.      Waiver or Estoppel

Each Holder of a Claim shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

### N.      Dissolution of the Creditors Committee

The Creditors Committee shall dissolve on the Effective Date.

### O.      Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

Dated: July 7, 2020                    Thomas Health System, Inc.

                                       By: */s/ Daniel J. Lauffer*
                                       Name: Daniel J. Lauffer
                                       Title: President & Chief Executive Officer

                                       **WHITEFORD TAYLOR & PRESTON LLP**

                                       /s/ *Michael J. Roeschenthaler*
                                       Michael J. Roeschenthaler (PA I.D. No. 87647)
                                       200 First Avenue, Third Floor
                                       Pittsburgh, PA 15222
                                       (412) 618-5601 Tel.
                                       mroeschenthaler@wtplaw.com

                                       Brandy M. Rapp (WV Bar No. 10200)
                                       10 S. Jefferson Street, Suite 1110
                                       Roanoke, Virginia 24011
                                       (540) 759-3577 Tel.
                                       brapp@wtplaw.com

                                       *Counsel to the Debtors and Debtors-in-Possession*

                                            -AND-

                                       **FROST BROWN TODD, LLC**

                                       Jared M. Tully, Esq. (WV Bar No. 9444)
                                       500 Virginia Street East, Suite 1100
                                       Charleston, WV 25301
                                       304-345-0111 (phone)
                                       jtully@fbtlaw.com

                                       Ronald E. Gold, Esq. (Ohio Bar No. 0061351)
                                       Douglas L. Lutz, Esq. (Ohio Bar No. 0064761)
                                       3300 Great American Tower
                                       301 East Fourth Street
                                       Cincinnati, Ohio 45202
                                       513-651-6800 Telephone
                                       rgold@fbtlaw.com
                                       dlutz@fbtlaw.com

                                       *Local Counsel to the Debtors and*
                                       *Debtors-in-Possession*

*11399386*