**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **THOMAS HEALTH SYSTEM, INC., et al.,** | Case No. 20-20007 (FWV) (Jointly Administered) |
| **Debtors.**[1] | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER GRANTING FINAL APPROVAL OF THE DEBTORS'
DISCLOSURE STATEMENT AND CONFIRMING DEBTORS'
JOINT CHAPTER 11 PLAN OF REORGANIZATION**

WHEREAS the above captioned debtors and debtors in possession (the "Debtors"),

having:

i.   jointly proposed and filed with the United States Bankruptcy Court for the Southern District of West Virginia (the "Court") (a) the Disclosure Statement for Joint Chapter 11 Plan of Reorganization Dated June 18, 2020 [Dkt. No. 740] and (b) the Debtors' Joint Chapter 11 Plan of Reorganization Dated June 18, 2020 [Dkt. No. 741], which documents were modified to address concerns and certain comments proposed by various parties in interest [Dkt. Nos. 751, 753, 787 and 789] and ultimately resulted in the Joint Chapter 11 Plan of Reorganization dated July 7, 2020 (the "Initial Plan") [Dkt. No. 789], and (ii) the Disclosure Statement For Joint Chapter 11 Plan of Reorganization, dated July 7, 2020 (the "Initial Disclosure Statement") [Dkt. No. 796]; and,

ii.  obtained from the Court conditional approval of the Initial Disclosure Statement as containing "adequate information" as defined in section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") and approval of solicitation procedures (the "Solicitation Procedures"),

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: Thomas Health System, Inc. (0674); Herbert J. Thomas Memorial Hospital Association (4900); Charleston Hospital, Inc. (2692); THS Physician Partners, Inc. (5947); and TMH Services, Inc. (6607).

pursuant to this Court's Order entered on July 8, 2020 [Dkt. No. 795] as modified by this Court's order entered on August 10, 2020 [Dkt. No. 889] (collectively, the "Disclosure Statement Order"); and,

iii.    duly transmitted on July 10, 2020, and July 21, 2020, appropriate ballots for voting on the Initial Plan (the "Ballots") with the balance of the Solicitation Packages in accordance with the Disclosure Statement Order to Holders of Claims in compliance with the Solicitation Procedures, as set forth on the Certificate of Service of Omni Agent Solutions filed on July 30, 2020 [Dkt. No. 854] as supplemented by the Supplemental Certificate of Service of Omni Agent Solutions filed on August 4, 2020 [Dkt. No. 871]; and,

iv.    published notices of the entry of the Disclosure Statement Order in *The Wall Street Journal*, *The Register-Herald*, *The Charleston Gazette-Mail*, and *The Herald-Dispatch* on July 14, 2020, as set forth on the Affidavits of Publication of Omni Agent Solutions filed on July 15, 2020 [Dkt. No. 816]; and,

v.    jointly proposed and filed with the Court (a) the Debtors' Amended Joint Chapter 11 Plan of Reorganization, dated August 3, 2020 [Dkt. No. 861] (the "Plan"),[2] and (b) the Disclosure Statement For Amended Joint Chapter 11 Plan of Reorganization, dated August 3, 2020 [Dkt. No. 863] (the "Disclosure Statement"), which documents included enhanced treatment to creditors resulting in the support of both the Bond Trustee and the Creditors Committee; and,

vi.    secured modifications from the Court of certain deadlines associated with the Confirmation of the Plan, including, without limitation, modifications to the Voting Record Date pursuant to this Court's Order entered on August 10, 2020 [Dkt. No. 889], said order being duly transmitted on August 10, 2020, as set forth on the Certificate of Service of Omni Agent Solutions filed on August 13, 2020 [Dkt. No. [____]]; and,

vii.    duly transmitted on August 3, 2020, the Plan and Disclosure Statement to Holders of Claims in accordance with the extended Solicitation Procedures, as set forth on the Certificate of Service of Omni Agent Solutions filed on August 7, 2020 [Dkt. No. 879] as supplemented by the Supplemental Certificate of Service of Omni Agent Solutions filed on August 11, 2020 [Dkt. No. 901] (collectively, Dkt. Nos. 854, 871, 879, 901, and [____], the "Solicitation Affidavits"); and,

viii.    received ballots voting on the Plan as evidenced by both the Solicitation Affidavits and the Declaration of Paul H. Deutch Regarding Analysis of Ballots for Accepting or Rejecting the Debtors' Amended Joint Chapter 11 Plan of Reorganization filed with the Court on August [], 2020 [Dkt. No. []] (the "Voting Certification"); and,

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan or, where applicable, the Disclosure Statement Order.

ix.  filed the following documents in support of Confirmation of the Plan: (i) the Notice of Filing of Plan Supplement dated August 7, 2020 [Dkt. No. 883] (the "Plan Supplement"); (ii) the Supplemental Notice to Counterparties to the Debtors' Executory Contracts and Unexpired Leases of Assumption [Dkt. No. 888] (the "Assumption Notice"); (iii) the Debtors' Memorandum of Law in Support of Final Approval of the Debtors' Disclosure Statement for Joint Chapter 11 Plan of Reorganization, Confirmation of the Debtors' Joint Plan of Reorganization, Approval of Plan Settlements Pursuant to Fed. R. Bankr. P. 9019 [and Omnibus Reply to Plan Confirmation Objections] [Dkt. No. []] (the "Memorandum in Support"); (iv) the Declaration of Daniel J. Lauffer in Support of Confirmation of Amended Joint Chapter 11 Plan of Reorganization [Dkt. No. []] (the "Lauffer Declaration"); and,

x.  participated in a hearing held by this Court on final approval of the Disclosure Statement and Confirmation of the Plan on August 14, 2020 (the "Confirmation Hearing"), with the limited objections thereto and any remaining objections having been resolved, overruled, or withdrawn prior to or during the Confirmation Hearing; and,

xi.  presented the arguments of counsel and introduced evidence at the Confirmation Hearing that supports a finding by the Court that the Plan should be confirmed as set forth herein and based on the rulings at the Confirmation Hearing.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, without limitation, the Lauffer Declaration, the Voting Certification, and [INSERT ADDITIONAL DOCUMENTS], establish just cause for the relief granted in the Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I.     <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents in accordance with section 1121(a) of the Bankruptcy Code.

C.     <u>Chapter 11 Petitions</u>. On January 10, 2020 (the "<u>Petition Date</u>"), Debtors Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital Association, Charleston Hospital, Inc., and THS Physician Partners, Inc. filed voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code. The Chapter 11 Cases are jointly administered under bankruptcy case number 20-20007 pursuant to Bankruptcy Rule 1015(b). On May 22, 2020, TMH Services, Inc. also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. TMH Services' bankruptcy case is being jointly administered with the Chapter 11 Cases. The Debtors

4

are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.

D.     <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases and any related adversary proceedings.

E.     <u>Statutory Committee of Unsecured Creditors</u>. On January 29, 2020, the Office of the United States Trustee appointed the Creditors' Committee in these Chapter 11 Cases.

F.     <u>The Compromises and Settlements Embodied in the Plan are Fair, Reasonable, and in the Best Interest of the Debtors' Estates</u>. The Plan is the result of good faith, arm's length negotiations among the Debtors and other parties in interest including, the Bond Trustee (acting in consultation with and at the direction of certain Bondholders), the Debtors' other secured lenders, the Creditors' Committee, the PBGC, Rosemawr Management, as purchaser of the Series 2020 Bonds, and various holders of Tort Claims. The Plan constitutes a good faith, arm's length compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made or obligation to be incurred pursuant to the Plan and the Plan Supplement. Such compromises or settlements, including the Global 9019 Settlement, the PBGC Settlement (as defined herein), and other settlements set forth in the Plan or in this Confirmation Order (i) are in the best interests of (x) the Debtors and their Estates and (y) all Holders of Claims, including Holders of the Series 2008 Bonds and (ii) are fair, equitable, and reasonable.

G.    <u>Adequacy of the Disclosure Statement</u>. The Disclosure Statement contained extensive material information regarding the Debtors so that parties entitled to vote on the Plan, including Holders of the Series 2008 Bonds, could make informed decisions regarding the Plan. Additionally, the Disclosure Statement contains adequate information as that term is defined in section 1125(a) of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.

H.    <u>Disclosure Statement Order Compliance</u>. The Debtors have complied with the Disclosure Statement Order in all material respects.

I.    <u>Burden of Proof</u>.  To the extent applicable, the Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  Each Debtor has met such burden.

J.    <u>Modifications to the Plan</u>.  Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this Confirmation Order and the Plan filed on August 3, 2020, constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or interest. The modifications enhanced creditor treatment and reflected an exercise of the Debtors' sound business judgment. These modifications are consistent with the disclosures previously made pursuant to the Initial Disclosure Statement and solicitation materials served pursuant to the Disclosure Statement Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or

the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all valid votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

K.    <u>Voting</u>. As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of West Virginia (the "<u>Local Rules</u>"), applicable nonbankruptcy law, and the Disclosure Statement Order.

L.    <u>Solicitation</u>. The Plan, the Disclosure Statement, the Ballots, and notice of the Confirmation Hearing, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Disclosure Statement Order. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for Holders of Claims in the following Classes (the "<u>Voting Classes</u>") who are impaired under the Plan, may receive a distribution under the Plan, and, therefore, had their votes solicited: Class 1 (Series 2008 Secured Bond Claims), Class 4 (Convenience Claims) and Class 5 (General Unsecured Claims). The period during which the Debtors solicited acceptances to the Plan was reasonable under the circumstances of these Chapter 11 Cases and enabled Holders of Claims to make an informed decision to accept or reject the Plan.  The Debtors were not required to solicit votes from the Holders of Claims in the following Classes (the "<u>Deemed Accepting Classes</u>") as each such Class is unimpaired under the Plan and conclusively presumed to have accepted the Plan:  Class 2 (Other Secured Claims) and

Class 3 (Other Priority Claims).  As described in, and as evidenced by, *inter alia*, the Solicitation Affidavits and the Voting Certification, the transmittal and service of the (i) Plan, (ii) Disclosure Statement, (iii) Disclosure Statement Order (excluding exhibits thereto), (iv) the Confirmation Hearing Notice, (v) for Holders of Claims in Voting Classes, a Ballot, and (vi) for Holders of Claims in classes not entitled to vote to accept or reject the Plan, a Notice of Non-Voting Status (all of the foregoing, the "Solicitation") was timely, adequate, and sufficient under the circumstances. The Solicitation of votes on the Plan was conducted in good faith, complied with the Solicitation Procedures and the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws, and regulations.

M.     Bankruptcy Rule 3016.   The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined, identify the entities and persons that are released and exculpated under the Plan and identify the entities and persons that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

N.     Notice.   As is evidenced by the Voting Certification, the Solicitation Affidavits, and the proofs of publication, service of the Disclosure Statement Order, the Plan, the Disclosure Statement, the Confirmation Hearing Notice and the Ballots was adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing

including Bondholders (including the deadline for filing and serving objections to Confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

### Compliance with the Requirements of Section 1129 of the Bankruptcy Code

O.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1.      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Claims and Priority Tax Claims, which need not be classified, Article III of the Plan classifies five Classes of Claims for the Debtors. The Claims placed in each Class are substantially similar to other Claims, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Pursuant to Article III of the Plan, the following Classes are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code: Class 2 (Other Secured Claims) and Class 3 (Other Priority Claims).

3.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Section 3 of the Plan designates the following Classes as impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:  Class 1 (Series 2008 Secured Bond Claims), Class 4 (Convenience Claims), and Class 5 (General Unsecured Claims).

4.      Same Treatment for Each Claim or Interest of Each Particular Class (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim in each respective Class unless the Holder of a particular Claim has agreed to a less favorable treatment of such Claim, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

5.    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code. Specifically, the Plan will be funded from the proceeds of the Series 2020 Bonds, other available cash and funds of the Debtors, and from the continued operation of the Debtors' businesses.

6.    <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. The Debtors, other than TMH Services, are non-stock corporate entities and such Reorganized Debtors shall continue to exist on and after the Effective Date as separate non-stock corporate entities with all the powers of non-stock corporations, which renders section 1123(a)(6) inapplicable to such Reorganized Debtors. TMH Services' organizational documents will prohibit the issuance of non-voting equity securities and therefore complies with section 1123(a)(6).

7.    <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The Plan identifies the officers and directors of the Debtors who will serve after the Effective Date. The selection of the officers and directors is consistent with the interests of creditors and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

8.    <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>. As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan designates all impaired and unimpaired Classes.

9.    <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>. Article V of the Plan governs the assumption and rejection of executory contracts and unexpired leases and meets the requirements of section 365(b) of the Bankruptcy Code.

10.    <u>Settlement of Claims</u>.    Consistent with section 1123(b)(3) of the Bankruptcy Code, the Plan provided for the implementation of the Global 9019 Settlement which, among other things, provides for the settlement, compromise and treatment of the Series 2008 Bond Claims as specified in the Plan and for the release and exculpation of (a) each of the Debtors; (B) each of the Reorganized Debtors; (c) the Foundation (solely with respect to claims of the Bond Trustee and/or the holders of Series 2008 Bond Claims); (d) the Bond Trustee and Bondholders; (e) the Creditors Committee and its members; (f) with respect to each of the foregoing clauses (a) through (e), such Entity's financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (g) solely with respect to claims of the Bond Trustee, Bondholders and Creditors Committee, the Debtors' employees, officers, directors, and board members.

11.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. Each of the provisions of the Plan is appropriate and consistent with the applicable provisions of the Bankruptcy Code.

12.  <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>. Article V of the Plan provides for the satisfaction of default claims associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy laws. If there are any objections filed that cannot otherwise be resolved consensually among the relevant parties, the Court shall hold a hearing to adjudicate the dispute. Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

P.  <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

The Debtors have complied with the applicable provisions of the Bankruptcy Code as required by Section 1129(a)(2) of the Bankruptcy Code, including, as applicable, Sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019. Specifically:

1.  Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

2.  The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

3.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Disclosure Statement Order, and all other applicable law, in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

Q.  <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan (including all documents necessary to effectuate the Plan) has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. Such good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Lauffer Declaration, the Voting Certification and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Debtors proposed the Plan after many months of analysis and negotiations involving numerous proposals with the legitimate and honest purpose of maximizing the value of the Debtors' Estates, effectuating a successful

reorganization of the Debtors, and advancing the Debtors' mission. The Debtors and key interested parties developed the Plan (including all documents necessary to effectuate the Plan) and negotiated in good faith and at arms'-length among representatives of the Debtors, the Bond Trustee, the Creditors Committee, Rosemawr Management, as purchaser of the Series 2020 Bonds, and other significant creditors in the Chapter 11 Cases. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms'-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code and applicable case law in the Fourth Circuit, and are each necessary for the consummation of the Plan.  All obligations of the Reorganized Debtors arising under or connected to the Series 2020 Bonds (including any mortgages, liens, guarantees and security instruments or documents) are and are hereby deemed to be in exchange for fair and reasonably equivalent value and do not and are hereby deemed not to constitute a fraudulent transfer or fraudulent conveyance under applicable federal or state laws and shall not subject the holders of the Series 2020 Bonds to any liability by reason of incurrence of such obligation or grant of such liens, guarantees or security interests under applicable federal or state law, including, but not limited to, successor or transferee liability.

R.　　Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

S.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have

complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the

persons proposed to serve as officers and directors of the Debtors after Confirmation of the Plan

have been fully disclosed to the extent such information is available, and the appointment of such

persons is consistent with the interests of Holders of Claims against the Debtors and with public

policy.

T.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any

changes in rates established or approved by, or otherwise subject to, any governmental

regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is satisfied.

U.      <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section

1129(a)(7) of the Bankruptcy Code. All of the Impaired Classes have voted to accept the Plan.

As set forth in the Voting Certification, Classes 1, 4 and 5 have voted to accept the Plan.

Accordingly, all Impaired Classes have voted to accept the Plan and the requirements of section

1129(a)(7) of the Bankruptcy Code have been satisfied.

V.      <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  All impaired Classes

have accepted the Plan.  All the remaining Classes are unimpaired under the Plan and therefore

are deemed to have accepted the Plan.  Accordingly, all Classes under the Plan have either

accepted the Plan, or are deemed to have accepted the Plan and the requirements of section

1129(a)(8) of the Bankruptcy Code have been satisfied.

W.      <u>Treatment of Administrative Claims and Priority Claims (11 U.S.C. § 1129(a)(9))</u>.

The treatment of Allowed Administrative Claims under Article II of the Plan satisfies the

requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Other Priority

Claims pursuant to Article III(D)(3) of the Plan satisfies the requirements of section

1129(a)(9)(B) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Article

II of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

X.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Holders of Claims in the

Voting Classes voted to accept the Plan, determined without including any acceptance of the

Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy

Code.

Y.      Feasibility (11 U.S.C. § 1129(a)(11)). Confirmation of the Plan is not likely to be

followed by the liquidation or the need for further financial reorganization of the Reorganized

Debtors.  As a result, the requirement of section 1129(a)(11) of the Bankruptcy Code is satisfied

Z.      Payment of Fees (11 U.S.C. § 1129(a)(12)). The Plan provides that the Debtors

shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code as they

become due and owing, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

AA.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13). As the Plan does not

seek to modify health and welfare retiree benefits, the Plan satisfies section 1129(a)(13).

Nothing herein shall impair or otherwise contradict the agreement, as set forth in Article IV(U)

of the Plan, between the Debtors and the PBGC relating to the terms and conditions of the

termination of the TMH Pension Plan and settlement of the claims arising therefrom.

BB.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not

required by a judicial or administrative order, or by statute, to pay a domestic support obligation.

Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Chapter 11

Cases.

CC.    <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>. The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

DD.    <u>Compliance Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. Debtors Thomas Health System, Inc., Herbert J. Thomas Memorial Hospital Association, Charleston Hospital, Inc., and THS Physician Partners, Inc., are each a nonstock, not-for-profit corporation duly incorporated under the laws of the State of West Virginia.    To the extent applicable, all transfers under the Plan are in accordance with applicable nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. TMH Services, Inc., is a moneyed, business, or commercial corporation, and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to its Chapter 11 Case.

EE.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

FF.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the Confirmation of the Plan on any such grounds. Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

GG.    <u>Not Small Business Cases (11 U.S.C. § 1129(e))</u>.   The Chapter 11 Cases are not small business cases, and accordingly, Section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

HH.  <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the

Court, the Lauffer Declaration and the record of the Chapter 11 Cases, the Debtors, the Bond

Trustee, the Creditors Committee and their respective current members, officers, directors,

agents, subsidiaries, affiliates, general and limited partners, financial advisors, investment

bankers, restructuring consultants, independent accountants, attorneys, employees,

representatives, and other professionals retained by such persons, to the extent applicable, (i)

have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in

compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy

of disclosure in connection with all their respective activities relating to the solicitation of

acceptances to the Plan and their participation in the activities described in section 1125 of the

Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance

with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities

under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will

not be, liable at any time for the violation of any applicable law, rule, or regulation governing the

solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities

under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy

Code and, to the extent such parties are listed therein, the release provisions set forth in Article

VIII of the Plan.

II.  <u>Implementation</u>. All documents necessary to implement the Plan, and all other

relevant and necessary documents have been developed and negotiated in good faith and at

arms'-length and shall, upon completion of documentation and execution, and subject to the

occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

JJ.    <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in Article IX of the Plan have been satisfied or waived pursuant to the Plan.  Consistent with the announcements made at the Confirmation Hearing, Article III(A) of the Plan is hereby amended to extend the targeted Effective Date to occur on or before September 30, 2020 in order to consummate the funding transactions set forth in the Plan.

KK.    <u>Vesting of Assets</u>.  Except as otherwise provided in the Plan, in this Confirmation Order, or any agreement, instrument or other document incorporated herein, on the Effective Date and with respect to the Bond Trustee, based on the treatment of the Series 2008 Bond Claims specified in the Plan and upon receipt by the Bond Trustee of the Cash to be distributed to or retained by it (including the Indenture Funds) on the Effective Date pursuant to the Plan, or as soon as practicable thereafter, all property of the Debtors' Estates (including the Segregated GUC Account and the GUC Distribution therein) and all Causes of Action shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens securing the Series 2020 Note or Other Secured Claims; *provided, however*, that no Liens securing the Series 2020 Note or Other Secured Claims shall attach to the Segregated GUC Account or the GUC Distribution therein). On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided, however*, that the GUC Distribution is available exclusively for the

distribution to Holders of Allowed Class 5 General Unsecured Claims pursuant to the terms set forth in Article III(D)(5) of the Plan.

LL.    <u>Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a))</u>. The Bankruptcy Court finds and concludes that, in accordance with section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or any other Person or Entity pursuant to the Plan, including in relation to the Series 2020 Bonds, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.

MM.    <u>Releases</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases set forth in Article VIII and elsewhere in the Plan, and in this Confirmation Order.  Section 105(a) of the Bankruptcy Code permits approval of the releases set forth in Article VIII and elsewhere in the Plan, and in this Confirmation Order, because, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented in the Lauffer Declaration and at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and all creditors and parties in interest, including Bondholders.  The releases of non-Debtors under the Plan, including releases of the Bond Trustee and Creditors Committee, are fair to Holders of Claims and interests,

including Bondholders, and are necessary to the Plan.  Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases.  The Lauffer Declaration and the record of the Confirmation Hearing and these Chapter 11 Cases are sufficient to support the releases provided for in Article VIII of the Plan.  Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented in the Lauffer Declaration and at the Confirmation Hearing, this Court finds that the releases set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law.

NN.   Objections.  All parties have had a full and fair opportunity to litigate all issues raised in the objections to Confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by provisions set forth in this Confirmation Order.

OO.   Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT**:

1.   Findings of Fact and Conclusions of Law.  The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation, are hereby incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or

conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

2.     <u>Notice of the Confirmation Hearing</u>.    Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.     <u>Solicitation</u>.  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

4.     <u>Ballots</u>. The forms of Ballots are in compliance with Bankruptcy Rule 3018(c) and conform to Official Form Number 14, and are approved in all respects.

5.     <u>Plan Classification Controlling</u>.  The terms of the Plan shall solely govern the classification of Claims for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

6.      <u>Confirmation of the Plan</u>. The Plan and each of its provisions shall be, and hereby are, approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into, and are an integral part of this Confirmation Order.  The targeted Effective Date shall be on or before September 30, 2020.

7.      <u>Final Approval of Disclosure Statement</u>. The Disclosure Statement contains extensive adequate information as that term is defined in section 1125(a) of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law, and is therefore approved on a final basis.  To the extent that any objections (including any reservations of rights contained therein) to final approval of the Disclosure Statement have not been withdrawn, waived, or settled before entry of this Confirmation Order, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits.

8.      <u>Objections Resolved or Overruled</u>. To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, or on the terms of this Confirmation Order, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits.

9.      <u>Binding Effect</u>. On the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, all Holders of Claims of the Debtors including Bondholders (irrespective of whether such Claims are impaired under the Plan or whether the Holders of such Claims have accepted the Plan), any

and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the

Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors,

administrators, successors, or assigns, if any, of any of the foregoing.

10.     <u>Vesting of Assets</u>.  Except as otherwise provided in this Confirmation Order, the

Plan or any agreement, instrument or other document incorporated herein, on the Effective Date

and with respect to the Bond Trustee, upon receipt by the Bond Trustee of the Cash to be

distributed to it on the Effective Date pursuant to the Plan, or as soon as practicable thereafter, all

property of the Debtors' Estates (including the Segregated GUC Account and GUC Distribution

therein) and all Causes of Action shall vest in the Reorganized Debtors, free and clear of all

Liens, Claims, charges or other encumbrances (except for Liens securing the Series 2020 Note or

Other Secured Claims; *provided, however*, that no Liens securing the Series 2020 Note or Other

Secured Claims shall attach to the Segregated GUC Account or the GUC Distribution therein).

On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized

Debtors may operate their business and may use, acquire or dispose of property and compromise

or settle any Claims or Causes of Action without supervision or approval by the Court and free

of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided, however*, that the

GUC Distribution is available exclusively for the distribution to Holders of Allowed Class 5

General Unsecured Claims pursuant to the terms set forth in Article III(D)(5) of the Plan.

11.     <u>Retained Claims</u>.  In accordance with section 1123(b) of the Bankruptcy Code,

except as specifically provided in the Plan, the Retained Claims shall vest in the Reorganized

Debtors on the Effective Date and the Reorganized Debtors shall be solely responsible for the

continuation of any litigation or negotiation related thereto. Except to the extent expressly

released under the Plan, nothing in these Chapter 11 Cases shall impact the Reorganized

Debtors' ability to continue litigation related to the Retained Claims nor shall such retention be construed as granting a Creditor or Person with any right that is inconsistent with the other terms of the Plan.  To the extent the Debtors are entitled to assert a claim or exercise a right to Relief Funds, such rights are expressly preserved. No Person shall rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or this Confirmation Order to any Retained Claim against it as any indication that the Reorganized Debtors will not pursue any and all available Retained Claims.  The Debtors have expressly reserved in favor of the Reorganized Debtors all rights to prosecute any and all Retained Claims against any Person, except as otherwise expressly provided in the Plan.  Unless any Retained Claims against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to Retained Claims upon, after, or as a consequence of Confirmation or consummation of this Plan.

12.    Reservation of Rights.  Except as specifically provided herein or in the Plan, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan.  The Debtors reserve and shall retain the Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Person shall vest in the Debtors.  Except as otherwise set forth in the Plan, the Debtors shall retain, reserve, and

shall have the exclusive right, authority and discretion to assert all such claims, Causes of

Action, rights of setoff, or other legal or equitable defenses which they or any of them had

immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced,

and all legal and equitable rights of any Debtor respecting any Claim left unimpaired by the Plan

may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had

not been commenced, and to initiate, file, prosecute, enforce, abandon, settle, compromise,

release, withdraw, or litigate to judgment any such Causes of Action relating to any Claim left

unimpaired by the Plan and to decline to do any of the foregoing relating to any Claim left

unimpaired by the Plan without the consent or approval of any third party or further notice to or

action, order, or approval of the Court.

13.    Implementation of the Plan; Restructuring Transactions.  On the Effective Date or

as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtors shall be,

and hereby are, authorized, without the need for further notices, approvals or meetings of the

Debtors' Board of Directors, to take all actions as may be necessary or appropriate to effect the

restructuring transactions and any transaction described in, approved by, contemplated by or

necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate

agreements or other documents of merger, consolidation, restructuring, conversion, disposition,

transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan

and that satisfy the applicable requirements of applicable law and any other terms to which the

applicable Persons may agree; (b) the execution and delivery of appropriate instruments of

transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or

obligation on terms consistent with the terms of the Plan and having other terms for which the

applicable Persons agree; (c) the filing of appropriate certificates or articles of incorporation or

amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant

to applicable state law; (d) the execution, delivery and performance of any and all Series 2020

Bond Documents and all other documents necessary or appropriate to effectuate the issuance of

the Series 2020 Bonds, including without limitation the execution, delivery and recording of

documents or instruments with respect to the granting of liens, security interests, mortgages,

deeds of trust, or other security, and any other documents or instruments contemplated by the

Series 2020 Bonds; and (e) all other actions that the applicable Persons and/or Reorganized

Debtors determine to be necessary or appropriate, including making filings or recordings that

may be required by applicable law.

14.     <u>Cancellation of Instruments</u>.   Except as otherwise provided in the Plan or this

Confirmation Order, on the Effective Date, the Series 2008 Bonds shall be cancelled, and the

Series 2008 Bonds and 2008 Bond Documents shall continue in effect solely to the extent they

relate to and are necessary to (i) allow distributions pursuant to the Plan, (ii) permit the Bond

Trustee to be compensated for fees and reimbursed for expenses including expenses of its

professionals, assert its charging lien, enforce its indemnity and other rights and protections with

respect to and pursuant to the 2008 Bond Documents; *provided*, *however*, that the Bond Trustee

shall not be compensated or reimbursed from, assert any liens against, or enforce its indemnity or

any other rights and protections against the Segregated GUC Account or the GUC Distribution

therein, (iii) permit the Bond Trustee to set one or more record dates and distributions dates with

respect to the distribution of funds to beneficial owners of the Series 2008 Bonds, (iv) permit the

Bond Trustee to appear in the Chapter 11 Cases and exercise the rights specified in the Plan, and

(v) permit the Bond Trustee to perform any functions that are necessary in connection with the

foregoing clauses (i) through (iv). For the avoidance of doubt, on the Effective Date, and subject

to the disbursement to the Bond Trustee of the Cash payment on account of the Series 2008

Secured Bond Claims described in the Plan, the Bond Trustee shall release all of its Liens on the

Bond Collateral.

15.     <u>Compromise of Controversies</u>.   Subject only to the occurrence of the Effective

Date, the Global 9019 Settlement set forth in the Plan shall be and hereby is approved.   Pursuant

to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the

classification, distributions, releases, and other benefits provided under the Plan, upon the

Effective Date, the provisions of the Plan, including the releases set forth in Article VIII thereof,

shall constitute a good faith compromise and settlement of all Claims and controversies resolved

pursuant to the Plan including, without limitation, the Global 9019 Settlement, the PBGC

Settlement (as defined herein), and other settlements set forth in the Plan and this Confirmation

Order. All distributions made to Holders of Allowed Claims in any Class are intended to be and

shall be final.   If the Effective Date does not occur, and as specified in the Plan, the settlements

set forth in the Plan, including the Global 9019 Settlement, shall be deemed to have been

withdrawn without prejudice to the respective positions of the parties and all rights of the

Debtors, the Creditors Committee (including the right to continue the Challenge Litigation and

object to any motion filed by the Bond Trustee for allowance of claims under Bankruptcy Rule

3018(a)), and the Bond Trustee (including rights to make an 1111(b) election) shall be preserved.

16.     <u>Assumption of Executory Contracts and Unexpired Leases</u>.   The provisions

governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of

the Plan (including the procedures regarding the resolution of any and all disputes concerning the

assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall

be, and hereby are, approved in their entirety.   Except as otherwise provided in this Confirmation

Order or the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected by the Debtors in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that: (i) have been assumed or rejected by the Debtors by prior order of the Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) are the subject of a motion to assume filed by the Debtors pending on the Effective Date; (iv) are identified by the Debtors for assumption in the Plan Supplement, which may be amended by the Debtors to add or remove Executory Contracts and Unexpired Leases prior to the Effective Date; or (v) are assumed by the Debtors pursuant to the terms of the Plan. The entry of this Confirmation Order constitutes the entry of an appropriate order approving the assumptions or rejections, as applicable, of such Executory Contracts or Unexpired Leases, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code. Unless otherwise specified in the Plan or the Plan Supplement, each Executory Contract and Unexpired Lease listed or to be listed thereon shall include any and all modifications, amendments, supplements, restatements and other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument or other document is listed thereon.

17. <u>Cure Claims</u>. Unless a party to an Executory Contract or Unexpired Lease objected to the cure amounts identified in the Plan Supplement and any amendments thereto, as applicable, the Debtors shall pay such cure amounts in accordance with the terms of the Plan and the assumption of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership

interest composition or other bankruptcy-related defaults, arising under any assumed Executory

Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory

Contract or Unexpired Lease.

18.     Rejection of Executory Contracts and Unexpired Leases; Rejection Damage

Claims.  The entry of this Confirmation Order constitutes the entry of an appropriate order

authorizing the Debtors to reject, effective as of the Effective Date, any Executory Contract or

Unexpired Lease that the Debtors have not identified for assumption in the Plan Supplement.  **All**

**Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts**

**or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed**

**with the Court within twenty-one (21) days after the Effective Date**; *provided*, *however*, that

to the extent any Executory Contract or Unexpired Lease is rejected pursuant to a Final Order,

any Proof of Claim with respect to Claims arising from the rejection of an Executory Contract or

Unexpired Lease authorized by such Final Order must be filed with the Court within twenty-one

(21) days of the entry of the Final Order approving such rejection.  **Any Claims arising from**

**the rejection of an Executory Contract or Unexpired Lease not filed with the Court within**

**such time will be automatically disallowed, forever barred from assertion, and shall not be**

**enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property,**

**without the need for any objection by the Debtors or Reorganized Debtors, or further**

**notice to, action, order, or approval of the Court or any other Entity, and any Claim**

**arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed**

**fully satisfied, released, and discharged, and be subject to the permanent injunction set**

**forth in Article VIII of the Plan, notwithstanding anything in a Proof of Claim to the**

**contrary.**  All timely filed Claims arising from the rejection by any Debtor of any Executory

Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

19. <u>Bar Date for Administrative Claims</u>. **PROOFS OF ADMINISTRATIVE CLAIMS AND REQUESTS FOR PAYMENT OF ADMINISTRATIVE CLAIMS MUST BE FILED AND SERVED NO LATER THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE**. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, no proof of Administrative Claim or application for payment of an Administrative Claim need be filed for the allowance of any: (i) Administrative Claims held by trade vendors or others, which administrative liability was incurred by the Debtors in the ordinary course of business of the Debtors and such creditors after the Petition Date, subject, however, to the right of the Debtors to object to such Claims in the event of a *bona fide* dispute; (ii) Professional Fee Claims; or (iii) Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code. All Claims described in clauses (i) and (iii) of the immediately preceding sentence shall be paid by the Debtors in the ordinary course of business. **Any Persons that fail to File a proof of Administrative Claim or request for payment thereof on or before the Administrative Claim Bar Date shall be forever barred from asserting such Claim against any of the Debtors, the Estates, or their property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.**

20.    <u>Professional Compensation</u>.  All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date **must be filed by the date that is not later than forty-five (45) days after the Effective Date**, absent an extension granted by the Court. The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Court orders. The Reorganized Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals when such Professional Fee Claims are Allowed by entry of an order of the Court, unless otherwise agreed upon by and between such Professional and the Debtors or Reorganized Debtors.

21.    <u>Post-Effective Date Retention of Professionals</u>.  Upon the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Court, including any payment of reasonable fees and expenses of the Committee Professionals in accordance with Article IV(S) of the Plan.

22.    <u>Releases by the Debtors, Reorganized Debtors, their Affiliates and their Estates</u>. Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, the Plan Supplement, or this Confirmation Order, for good and valuable consideration, including the service of the Debtor Released Parties to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, and to the fullest extent permitted by

applicable law, in exchange for their cooperation, on and after the Effective Date, the Debtor

Released Parties are hereby released and discharged by the Debtors, the Reorganized Debtor(s),

their Affiliates and the Estates from any and all claims, obligations, rights, suits, damages,

Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted

or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen,

existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Reorganized

Debtor(s), the Estates or their Affiliates would have been legally entitled to assert in their own

right (whether individually or collectively) or on behalf of the Holder of any Claim or other

Person or Entity, based on or relating to, or in any manner arising from, in whole or in part, the

Debtors, the Series 2008 Bonds, the Debtors' Chapter 11 Cases, the subject matter of, or the

transactions or events giving rise to, any Claim that is treated in the Plan, the business or

contractual arrangements between any Debtor and any Debtor Released Party, the restructuring,

sale, or refinancing efforts of the Debtors, the restructuring of Claims before or during the

Debtors' Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the

Disclosure Statement, any Plan Supplement or related agreements, instruments or other

documents (collectively, the "Debtor Released Claims"). For the avoidance of doubt, the Debtor

Released Claims shall not operate to waive, release, or otherwise impair: (i) any Causes of

Action arising from willful misconduct, actual fraud or gross negligence of such applicable

Debtor Released Party as determined by a Final Order of the Court or any other court of

competent jurisdiction; or (ii) the rights of such Debtors or the Reorganized Debtors to enforce

the Plan and the contracts, instruments, releases, indentures, and other agreements or documents

delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed

pursuant to Final Order of the Bankruptcy Court. For the avoidance of doubt, the releases

described herein are an integral component of the Global 9019 Settlement as they relate to the

Bond Trustee, the Bondholders and the Creditors Committee and shall, on the Effective Date,

provide a full release of any claim, Cause of Action or challenge, including, but not limited to

claims relating to the Series 2008 Bonds or 2008 Bond Documents including all matters

asserted in the Challenge Litigation.

23.    **Releases by Holders of Claims. As of the Effective Date and except as set
forth in the Plan, the Plan Supplement, or this Confirmation Order, each Holder of a Claim
shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever,
released and discharged the Released Parties from any and all Claims, obligations, rights,
suits, damages, Causes of Action, remedies and liabilities whatsoever, including, but not
limited to any derivative Claims assertable on behalf of a Debtor, whether known or
unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise,
that such Person or Entity would have been legally entitled to assert (whether individually
or collectively), based on or relating to, or in any manner arising from, in whole or in part,
the Debtors, the Series 2008 Bonds, the Debtors' restructuring sale, financing, and/or
refinancing efforts, the Debtors' Chapter 11 Cases, the Reorganized Debtor(s) or the Issuer,
the subject matter of, or the transactions or events giving rise to, any Claim that is treated
in the Plan, the business or contractual arrangements between any Debtor and any Released
Party, the restructuring of Claims before or during the Chapter 11 Cases, the negotiation,
formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or
related agreements, instruments or other documents (collectively, "Released Claims");
provided, however, that except as otherwise expressly provided, the Plan shall not release
the Debtors, the Reorganized Debtor(s) and the Released Parties from any Cause of Action**

held by a Governmental Unit existing as of the Effective Date based on (i) the Internal Revenue Code of 1986, as amended, or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities and Exchange Act of 1934 (as now in effect or hereafter amended), the Securities Act of 1933 (as now in effect or hereafter amended), or other securities laws of the United States or any domestic state, city or municipality, or (v) ERISA, nor shall the Plan release the Debtors or Reorganized Debtors from any obligation to perform their obligations herein.

24.   **PBGC Release**. As of the Effective Date, to the maximum extent permitted by applicable law, other than the Allowed Claims of the PBGC delineated in Section U of Article IV of the Plan, which shall be paid in strict accordance with the Plan by only the Reorganized Debtors, and the Termination Premiums delineated in Section U of Article IV of the Plan, which shall be paid by only the Reorganized Debtors, (i) the Foundation and the Debtors for which the Plan is confirmed, and the Estates for any Debtors for which the Plan is confirmed, and (ii) solely in their capacity as acting by, through, or in any way on behalf of the entity listed in the immediately foregoing clause, the Debtors' and Foundations' professionals, employees, officers, directors, board members, attorneys, and financial advisors as well as the Released Parties, for good and valuable consideration, shall be deemed to be absolutely, unconditionally, and irrevocably released and forever discharged by PBGC and the TMH Pension Plan from any Causes of Action based on or relating to any PBGC plan termination and any Claims arising therefrom. For the avoidance of doubt, the Reorganized Debtors are not discharged, released or exculpated from the Termination

33

**Premiums stated in Section U of Article IV of the Plan, which such Termination Premiums shall not be paid from the GUC Distribution. Notwithstanding the foregoing, or any provision in the Plan, Disclosure Statement or Confirmation Order, or any other document filed in the Debtors' Chapter 11 Cases, including but not limited to the discharge, releases, exculpations, settlements and injunctions set forth in Article VIII of the Plan, nothing shall be construed to release, discharge or exculpate any individual or entity from fiduciary breach related to the TMH Pension Plan or enjoin or prevent the TMH Pension Plan or PBGC from collecting any such liability from a liable individual or entity, which such collection of any such liability, for the avoidance of doubt, shall not be paid from the GUC Distribution.**

25.    <u>Release of Liens</u>.  Except as otherwise provided in this Confirmation Order, the Plan, including but not limited to, Other Secured Claims that are Reinstated pursuant to the Plan, obligations pursuant to Executory Contracts and Unexpired Leases assumed pursuant to the Plan, and the Series 2020 Bonds, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor(s) and its or their successors and assigns. For the avoidance of doubt, except as otherwise provided in the Plan, including Article III(D) of the Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released and discharged

34

on the Effective Date without any further action of any party, including, but not limited to, further order of the Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

26.    **Exculpation**.    **Effective as of the Effective Date, to the fullest extent permissible under applicable law, except as otherwise specifically provided in the Plan or this Confirmation Order, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, administration, implementation, or filing of, as applicable, the Disclosure Statement, the Plan, the Plan Supplement, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or this Confirmation Order in lieu of such legal opinion), except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary herein the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be**

35

deemed to have, participated in good faith and in compliance with the applicable laws with

regard to the solicitation of votes and distribution of consideration pursuant to the Plan and,

therefore, are not, and on account of such distributions shall not be, liable at any time for

the violation of any applicable law, rule, or regulation governing the solicitation of

acceptances or rejections of the Plan or such distributions made pursuant to the Plan. With

respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall

be provided for by section 1125(e) of the Bankruptcy Code.

27.    **INJUNCTION**. FROM AND AFTER THE EFFECTIVE DATE,

PURSUANT TO SECTION 524(a) OF THE BANKRUPTCY CODE, TO THE FULLEST

EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AND EXCEPT AS OTHERWISE

EXPRESSLY PROVIDED IN THE PLAN, FOR OBLIGATIONS ISSUED OR REQUIRED

TO BE PAID PURSUANT TO THE PLAN, OR THIS CONFIRMATION ORDER, ALL

PERSONS AND ENTITIES THAT HAVE, HOLD, OR MAY HOLD CLAIMS THAT

HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO THE EXCULPATION

RESTRICTIONS BELOW ARE PERMANENTLY ENJOINED, FROM AND AFTER THE

EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST

THE RELEASED PARTIES:

    i.    FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

    ii.    FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THE PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY,

OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN.

iii.    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT, THE CONFIRMATION ORDER OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE RELEASED PARTIES OR THEIR ASSETS OR PROPERTY ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN.

iv.    THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE RELEASED PARTIES OR ANY OF THEIR ASSETS OR PROPERTY. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE RELEASED PARTIES SHALL BE FULLY RELEASED AND DISCHARGED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN).

v.    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, THE CONFIRMATION ORDER, OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE RELEASED PARTIES SHALL BE FULLY RELEASED AND DISCHARGED AND THE RELEASED PARTIES' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

vi.      ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE RELEASED PARTIES, THEIR REPRESENTATIVES, AND EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

vii.     FOR THE AVOIDANCE OF DOUBT, NOTHING HEREIN SHALL IMPAIR THE RIGHTS OF ANY HOLDER OF A CLAIM FROM SEEKING TO ENFORCE PERFORMANCE BY THE DEBTORS OR REORGANIZED DEBTORS OF THEIR OBLIGATIONS UNDER THE PLAN.

viii.    UNTIL SUCH TIME THAT THE COVID-19 OUTBREAK IS NO LONGER CHARACTERIZED BY THE WORLD HEALTH ORGANIZATION AS A PANDEMIC, ALL PARTIES-IN-INTEREST, PERSONS, ENTITIES, AGENCIES, BOARDS, BUREAUS, DEPARTMENTS, AUTHORITIES, COMPANIES, AND CORPORATIONS, INCLUDING, WITHOUT LIMITATION, THE WEST VIRGINIA HEALTH CARE AUTHORITY, THE WEST VIRGINIA HOSPITAL FINANCE AUTHORITY, THE DEPARTMENT OF REVENUE, AND THE INTERNAL REVENUE SERVICE, SHALL BE REQUIRED TO COOPERATE WITH THE DEBTORS AND/OR REORGANIZED DEBTORS IN FURTHERANCE OF THE IMPLEMENTATION OF THE PLAN WHERE PUBLIC GATHERINGS ARE REQUIRED SO THAT MEETINGS, PUBLIC HEARINGS, OR OTHER TYPES OF PUBLIC GATHERINGS CAN BE CONDUCTED BY TELEPHONE, VIDEO, TELECONFERENCE, OR OTHER REASONABLE VIRTUAL COMMUNICATIVE MEANS, UNLESS OTHERWISE WAIVED.

28.    <u>Binding Release Provision</u>.   All release provisions embodied in the Plan, including but not limited to those contained in Article VIII of the Plan, are approved and shall be effective and binding on all persons and entities, to the extent provided in the Plan and herein. Notwithstanding the foregoing or any other provisions of this Confirmation Order or the Plan, to the extent that any creditor of a Debtor and a Debtor are parties to a post-petition agreement containing one or more release provisions, which agreement was previously approved by the Court, the release provision(s) in any such agreement as well as the agreement itself shall not be modified by virtue of the release provisions embodied in the Plan or this Confirmation Order.

29.    <u>Injunctions and Automatic Stay</u>.  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

30.    <u>Board of Directors/Officers</u>. On the Effective Date, the members of the boards of directors and officers of the Reorganized Debtors shall be the individuals identified in the Plan and/or at the Confirmation Hearing. All persons acting as directors, managers, and officers of the Debtors that have not been selected as the directors and officers of the Reorganized Debtors shall, on the Effective Date, be deemed to have resigned, their appointments shall be rescinded for all purposes, and their respective authority and power, in their capacities as such, shall be revoked, in each case, without the necessity of taking any further action in connection therewith.

31.    <u>Plan Distributions</u>. The provisions governing Distributions set forth in Article VI of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to make all Distributions pursuant to the terms of the Plan and to pay any other applicable fees and expenses in connection therewith approved by this Confirmation Order or any other Order of this Court

32.    <u>Objections to Claims</u>.  The procedures for resolving Claims set forth in Article VII of the Plan shall be, and hereby are, approved in their entirety.  The Claims objection process set forth in Article VII(A)(2) of the Plan shall not be altered, amended or modified without the prior written consent of the Creditors Committee.  For the avoidance of doubt, any Proof of

Claim filed that is contrary to how such Claim was scheduled may be subject to a claims objection pursuant to Article VII of the Plan unless otherwise expressly allowed in priority and amount in the Plan or this Confirmation Order.

33.    Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date and thereafter as may be required

34.    Reversal/Stay/Modification/Vacatur of Confirmation Order.  Except as otherwise provided in this Confirmation Order or in the Plan, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court of competent jurisdiction, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors, the Reorganized Debtors, or any other party authorized or required to take any action in connection with the Plan, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Supplement, or any amendments or modifications to the foregoing.  The foregoing notwithstanding, if, after the Effective Date, this Order is vacated or reversed and, at the time this Order is vacated or reversed, the Series 2020 Bonds are in effect, then as applicable: (a) the vacatur or reversal of this Order shall not adversely affect the validity or priority of any obligations incurred by the Reorganized Debtors arising in connection with the Series 2020 Bonds or any liens, guaranties or claims granted the trustee or holders with respect to the Series 2020 Bonds; (b); the terms and conditions of the 2020 Bond Documents, as in effect

at the time of the vacatur or reversal of this Order, shall be binding on the Reorganized Debtors, and the trustee or holders with respect to the Series 2020 Bonds shall enjoy the same priority of liens, claims and rights granted to them under Series 2020 Bonds and related instruments and documents; or (c) any liens, guaranties or claims granted to the trustee or holders with respect to the Series 2020 Bonds shall be deemed to have been granted by, and shall become the obligations of, the predecessors in interest of the Reorganized Debtors.  For the avoidance of doubt, if the Effective Date of the Plan does not occur as a result of any or all of the provisions of this Confirmation Order being reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court of competent jurisdiction, all rights of the Debtors, the Creditors Committee (including the right to continue the Challenge Litigation and object to any motion filed by the Bond Trustee for allowance of claims under Bankruptcy Rule 3018(a)) and the Bond Trustee (including the right to make an 1111(b) election) shall be preserved.

35.    Retention of Jurisdiction.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to Article XI of the Plan and sections 105 and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Plan.  The foregoing notwithstanding, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the Series 2020 Bonds or any documents or instruments executed and delivered in connection therewith or any liens, rights, claims or remedies related thereto after the Effective Date, but instead, such enforcement shall be governed as set forth in the Series 2020 Bonds and 2020 Bond Documents.

36.   <u>Discharge</u>.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Confirmation Order, the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (not including any Debtor Intercompany Claims or non-Debtor Intercompany Claims) and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims relate to the loss of tax-exemption of any portion of the Series 2008 Bonds that arise as a result of the Plan or after the Effective Date for periods prior to the Effective Date, or relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, benefit, or pension plan, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such debt, or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim has accepted the Plan or voted to reject the Plan.

37.    <u>Post-Confirmation Modifications</u>.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors may alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Notwithstanding the foregoing, (i) no such alteration, amendment or modification of the Plan shall negatively affect the terms of creditor treatment under the Global 9019 Settlement, including with respect to the GUC Distribution, or alter the claims objection process set forth in Article VII(A)(2), without the prior written consent of the Creditors Committee, and (ii) no provision of the Plan relating to the Series 2008 Bonds may be altered without the prior written consent of the Bond Trustee.

38.    <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

39.    <u>Validity and Enforceability</u>.  This Confirmation Order shall constitute a judicial determination that each term and provision of the Plan is valid and enforceable pursuant to its terms.  Should any provision in the Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of the Plan.  The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect or enforceability of such provision and such provision shall

have the same validity, binding effect and enforceability as every other provision of the Plan.

40.     <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of West Virginia, without giving effect to the principles of conflict of laws thereof.

41.     <u>Applicable Nonbankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

42.     <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

43.     <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

44.     <u>Notice of Confirmation Order and Occurrence of Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), within five (5) Business Days after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and the occurrence of the

Effective Date to all parties who hold a Claim in these cases, including the United States Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

45.     <u>Future Notices</u>.  Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (a) the Reorganized Debtors and their counsel, (b) the United States Trustee, (c) the Creditors Committee and its counsel; and (d) any party known to be directly affected by the relief sought.

46.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

47.     <u>Waiver of Stay</u>.  The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

48.     <u>Inconsistency</u>.  To the extent of any inconsistency between this Confirmation Order and the Plan or any settlement or stipulation referenced therein, this Confirmation Order shall govern.

49.     <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

45

50.    <u>GUC Distribution</u>.  As more fully set forth in Article III(D)(5) of the Plan, as part

of the Global 9019 Settlement, the Bond Trustee shall receive $1.00 from the GUC Distribution

on account of all Allowed Bond Deficiency Claims in full and final settlement of all such

Allowed Bond Deficiency Claims, with the remaining $7,000,000 of the GUC Distribution

available exclusively for distribution to the Holders of Allowed Non-Deficiency General

Unsecured Claims.   On or before the Effective Date, the Debtors shall deposit the GUC

Distribution into the Segregated GUC Account, free and clear of any Liens, claims or

encumbrances.  Notwithstanding anything contained in this Confirmation Order, the Plan, or any

agreement executed in connection therewith, (i) at no point shall any Liens, claims or

encumbrances attach to the Segregated GUC Account or the GUC Distribution therein,  the GUC

Distribution shall not be distributed to any Person or entity for any purpose other than in

accordance with Article III(D)(5) of the Plan, and (iii) no settlement or stipulation entered into

prior to the Effective Date between the Debtors and any Holder of a Tort Claim shall permit the

Debtors to make any payments to Holders of Tort Claims out of the GUC Distribution without

the prior written consent of the Creditors Committee.

51.    <u>Exemption from Certain Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy

Code, the following will not be subject to any document recording tax, stamp tax, conveyance

fee, intangibles or similar tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage

recording tax, or other similar tax or governmental assessment, and this Confirmation Order shall

direct the appropriate state or local governmental officials or agents to forego the collection of

any such tax or governmental assessment and to accept for filing and recordation any of the

foregoing instruments or other documents without the payment of any such tax or governmental

assessment: (a) the issuance of the Series 2020 Bonds; (b) the creation of any mortgage, deed of

trust, lien or other security interest under or pursuant to this Plan or in connection with the issuance of the 2020 Bonds; (c) the making or assignment of any lease or sublease under or pursuant to the Plan; (d) the execution and delivery of the 2020 Bonds and all instruments and documents delivered or recorded in connection therewith; (e) any restructuring transaction; or (f) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing or pursuant to the Plan.

52.    <u>PBGC Settlement</u>.  As more fully set forth in Article IV(U)(1) of the Plan and the Settlement Agreement by and among the Debtors and PBGC (I) Fixing the Amount of the Pension Benefit Guaranty Corporation's Claims and (II) Providing for Termination of Debtors' Pension Plan [Dkt. No. 904] (the "<u>PBGC Settlement</u>"), the settlement between the Debtors and the PBGC is approved.  The PBGC shall initiate an involuntary termination of the TMH Pension Plan under section 4042 of ERISA with a termination date of August 31, 2020. Subject to the involuntary termination of the TMH Pension Plan, the PBGC shall have the following Allowed Claims: (i) An Allowed Administrative Claim in the amount of $175,000, which shall be paid by the Reorganized Debtors on the latter of thirty (30) days following: the involuntary termination of the TMH Pension Plan or the Plan Effective Date; and (ii) an Allowed Non Deficiency General Unsecured Claim of $74,000,000, which shall be paid in accordance with the Plan as an allowed Class 5 Claim. The Reorganized Debtors (who are jointly and severally liable) shall pay to the PBGC the termination premiums of the TMH Pension Plan, as provided in 29 U.S.C. § 1306(a)(7) in the aggregate amount of $5,640,000 ("<u>Termination Premiums</u>") in three (3) equal installments of $1,880,000. For the avoidance of doubt, the Termination Premiums shall not be paid from the

GUC Distribution.  The first payment of $1,880,000 will be due thirty (30) days following the first twelve-month period after the termination date of the TMH Pension Plan (the "Initial Termination Premium Due Date"). The second payment of $1,880,000 shall be due twelve months after the Initial Termination Premium Due Date. The third payment of $1,880,000 shall be due twenty four months after the Initial Termination Premium Due Date. For the avoidance of doubt, the Termination Premiums are not a dischargeable claim or debt.  All other Claims asserted by the PBGC shall be withdrawn. Subject to Article VIII of the Plan, no other party shall be responsible for payment of the Allowed Claims of the PBGC or Termination Premiums owed to PBGC.

      53.   <u>Tort Resolutions</u>.

      a.   <u>TCG/Caldwells Stipulation</u>.  As more fully set forth in the *Stipulation* [Dkt. No. [905] (the "<u>TCG/Caldwells Stipulation</u>"), which is incorporated herein by reference as if set forth at length, the agreements by and between the Debtors, the Tort Claimant Group and the Caldwells (each as defined in the TCG/Caldwells Stipulation), are approved and to the extent applicable shall be paid in accordance with the Plan.  No post-confirmation modification referenced in paragraph 37 above shall be effective to modify the settlements set forth in the TCG/Caldwells Stipulation, without express consent of the Tort Claimant Group and/or the Caldwells.

      i.   The Caldwells, as defined in the TCG/Caldwells Stipulation, hold Claims against the Debtor that are covered under Professional Security Insurance Company policy HUL 350075, along with any other applicable Insurance Policies (the "<u>Policy</u>").  The Policy expressly states that "Your bankruptcy or insolvency shall not relieve us of our obligations under this policy." See policy HUL 350075 p. 1 of 2.  The Policy also provides that "If the underlying insurance or any renewals or replacements thereof: . . . (d) are unavailable or uncollectible due to your or any insurer's bankruptcy,

insolvency, or liquidation . . then this policy will still apply in the same manner as if the underlying insurance or other insurance contained the original, less restrictive provisions, was still in full force and effect and was fully collectible.  Id. at p. 3 of 11. This Court holds that that an insured's failure to pay a self-insured retention due to bankruptcy or insolvency does not relieve the insurer of its contractual duties under the policy.  *See Sturgill v. Beach at Mason Limited Partnership*, 2015 U.S. Dist. LEXIS 142490, *5, 2015 WL 6163787 (S.D. Oh. 2015) (collecting cases). It is accordingly ORDERED that, based upon the express language in the Policy and the authority existing in relation to this issue, that nonpayment of the self-insured retention under the Policy is not a defense to coverage under the Policy, and that the insurer is obligated to provide the same coverage for and defense of the Caldwells' Claims as if the self-insured retention had been paid in full.

ii.   This decretal paragraph 53 of this Confirmation Order and the TCG/Caldwells Stipulation include the entirety of rights the Caldwells' have against the Debtors, their Estates, and the Reorganized Debtors (including against the Segregated GUC Account and the GUC Distribution therein) and except as expressly set forth in this Confirmation Order or the TCG/Caldwells Stipulation, the Caldwells shall have no further rights against the Debtors, their Estates, and the Reorganized Debtors (including against the Segregated GUC Account and the GUC Distribution therein) irrespective of the outcome of any action the Caldwells bring against any insurer or that relates in any way to the Policy or the coverage thereunder.

iii.   This Court retains jurisdiction over any dispute involving the impact of non-payment of a self-insured retention under the Policy, being property of the Debtors' estates, as a result of the Debtors' Chapter 11 Cases.

iv.    For the avoidance of doubt, any payment by the Debtors to any party under the terms of the TCG/Caldwells Stipulation, including any payment in the Tort Claimant Group and the Caldwells, shall not be made from the GUC Distribution.

b.   Bsharah Stipulation.  As more fully set forth in the *Stipulation Resolving Allowed Tort Claim of Diana Bsharah* [Dkt. No. 903] (the "Bsharah Stipulation"), which is incorporated by reference as if set forth at length, the agreements by and between the Debtors and Diana Bsharah, are approved.  For the avoidance of doubt, the Bsharah Stipulation does not involve payments from the GUC Distribution.

49

54.    <u>Cure Dispute Resolutions</u>. RESERVED

55.    <u>Other Resolutions</u>.

    a.    <u>Summit Community Bank Objection</u>.    Summit Community Bank, Inc. ("<u>Summit</u>") filed a protective objection to the Plan [Dkt. No. 887] ("<u>Objection</u>"). Summit made a loan to Donnally Street Partners, LLC ("<u>Donnally Street</u>"), as evidenced by that certain note dated August 28, 2009 (as subsequently amended and modified, the "<u>Loan</u>").   Repayment of the Loan is secured by a leasehold deed of trust lien ("<u>Lien</u>") on a lease between Donnally Street and Charleston Hospital, Inc. (the "<u>Lease</u>").   The Debtors have filed a motion to assume the Lease as well as other leases on which Summit holds a deed of trust lien to secure obligations of TMH Services, Inc. to Summit [Dkt. No. 880].   Accordingly, notwithstanding the provisions of the Plan, the Plan Supplement, and/or this Confirmation Order, the Lien shall not be released, terminated, extinguished or otherwise affected by the Plan, the Plan Supplement or Confirmation.   Donnally Street's liability to Summit under the Loan shall not be discharged, released, exculpated, terminated or modified in any manner by the Plan, the Plan Supplement and/or Confirmation, and Donnally Street shall remain liable to Summit on the Loan in accordance with the terms of the Loan.

    b.    In addition, with respect to the Claims of Summit against Debtor TMH Services, Inc., for avoidance of doubt, those Claims shall be treated as Class 2 Claims ("Other Secured Claims") and Debtor TMH Services, Inc. shall continue payment of its monthly loan obligations due to Summit pursuant to its pre-existing loan documents.

Presented by:

**WHITEFORD TAYLOR & PRESTON LLP**

/s/ Brandy M. Rapp
Brandy M. Rapp (WV Bar No. 10200)
10 S. Jefferson Street, Suite 1110
Roanoke, Virginia 24011
(540) 759-3577 Tel.
brapp@wtplaw.com

Michael J. Roeschenthaler (PA Id. No. 87647)
200 First Avenue, Third Floor
Pittsburgh, PA 15222
(412) 618-5601 Tel.
mroeschenthaler@wtplaw.com

*Counsel to the Debtors and Debtors-in-Possession*

*-AND-*

**FROST BROWN TODD, LLC**
Jared M. Tully, Esq. (WV Bar No. 9444)
500 Virginia Street East, Suite 1100
Charleston, WV 25301
T: 304-345-0111
jtully@fbtlaw.com

Ronald E. Gold, Esq. (Ohio Bar No. 0061351)
Douglas L. Lutz, Esq. (Ohio Bar No. 0064761)
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
T: 513-651-6800
rgold@fbtlaw.com
dlutz@fbtlaw.com

*Local Counsel to the Debtors and*
*Debtors-in-Possession*